# EXHIBIT A

# EXHIBIT A-1

Court of Common Pleas of Philadelphia County
Trial Division

# Civil Cover Sheet

For Prothonotary Use Only (Docket Number)

**MAY 2024**

E-Filing Number: 2405049309

**02672**

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| MERLE CARTER | L'ORÉAL USA, INC. |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| 6608 LINCOLN DRIVE<br>PHILADELPHIA PA 19199 | 575 FIFTH AVENUE<br>NEW YORK NY 10017 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | L'ORÉAL USA PRODUCTS, INC. |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | 10 HUDSON YARDS<br>NEW YORK NY 10001 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | SOFT SHEEN-CARSON, LLC |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | 10 HUDSON YARDS<br>NEW YORK NY 10001 |

| TOTAL NUMBER OF PLAINTIFFS | TOTAL NUMBER OF DEFENDANTS | COMMENCEMENT OF ACTION |
|---|---|---|
| 1 | 12 | ☒ Complaint   ☐ Petition Action   ☐ Notice of Appeal<br>☐ Writ of Summons   ☐ Transfer From Other Jurisdictions |

| AMOUNT IN CONTROVERSY | COURT PROGRAMS | | |
|---|---|---|---|
| ☐ $50,000.00 or less<br>☒ More than $50,000.00 | ☐ Arbitration<br>☒ Jury<br>☐ Non-Jury<br>☐ Other: | ☐ Mass Tort<br>☐ Savings Action<br>☐ Petition | ☐ Commerce<br>☐ Minor Court Appeal<br>☐ Statutory Appeals | ☐ Settlement<br>☐ Minors<br>☐ W/D/Survival |

CASE TYPE AND CODE

2P - PRODUCT LIABILITY

STATUTORY BASIS FOR CAUSE OF ACTION

| RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER) | **FILED PRO PROTHY**<br>MAY **22** 2024<br>**C. SMITH** | IS CASE SUBJECT TO<br>COORDINATION ORDER?<br>YES         NO |
|---|---|---|

TO THE PROTHONOTARY:

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant: <u>MERLE CARTER</u>

Papers may be served at the address set forth below.

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY | ADDRESS |
|---|---|
| SHERRELL L. DANDY | KLINE & SPECTER, P.C.<br>1525 LOCUST STREET<br>19TH FLOOR<br>PHILADELPHIA PA 19102 |
| **PHONE NUMBER** (215)772-1000    **FAX NUMBER** none entered | |
| **SUPREME COURT IDENTIFICATION NO.** 309348 | **E-MAIL ADDRESS** sherrell.dandy@klinespecter.com |
| **SIGNATURE OF FILING ATTORNEY OR PARTY** *SHERRELL DANDY* | **DATE SUBMITTED** Wednesday, May 22, 2024, 09:54 am |

FINAL COPY (Approved by the Prothonotary Clerk)

**COMPLETE LIST OF DEFENDANTS:**

1. L'ORÉAL USA, INC.
   575 FIFTH AVENUE
   NEW YORK NY 10017
2. L'ORÉAL USA PRODUCTS, INC.
   10 HUDSON YARDS
   NEW YORK NY 10001
3. SOFT SHEEN-CARSON, LLC
   10 HUDSON YARDS
   NEW YORK NY 10001
4. STRENGTH OF NATURE, LLC
   64 ROSS ROAD
   SAVANNAH GA 31405
5. GODREJ SON HOLDINGS, INC.
   64 ROSS ROAD
   SAVANNAH GA 31405
6. AVLON INDUSTRIES, INC.
   1999 NORTH 15TH STREET
   MELROSE PARK IL 60160
7. ACME MARKETS, INC.
   75 VALLEY STREAM PARKWAY
   MALVERN PA 19355
8. ACME MARKETS
   7010 GERMANTOWN AVENUE
   PHILADELPHIA PA 19119
9. ACME MARKETS
   7700 CRITTENDEN STREET
   PHILADELPHIA PA 19118
10. CVS PHARMACY, INC.
    1 CVS DRIVE
    WOONSOCKET RI 02895
11. CVS PHARMACY
    6701 RIDGE AVENUE
    PHILADELPHIA PA 19128
12. CVS PHARMACY
    7065 LINCOLN DRIVE
    PHILADELPHIA PA 19119

# EXHIBIT A-2

**KLINE & SPECTER, P.C.**
By:    SHANIN SPECTER, ESQUIRE    (Attorney I.D. No.: 40928)
        TOBI L. MILLROOD, ESQUIRE    (Attorney I.D. No.: 77764)
        BRADEN R. LEPISTO, ESQUIRE    (Attorney I.D. No.: 313586)
        SHERRELL L. DANDY, ESQUIRE   (Attorney I.D. No.: 309348)
Shanin.Specter@klinespecter.com
Tobi.Millrood@klinespecter.com
Braden.Lepisto@klinespecter.com
Sherrell.Dandy@klinespecter.com
1525 Locust Street
Philadelphia, Pennsylvania 19102
215-772-1000
215-772-1359 (fax)                                         ATTORNEYS FOR PLAINTIFF

*Filed and Attested by the
Office of Judicial Records
22 MAY 2024 09:54 am
E. SMITH*

---

| | |
|---|---|
| MERLE CARTER, M.D.<br>6608 LINCOLN DRIVE<br>PHILADELPHIA, PA 19199<br>　　　　　　　　　　PLAINTIFF<br><br>V.<br><br><br>　　　　　　　　　　DEFENDANTS<br>L'ORÉAL USA, INC.<br>575 FIFTH AVENUE<br>NEW YORK, NY 10017<br><br>AND<br><br>L'ORÉAL USA PRODUCTS, INC.<br>10 HUDSON YARDS<br>NEW YORK, NY 10001<br><br>AND<br><br>SOFT SHEEN-CARSON, LLC<br>10 HUDSON YARDS<br>NEW YORK, NY 10001<br><br>AND<br><br>STRENGTH OF NATURE, LLC<br>64 ROSS ROAD<br>SAVANNAH, GA 31405<br><br>AND | IN THE COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY,<br>PENNSYLVANIA<br><br><br><br><br><br><br><br><br><br><br><br><br>**JURY TRIAL DEMANDED** |

Case ID: 240502672

GODREJ SON HOLDINGS, INC.
64 ROSS ROAD
SAVANNAH, GA 31405

AND

AVLON INDUSTRIES, INC.
1999 NORTH 15TH STREET
MELROSE PARK, IL 60160

AND

ACME MARKETS, INC.
75 VALLEY STREAM PARKWAY
MALVERN, PA 19355

AND

ACME MARKETS
7010 GERMANTOWN AVENUE
PHILADELPHIA, PA 19119

AND

ACME MARKETS
7700 CRITTENDEN STREET
PHILADELPHIA, PA 19118

AND

CVS PHARMACY, INC.
1 CVS DRIVE
WOONSOCKET, RI 02895

AND

CVS PHARMACY
6701 RIDGE AVENUE
PHILADELPHIA, PA 19128

AND

CVS PHARMACY
7065 LINCOLN DRIVE
PHILADELPHIA, PA 19119

Case ID: 240502672

## NOTICE TO PLEAD

### NOTICE

You have been sued in court.  If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you.  You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff.  You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE.  IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

Lawyer Referral Service
Philadelphia Bar Association
1101 Market Street, 11th Floor
Philadelphia, PA 19107
(215) 238-6338

### ADVISO

Le han demandado a used en la corte.  Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion.  Hace falta asentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona.  Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion.  Ademas, la corte pueda decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda.  Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

LLEVE ESTA DEMANDA A UN ABOGADO INMEDIATAMENTE, SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO, VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.

Lawyer Referral Service
Philadelphia Bar Association
1101 Market Street, 11th Floor
Philadelphia, PA 19107
(215) 238-6338

Case ID: 240502672

## CIVIL ACTION – COMPLAINT

Plaintiff, Merle Carter, M.D., through her undersigned counsel, Kline & Specter, P.C., hereby demands damages from the Defendants in a sum in excess of the local arbitration limits exclusive of interest, costs, and damages for prejudgment delay, upon the cause of action set forth below:

## PARTIES

1.      Plaintiff, Merle Carter, M.D., is an adult individual citizen and resident of the Commonwealth of Pennsylvania, residing therein at 6608 Lincoln Drive, Philadelphia, PA 19199.

2.      Defendant, L'Oréal USA, Inc., is incorporated in Delaware with its principal place of business and headquarters located at 575 Fifth Avenue, New York, New York 10017.

3.      Defendant, L'Oréal USA Products, Inc., is incorporated in Delaware with its principal place of business and headquarters located at 10 Hudson Yards, 347 Tenth Avenue, New York, New York 10001.

4.      Defendant, SoftSheen-Carson, LLC, is a limited liability company organized in the state of New York with its principal place of business and headquarters located at 90 State St., Albany, New York 12207.  Upon information and belief, SoftSheen-Carson, LLC's members and sole interested parties are L'Oréal USA, Inc. and L'Oréal S.A., L'Oréal's French owned company, with its headquarters and principal place of business located in France.

5.      Defendant, Carson, Inc., D/B/A SoftSheen, is a corporation with its principal place of business and headquarters located at 2870 Peachtree Rd., Suite, 464, Atlanta, Georgia 40405.

6.      Defendant, Carson (W.I.) Inc., D/B/A SoftSheen, is a corporation, with its headquarters located in Delaware at 251 Little Falls Drive, Wilmington, Delaware 19808.

Case ID: 240502672

7.      Defendants L'Oréal USA, Inc., Loreal USA Products, Inc., SoftSheen-Carson, LLC, Carson, Inc., and Carson (W.I.) Inc., will be collectively referred to as "L'Oréal Defendants."

8.      Defendant Strength of Nature, LLC, is a corporation with its principal place of business and headquarters located at 64 Ross Road, Savannah, Georgia 31405.

9.      Defendant Godrej Consumer Products Limited is, and at all times relevant to this action, a global corporation with its principal place of business located at Godrej One, Fourth Floor, Pirojshanagar, Eastern Express Highway, Fikhroli (East), Mumbai 400 079, India. The company's website references Strength of Nature as its base of operations in the U.S., which is located at 64 Ross Road, Savannah, Georgia, and process may be served upon its registered agent, Karen Sood, 6355 Peachtree Dunwood Road, Atlanta Georgia, 30328.

10.     Defendants Strength of Nature, LLC and Godrej Consumer Products Limited, will be collectively referred to as "Strength of Nature Defendants."

11.     Defendant Avlon Industries, Inc. ("Avlon") is, and at all times relevant to this action, a corporation with its principal place of business located at 1999 North 15th Street, Melrose Park, Illinois 60160.

12.     ACME Markets, Inc. is a corporation with its principal place of business and headquarters located at 75 Valley Stream Parkway, #250, Malvern, PA 19355. At all times relevant hereto, ACME Markets, Inc., conducted business as ACME Markets at 7010 Germantown Avenue, Philadelphia, PA 19119 and 7700 Crittenden Street, Philadelphia PA, 19118.

13.     Defendants ACME Markets, Inc., ACME Markets at 7010 Germantown Avenue, and ACME Markets at 7700 Crittenden Street will be collectively referred to as "ACME Defendants."

Case ID: 240502672

14.     Defendant CVS Pharmacy, Inc. ("CVS") is a corporation with its principal place of business and headquarters located at 1 CVS Drive, Woonsocket, RI 02895.  At all times relevant hereto, CVS conducted business as CVS Pharmacy located at 6701 Ridge Avenue, Philadelphia, PA 19128 and the CVS Pharmacy located at 7605 Lincoln Drive, Philadelphia, PA 19119.

15.     Defendants CVS Pharmacy, Inc., CVS Pharmacy at 6701 Ridge Avenue and CVS Pharmacy at 7605 Lincoln Drive will be collectively referred to as "CVS Defendants."

**JURISDICTION**

16.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

17.     This Court has original jurisdiction over this civil action.

18.     This Court has personal jurisdiction over the Defendants.

19.     At all times relevant hereto, L'Oréal Defendants, Strength of Nature Defendants, and Defendant Avlon (Manufacturer Defendants) contracted with, entered agreements with, sold, shipped, and distributed hair relaxer products, including those products Plaintiff purchased and applied to her hair, to various companies and stores within the Commonwealth of Pennsylvania, including but not limited to Defendants, ACME Markets and CVS Pharmacy.

20.     At all times relevant hereto, L'Oréal Defendants, Strength of Nature Defendants, and Defendant Avlon engaged in the business of manufacturing, making, distributing, creating, dispensing, selling, shipping, advertising, transporting, and marketing hair relaxer products which contained dangerous and harmful amounts of endocrine disrupting chemicals and other harmful substances to sell at ACME Markets and CVS Pharmacy.

21.     At all times relevant hereto, ACME Markets and CVS Pharmacy conducted business in the Commonwealth of Pennsylvania by: (1) selling and distributing products and

Case ID: 240502672

merchandise, including Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen (Hair Relaxer Brands), in the Commonwealth of Pennsylvania for the purpose of realizing pecuniary benefit from those sales and distributions; (2) shipping products and merchandise, including Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen, directly into and through the Commonwealth of Pennsylvania; (3) engaging in business in the Commonwealth of Pennsylvania; and/or, (4) owning, using, and/or possessing real property situated in the Commonwealth of Pennsylvania.

22.    At all times relevant hereto, L'Oréal Defendants, Strength of Nature Defendants, and Defendant Avlon had, and continues to have, regular and systematic contact with and conducts business in and from the Commonwealth of Pennsylvania, such that it has purposefully availed itself of the laws of the Commonwealth of Pennsylvania and can reasonably expect to both sue and be sued in Pennsylvania.

23.    Additionally, L'Oréal Defendants, Strength of Nature Defendants, and Defendant Avlon's presence in the Commonwealth of Pennsylvania satisfies the due process requirements for Pennsylvania courts to exercise jurisdiction over it. Additionally, L'Oréal Defendants, Strength of Nature Defendants, and Defendant Avlon consented to the exercise of jurisdiction over it by Pennsylvania courts by registering to and conducting business from the Commonwealth of Pennsylvania.

24.    A federal court would not have jurisdiction over this case, as there is no federal question under 28 U.S.C. § 1331 or complete diversity between the parties under 28 U.S.C. § 1332. Therefore, this case is not removable to federal court under 28 U.S.C. § 1441 and 28 U.S.C. § 1446.

Case ID: 240502672

25.     Venue is proper in Philadelphia County for each of the following reasons: (1) each Defendant regularly conducts business in Philadelphia County; (2) ACME Markets and CVS Pharmacy, as alleged *supra*, has a registered office and/or retail stores in Philadelphia County; (3) the cause of action arose in Philadelphia County; and/or, (4) Philadelphia County is a county where a transaction or occurrence took place out of which the cause of action arose.

26.     The damages Plaintiff seeks, exclusive of interests and costs, exceed the jurisdictional amount requiring arbitration referral. Plaintiff seeks more than $50,000 in damages.

## **FACTUAL BACKGROUND**

27.     At all times material hereto, L'Oréal Defendants developed, tested, assembled, marketed, manufactured, and sold various brands of chemical hair relaxer products that were specifically marketed to black women, including but not limited to the following brands that Plaintiff used to chemically straighten her hair:

     a.     Dark & Lovely;

     b.     Precise;

     c.     Bantu; and,

     d.     Optimum Care.

28.     At all times material hereto, Strength of Nature Defendants developed, tested, assembled, marketed, manufactured, and sold various brands of chemical hair relaxer products that were specifically marketed to black women, including but not limited to the following brands that Plaintiff used to chemically straighten her hair:

     a.     Motions;

     b.     Dr. Miracle; and,

     c.     Ultra Sheen.

Case ID: 240502672

29.    At all times material hereto, Defendant Avlon Industries, Inc. developed, tested, assembled, marketed, manufactured, and sold various brands of chemical hair relaxer products that were specifically marketed to black women, including but not limited to the Affirm brand that Plaintiff used to chemically straighten her hair.

30.    Plaintiff developed endometrial cancer as a result of frequent use of chemical hair relaxers manufactured by the Defendants.

## CHEMICAL HAIR RELAXERS

31.    Black and brown girls are taught at a young age that to be accepted in society, they must tame and control their natural hair.

32.    This has led black and brown women and girls to temporarily or permanently alter their curly hair strands to make them straight to adhere to western beauty standards.

33.    Traditionally, black women straightened their hair using a heated comb, commonly referred to as the "hot comb" invented by Francois Marcel Gateau.  The hot comb, combined with temporary hair straightening and growth products created by Madame C.J. Walker, became popular in the early 1900s. Madame C.J. Walker became the country's first black female millionaire. This financial success showed the world that black haircare, particularly hair straightening products, is a very lucrative business.

34.    In 1909, Garrett A. Morgan invented a hair straightening cream after mixing chemicals to correct friction in the sewing machine when sewing wool.  The G.A. Morgan Refining Cream, which straightened wool, was later used to straighten hair.

35.    In the 1960s, the first-generation hair relaxer was created to chemically straighten curly hair permanently by breaking and restructuring the disulfide bonds. The active ingredient, sodium hydroxide, a lye, irritated the scalp, diminished hair strength, and was difficult to rinse.

Case ID: 240502672

Additionally, the lye caused the relaxer to have a short shelf life because of the separation of the oil and water in the relaxer cream.

36.    In the 1970s, to remedy the disadvantages of the lye relaxer, hair relaxer manufacturers began marketing no-lye relaxers using calcium hydroxide or guanidine hydroxide as the active ingredients instead of sodium hydroxide.

37.    Home hair relaxer kits were marketed and sold to women who wanted to apply the chemical hair relaxer at home instead of having it professionally applied at a hair salon.

38.    The home hair relaxer kits were a cheaper alternative to professional application at a hair salon.

39.    The home hair relaxer kit typically contains plastic gloves and a wooden spatula for application because the chemicals are too harmful to touch with bare hands. The home hair relaxer kits also include the relaxer cream, a liquid activator mixed with the relaxer cream before application, neutralizing shampoo, and a restorative moisturizing balm.

40.    For first-time application, the relaxer cream is placed on the hair from the root to the end.  After letting it sit on the hair for ten to twenty minutes, the relaxer is rinsed out with warm water and then shampooed with a neutralizing shampoo to deactivate the alkalizing chemical process, followed by applying conditioner to raise the pH level and soften the hair. Lastly, a moisturizing treatment is used to restore hydration.

41.    Defendants began marketing the new and improved no-lye-based relaxers using two main marketing strategies: 1) marketing directly to black women and 2) portraying the no-lye relaxer as safe.

Case ID: 240502672



42.    In the 1970s and 1980s, hair relaxer manufacturers used black celebrities such as Debbie Allen and Natalie Cole in their commercial ads to market the no-lye relaxer as a safe way to make curly and coarse hair more manageable.

43.    In Dark & Lovely's 1980 hair relaxer commercial, while applying a hair relaxer, dancer and actress Debbie Allen stated, "For me, there is more to Dark & Lovely than just that it doesn't contain lye. Dark & Lovely is such a pleasure. It makes me feel like dancing." While dancing, she further stated, "It relaxes my hair just as well as those lye-based relaxers with a lot less burning and irritation, and there is no offensive odor...and it leaves it so soft that I can do anything with it."

Case ID: 240502672



44.    For decades, Defendants continued to market chemical hair relaxer products to black women, but in the 1990s, the industry began to target young black girls with the first hair relaxer for girls, "Just for Me" by Soft & Beautiful.

45.    In 1993, the infamous Just for Me commercial premiered featuring LaTavia Robinson, who later joined the famous music group Destiny's Child. Young girls sang and danced to the song with the lyrics: "Just for Me—the no-lye conditioner relaxing cream," again marketing the relaxer as safe because it did not contain lye.



Case ID: 240502672

46.     Other manufacturers followed suit, creating other chemical hair relaxers for young girls, including the PCJ hair relaxer, also introduced in the early 1990s.

47.     Young black girls became enamored with the girls depicted on the hair relaxer boxes, believing they could achieve the same look if they used the hair relaxer.



48.     It was recently discovered from a "Where Are They Now" interview that several women depicted on the hair relaxer boxes did not have chemically straightened hair and never used the chemical relaxer products.

49.     The hair relaxer manufacturing companies spent billions of dollars targeting black women and girls:



Case ID: 240502672






50.    Although the hair relaxer manufacturing companies marketed the no-lye relaxers as safe because they did not contain sodium hydroxide, the Defendant companies failed to warn consumers about the harmful chemicals in the hair relaxers, including endocrine-disrupting chemicals ("EDCs").

**ENDOCRINE DISRUPTING CHEMICALS**

51.    Endocrine-Disrupting Chemicals disrupt the endocrine system, a network of organs and glands that produce, store, and secrete hormones. The glands, controlled by stimulation from the nervous system and chemical receptors in the blood and hormones, help maintain the body's homeostasis by regulating the functions of organs.

Case ID: 240502672

52.     These glands help maintain the body's homeostasis by regulating the functions of the organs in the body, including but not limited to cellular metabolism, reproduction, sexual development, sugar and mineral hemostasis, heart rate, and digestion.

53.     EDCs can disrupt different hormones by mimicking or interfering with a natural hormone, which can trick the cellular hormone receptor into thinking that the EDC is the hormone the cellular hormone receptor responds to.

54.     This can cause the creation of excess hormones or deficient hormones and can cause adverse effects, including causing abnormalities in sex organs, early puberty, endometriosis, and hormonally responsive cancers, among other hormonally related diseases.

55.     A group of EDCs called xenoestrogens mimic estrogen by pretending to be biologically created estrogen. Over time, these estrogen mimickers become difficult to detoxify in the liver.

56.     Chemical hair relaxers contain various types of endocrine disrupting chemicals, including phthalates and parabens.

## Phthalates

57.     Phthalates were developed in the 1920s to make plastics more durable and malleable, but today are used in cosmetics to create color and make fragrances last longer.

58.     Phthalates are used in hair relaxers to make the hair more flexible after applying the product.

59.     Phthalates interfere with estrogen receptors and contribute to reproductive problems such as early puberty in girls, menopausal symptoms, infertility, metabolic syndrome and thyroid conditions, cognitive disorders, and cancer.

Case ID: 240502672

60.    Di-2-ethylheylphtyalate ("DEHP") is a phthalate used in plastics to make them more flexible.  Testing of chemical hair relaxers found the presence of DEHP.

61.    In the Report of Carcinogens, Fifteenth Edition, the U.S. Department of Health and Human Services determined that there is "clear evidence" of carcinogenicity of DEHP in both male and female rats and that it is "reasonably anticipated to be a human carcinogen."

62.    Similarly, the U.S. Environmental Protection Agency classified DEHP as a "B-2; probable human carcinogen" in its Chemical Assessment Summary.

**Parabens**

63.    Parabens are a class of chemicals used as preservatives in cosmetic products to prevent the growth of harmful bacteria and mold and therefore preserve the product's shelf life. There are common parabens, including methylparaben, propylparaben, butylparaben, and ethylparaben.

64.    Parabens are EDCs that also bind to estrogen receptors and mimic estrogen, causing estrogen dominance and health conditions such as reproductive issues and hormonal cancers.

65.    A recent study detected three different parabens in hair relaxer kits: methylparaben, ethylparaben, and butylparaben. Testing of hair relaxer kits revealed high concentrations of this parabens.

66.    An August 2019 study examined tissue samples from tumors of women diagnosed with endometrial cancer.  It concluded that paraben molecules were more frequently detected in endometrial carcinoma tissue samples compared to normal endometrium.

67.    Studies have shown that black women have elevated levels of phthalates in their urine compared to white women.  Additionally, a May 2021 study showed higher levels of

Case ID: 240502672

parabens and phthalates detected in the urine of women diagnosed with endometrial cancer than women without cancer.

68.    In a 2018 study, thirty-five different EDCs were present in three hair relaxer kits, including phthalates, parabens, bisphenol A ("BPA"), cyclosilicates, triclosan, and diethanolamine. Of the chemicals found to be present, 84% were not listed as ingredients on the hair relaxer labels. Each of these individual EDCs is well documented to increase estrogen and cause hormone-sensitive cancers.

69.    The synergistic effects of the combination of the known EDCs in the hair relaxers and the unknown chemicals hidden under the ingredient title "fragrances" further increase the risk of developing hormonally driven cancers.

70.    Moreover, because there is higher percutaneous absorption of chemicals in the scalp compared with other areas of the skin such as on the forearm, palm, and abdomen, there is an even greater risk of developing cancer from carcinogens placed on the scalp/hair.

## PLAINTIFF'S HAIR RELAXER USE

71.    Plaintiff, Merle Carter, M.D., consistently and frequently used Hair Relaxers, starting in 1976.

72.    For decades, Plaintiff used Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen, which are manufactured and advertised by the named Manufacturer Defendants.

73.    Plaintiff used different variations of Avlon's Affirm hair relaxers, including but not limited to Affirm Crème Relaxer and Affirm Sensitive Scalp Relaxer.

74.    Plaintiff used different variations of L'Oréal Defendants' Dark & Lovely hair relaxer, including but not limited to Dark & Lovely Regular No-Lye Hair Relaxer.

Case ID: 240502672

75.     Plaintiff used different variations of L'Oréal Defendants' Optimum hair relaxer, including but not limited to Optimum Salon Haircare Defy Breakage No-Lye Relaxer.

76.     Plaintiff used different variations of L'Oréal Defendants' Bantu hair relaxer, including but not limited to Bantu No Base Relaxer.

77.     Plaintiff used different variations of L'Oréal Defendants' Precise hair relaxer, including but not limited to Ultra Precise No-Lye Conditioning Relaxer.

78.     Plaintiff used different variations of Strength of Nature Defendants' Dr. Miracle hair relaxer, including but not limited to Dr. Miracle's No Lye Relaxer Kit and Dr. Miracle's New Growth No Lye Relaxer Kit.

79.     Plaintiff used different variations of Strength of Nature Defendants' Motions hair relaxer, including but not limited to Motions No Lye Relaxer, Motions Classic Formula Smooth & Silken Hair Relaxer, and Motions Silkening Shine No Lye Relaxer Kit.

80.     Plaintiff used different variations of Strength of Nature Defendants' Ultra Sheen hair relaxer, including but not limited to Ultra Sheen No Lye Relaxer.

81.     She reapplied the relaxer to newly grown hair approximately every four to eight weeks at a hair salon or at home using home hair relaxer kits.

82.     Plaintiff purchased multiple hair relaxer home kits from ACME Markets at 7010 Germantown Avenue, Philadelphia, Pa 19119 and 7700 Crittendon Street, Philadelphia, Pa, 19118, starting in approximately 2004, including, Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen.

83.     Plaintiff purchased multiple hair relaxer home kits from CVS Pharmacies at 6701 Ridge Avenue, Philadelphia, Pa 19128 and 7605 Lincoln Drive, Philadelphia, Pa 19119 starting in approximately 2004, including, Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr.

Case ID: 240502672

Miracle, and Ultra Sheen.

84.    Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen hair relaxers purchased and used by the Plaintiff to apply to her hair contained endocrine disrupting chemicals, including phthalates, parabens, and other carcinogenic chemicals.

85.    Plaintiff has reason to believe that L'Oréal Defendants developed, tested, assembled, marketed, manufactured, and sold other brands of chemical hair relaxer products known to L'Oreal Defendants, but unknown to Plaintiff, that contained endocrine disrupting chemicals.

86.    Plaintiff has reason to believe that Strength of Nature Defendants developed, tested, assembled, marketed, manufactured, and sold other brands of chemical hair relaxer products known to Strength of Nature Defendants, but unknown to Plaintiff, that contained endocrine disrupting chemicals.

87.    Plaintiff has reason to believe that Defendant Avlon developed, tested, assembled, marketed, manufactured, and sold other brands of chemical hair relaxer products known to Defendant Avlon, but unknown to Plaintiff, that contained endocrine disrupting chemicals.

88.    The Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen hair relaxers purchased and used by the Plaintiff increased the risk of harm and/or was a substantial contributing factor to her development of endometrial cancer.

**HAIR RELAXERS LINKED TO UTERINE AND ENDOMETRIAL CANCERS**

89.    The uterus comprises two main parts: the endometrium and the myometrium. Cancers in the uterus muscle layer are referred to as uterine sarcoma.

90.    Endometrial cancer is a carcinoma that begins in the endometrium lining of the uterus.

Case ID: 240502672

91.    Endometrial cancer is one of the three most common cancers in females and is the most common form of uterine cancer.

92.    There are two types of endometrial cancers.  Type 1 endometrial cancer tumors are classified as endometroid adenocarcinoma and are linked to excess estrogen in the body.

93.    Type 2 endometrial cancer tumors include uterine serous, clear cell, and squamous cell carcinomas.

94.    Type 1 endometrial cancer is far more common than Type 2, and accounts for approximately 90% of diagnosed endometrial cancer.

95.    Type 1 endometrial cancer incidence increased significantly between 1999 and 2006 compared to Type 2 endometrial cancers, which remained relatively stable during those years.

96.    Some endometrial cancers begin with a pre-cancerous condition called endometrial hyperplasia, which practitioners consider an early stage of endometrial cancer.

97.    One of the main risk factors for endometrial and other uterine cancers include changes in the balance of female hormones in the body.  Accordingly, exposure to EDCs is a risk factor for developing hormone-sensitive cancers such as endometrial cancer.

98.    Black women are twice as likely to be diagnosed with uterine cancer than white women and have poorer prognoses when diagnosed.

99.     For decades, research has shown that black women are far more likely to develop reproductive cancers and other reproductive diseases.

100.    Additionally, black women are two to three times more likely to develop uterine leiomyomata, also known as fibroid tumors, than white women.

Case ID: 240502672

101.     Endometriosis is an estrogen-dependent reproductive disease that causes growth of the endometrial glands and stroma outside of the uterus, causing chronic inflammation.

102.     Endometriosis is a risk factor for endometrial cancer, and as with other reproductive diseases, it is far more prevalent in black women.

103.     In addition to the research demonstrating the significant disparity between black and white women in the development of reproductive disease, research also establishes that black girls go through puberty and start menstruating earlier than girls of other races.

104.     Scientists from the University of California, San Francisco, and Berkeley conducted a continuing study of over 1,200 girls tracked between 2005 and 2011. They concluded that by age seven, 23% of black girls started to develop breasts, compared with just 10% of white girls.

105.     Researchers have been baffled by the inability to identify why black girls are menstruating so early and why black women are developing reproductive issues at alarming rates.

106.     According to NBC News, approximately 95% of black women reported using chemical hair straightening products, such as hair relaxers. Many of these women also said they began using the products in early childhood, sometimes as young as five or six years old, and continued frequent use through adulthood.

107.     Although there is so much diversity within the black female community, one commonality between generations of black women is using permanent chemical hair relaxers to straighten their hair.

108.     In October 2022, the results of a groundbreaking study were published in the Journal of the National Cancer Institute by Dr. Che-Jung Chang and others regarding the link between hair relaxer use and the development of uterine cancers.

Case ID: 240502672

109.    The study found that women who frequently used hair relaxers were more than twice as likely to develop uterine cancers compared to women who did not use chemical hair relaxers.  Specifically, the study found that 1.64% of women who never used hair relaxer products would develop uterine cancer before age 70.  However, for women who ever used hair relaxers, the risk of uterine cancer increased to 1.80% and drastically increased to 2.55% for women who frequently used hair relaxers.[1]

110.    Among women who never used straighteners in the 12 months prior to baseline, approximately 1.64% were predicted to develop uterine cancer by age 70 years.  The estimated risk was 1.18% (95% CI for risk difference = 0.15% to 2.54%) higher for the women with ever use, and 2.41% (95% CI for risk difference = 0.52% to 4.80%) higher for those with frequent use compared with women who never used hair relaxers.

111.    According to the researchers, "These findings are consistent with prior studies supporting a role of straighteners in increased risk of other female, hormone-related cancers."

112.     The researchers further stated that "Although no differences in the hazard ratios between racial and ethnic groups were observed, the adverse health effects associated with straightener use could be more consequential for African American and/or Black women because of the higher prevalence and frequency of hair product use, younger age of initiating use, and harsher chemical formulations."[2]

## PLAINTIFF'S CANCER DIAGNOSIS

113.    In November 2015, at the age of forty-nine years old, Dr. Carter underwent endometrial sampling which revealed a diagnosis of endometrial carcinoma.

---

[1] 4 Che-Jung Chang, et al., Use of Straighteners and Other Hair Products and Incident Uterine Cancer, Journal of the National Cancer Institute, Oct. 17, 2022, https://pubmed.ncbi.nlm.nih.gov/36245087.
[2] Id.

Case ID: 240502672

114.    Dr. Carter was advised to undergo a radical hysterectomy and bilateral oophorectomy.

115.    In December 2015, Dr. Carter underwent a total robotic laparoscopic hysterectomy and bilateral oophorectomy, and surgical pathology confirmed a diagnosis of well-differentiated endometrioid adenocarcinoma, FIGO 1-2.

116.    Plaintiff's use of the hair relaxers manufactured and sold by the Defendants, increased the risk of harm and/or was a substantial contributing factor to her development of endometrial cancer.

117.    Dr. Carter suffered significant pain as a result of her cancer diagnosis and subsequent hysterectomy.

## DISCOVERY RULE

118.    Despite knowing that their chemical hair relaxer products contain large amounts of EDCs that are more likely to enter the body when applied through the scalp, the Defendants failed to warn of the potential for the use of their products to cause cancer and reproductive issues.

119.    Plaintiff reserves the right to plead and invoke the discovery rule.  Plaintiff's endometrial cancer is a latent injury.  Accordingly, under such circumstances, Plaintiff could not have reasonably been expected to know the cause of her endometrial cancer. Plaintiff lacked the salient facts behind the cause of her endometrial cancer, and Plaintiff could not have been aware of the salient facts through reasonable diligence until less than two years before the filings of Plaintiff's action.

120.    Further, Plaintiff did not and could not have known that her injuries were caused by Defendants' conduct in the exercise of reasonable diligence.

Case ID: 240502672

121.    The carelessness and recklessness in the acts and omissions of the Defendants, as outlined and averred throughout the entirety of this Complaint, was a factual cause of and/or placed Plaintiff at an increased risk of harm for and/or was a substantial factor in causing and did in fact directly and proximately cause the severe, permanent and grievous personal injuries and damages to Plaintiff.

**COUNT I**
**STRICT LIABILITY – DESIGN DEFFECT**
**(Plaintiff v. L'Oreal Defendants, Strength of Nature Defendants, Defendant Avlon, ACME Defendants and CVS Defendants)**

122.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

123.    At all relevant times, Defendants were engaged in the business of manufacturing, formulating, creating, designing, testing, labeling, packaging, supplying, marketing, promoting, selling, and advertising relaxers like Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen.

124.    Plaintiff used Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen frequently and consistently.

125.    Defendants marketed and advertised Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen as a safe product for use by consumers, specifically to black women and women of color, including Plaintiff, despite knowing that they contained EDCs and other harmful chemicals.

126.    At all relevant times, Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen reached their intended consumers, including Plaintiff, without substantial change in the condition in which the Defendants designed, produced, manufactured, sold, distributed, labeled, and marketed them.

Case ID: 240502672

127.    Manufacturer Defendants had a duty to create Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen in a way that was not unreasonably dangerous for their normal, intended, or anticipated use.

128.    Retailer Defendants had a duty to ensure that Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen was not defective and safe for its intended use before selling said products to consumers, such as Dr. Carter.

129.    Defendants' Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers were defective as they were formulated, designed, and manufactured with carcinogens.

130.    The Defendants' Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen were defective because their carcinogenic properties made them unreasonably dangerous in that they were dangerous to an extent beyond that which an ordinary consumer, such as the Plaintiff, would contemplate.

131.    Further, the magnitude of the danger associated with use of Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen's Best relaxers outweighs the utility of these products.

132.    The dangers of the Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen were unknown to the ordinary consumer.

133.    Plaintiff did not know of these dangers. If she would have known, these dangers would have been unacceptable to her.

134.    Defendants knew, or should have known, of the unreasonable risks of harm associated with the use of Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle,

Case ID: 240502672

and Ultra Sheen, namely their unreasonably dangerous and carcinogenic properties and their propensity to cause cancer.

135.    At the time of Plaintiff's exposure, Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers were being used in a normal, intended, or anticipated manner, as a chemical hair relaxer product.

136.    Plaintiff used Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers without knowledge of their dangerous characteristics, specifically the carcinogenic risks associated with use of the products.

137.    The foreseeable risks associated with use of Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers exceeded the alleged benefits associated with their design and formulation.

138.    Defects in Defendants' Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxer products increased the risk, and were a producing cause, proximate cause, and substantial factor in the development of Plaintiff's cancer.

139.    As a result of the Defendants' reckless and conscious disregard for the health and safety of consumers of their hair relaxer products, Plaintiff sustained the following damages as a foreseeable, direct, and proximate result of Defendants' acts and omissions:

      a.    Economic losses, including medical care and lost earnings; and,

      b.    Noneconomic losses, including physical and mental pain and suffering, emotional distress, inconvenience, loss of enjoyment of life, impairment of quality of life, past and future.

WHEREFORE, Plaintiff respectfully demands judgment in her favor and against Defendants, in an amount in excess of the applicable arbitration limits, including interest, costs of

Case ID: 240502672

suit, delay damages, compensatory damages, punitive damages, and such other relief as this Honorable Court may deem appropriate.

<div align="center">

**COUNT II**
**STRICT LIABILITY – FAILURE TO WARN**
**(Plaintiff v. L'Oreal Defendants, Strength of Nature Defendants, Defendant Avlon, ACME Defendants and CVS Defendants)**

</div>

140.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

141.    Plaintiff brings this strict liability claim against Defendants for failure to warn about the toxic carcinogenic chemicals in their hair relaxer products.

142.    At all relevant times, Defendants engaged in the business of testing, developing, designing, manufacturing, marketing, selling, distributing, and/or promoting Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers, which are defective and unreasonably dangerous to its consumers, including Plaintiff because they do not contain adequate warnings or instructions regarding the dangerous carcinogenic chemicals contained in the relaxer products.

143.    The Defendants had a duty to warn of the risks associated with using their hair relaxer products.

144.    Defendants knew, or should have known, of the unreasonable risks of harm associated with the use of their chemical hair relaxer products, namely their unreasonably dangerous and carcinogenic properties and their propensity to cause cancer.

145.    However, Defendants purposefully marketed their no-lye hair relaxer products as safe because they did not contain "lye" or sodium hydroxide but failed to warn consumers about the carcinogenic endocrine-disrupting chemicals in the hair relaxers.

Case ID: 240502672

146.    Defendants disseminated information that was inaccurate, false, and misleading and that failed to communicate accurately or adequately the comparative severity, duration, and extent of the risk of injuries associated with use and frequent use of Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers; and continued to promote the efficacy of the relaxers, even after they knew or should have known of the unreasonable risks from use; and concealed, downplayed, or otherwise suppressed, through aggressive marketing and promotion, any information or research about the risks and dangers of use of the relaxers.

147.    Defendants failed to exercise reasonable care to warn of the dangerous carcinogenic risks associated with the use of its hair relaxers.

148.    Plaintiff reasonably relied on the skill, superior knowledge, and judgment of the Defendants.

149.    Had Defendants properly disclosed the risks associated with use of their chemical hair relaxers, Plaintiff could have chosen not to use the chemical hair relaxer and avoid the risk of developing cancer from exposure to the hair relaxing chemicals.

150.    As a result of the absence of warning or instruction by Defendants regarding the significant health-and-safety risks associated with the use of their hair relaxers, Plaintiff was unaware that the Defendants' hair relaxers were unreasonably dangerous and had carcinogenic properties, since such information was not known to the general public.

151.    Defendants' failure to warn regarding the dangers associated with use of Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers increased the risk, and was a producing cause, proximate cause, and substantial factor in the development of Plaintiff's cancer.

Case ID: 240502672

152.     As a result of the Defendants' reckless and conscious disregard for the health and safety of consumers of their hair relaxer products, Plaintiff sustained the following damages as a foreseeable, direct, and proximate result of Defendants' acts and omissions:

      a.    Economic losses, including medical care and lost earnings; and

      b.    Noneconomic losses, including physical and mental pain and suffering, emotional distress, inconvenience, loss of enjoyment of life, impairment of quality of life, past and future.

WHEREFORE, Plaintiff respectfully demands judgment in her favor and against Defendants, in an amount in excess of the applicable arbitration limits, including interest, costs of suit, delay damages, compensatory damages, punitive damages, and such other relief as this Honorable Court may deem appropriate.

### COUNT III
### NEGLIGENCE
### (Plaintiff v. L'Oreal Defendants, Strength of Nature Defendants, and Avlon Defendant)

153.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

154.     At all relevant times, Defendants engaged in the business of testing, developing, designing, manufacturing, marketing, selling, distributing, and/or promoting Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen.

155.     Plaintiff used Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen.

156.     Defendants had a duty to exercise reasonable care in the research, design, manufacturing, packaging, marketing, advertisement, supply, promotion, sale, and distribution of Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers,

Case ID: 240502672

including a duty to assure that the products would not cause users to suffer unreasonable dangerous side effects, including developing cancer.

157.    Defendants had a duty to provide true and accurate information and warnings concerning the risks of using Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers.

158.    Defendants failed to exercise reasonable care in that they knew, or should have known, of the unreasonable risks of harm associated with the use of Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers and the propensity for the Hair Relaxers to cause cancer.

159.    Defendants also knew, or in the exercise of reasonable care, should have known, that consumers and users of Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers were unaware of the carcinogenic risks associated with use of the product.

160.    Defendants' negligence includes, but is not limited to, the following acts and/or omissions:

      a.    Failing to sufficiently test Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers to determine whether they were safe for their intended use;

      b.    Failing to sufficiently test Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers to determine their carcinogenic properties after learning that their formulations could be carcinogenic;

Case ID: 240502672

c.      Marketing, advertising, and recommending the use of Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers without sufficient knowledge as to their dangerous propensities;

d.      Representing that Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers were safe for their intended use when they were not;

e.      Failing to disclose the risk of serious harm associated with use Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers;

f.      Failing to provide adequate instructions, guidelines, and safety precautions to protect the health of those persons whom Defendants could reasonably foresee would use Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen;

g.      Failing to use reasonable and prudent care in the design, development, and manufacture of Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers, so as to avoid the risk of serious harm associated with use;

h.      Failing to sufficiently test the "inert" ingredients and/or adjuvants, including the chemicals classified as fragrances contained within Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers, and the propensity of these ingredients to render the relaxers toxic or to increase the toxicity of the relaxers;

Case ID: 240502672

i.      Systematically suppressing or downplaying contrary evidence about the risks, incidence, and prevalence of the side effects of exposures to Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers, such as side effects of exposure to endocrine-disrupting chemicals;

j.      Failing to disclose the risk of serious harm associated with use of endocrine-disrupting chemicals either alone or when included Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen; and,

k.      Continuing to manufacture and sell Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers, with the knowledge that they were unreasonably safe and dangerous.

l.      Marketing, advertising, and recommending the use Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers without sufficient knowledge as to their dangerous propensities;

m.      Representing that Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers were safe for their intended use when they were not;

n.      Failing to disclose the risk of serious harm associated with use of Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers;

o.      Failing to provide adequate instructions, guidelines, and safety precautions to protect the health of those persons whom Defendants could reasonably

Case ID: 240502672

foresee would use Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers;

p.    Representing that Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers were safe, specifically because they did not contain "Lye", sodium hydroxide, for their intended use when they were not;

q.    Failing to disclose the risk of serious harm associated with use of Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers;

r.    Continuing to manufacture and sell Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers, with the knowledge that the relaxers were unreasonably safe and dangerous.

161.    It was reasonably foreseeable that consumers, including Plaintiff, would suffer injury and possibly die as a result of Defendants' failure to exercise reasonable care in the manufacturing, marketing, promotion, labeling, distribution, and sale Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers.

162.    Defendants' negligent decisions to market and distribute Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers increased the risk of harm, and was a producing cause, proximate cause, and substantial factor of the development of Plaintiff's cancer.

163.    As a result of the Defendants' reckless and conscious disregard for the health and safety of consumers of their hair relaxer products, Plaintiff sustained the following damages as a foreseeable, direct, and proximate result of Defendants' acts and omissions:

Case ID: 240502672

a. Economic losses, including medical care and lost earnings; and,

b. Noneconomic losses, including physical and mental pain and suffering, emotional distress, inconvenience, loss of enjoyment of life, impairment of quality of life, past and future.

WHEREFORE, Plaintiff respectfully demands judgment in her favor and against Defendants, in an amount in excess of the applicable arbitration limits, including interest, costs of suit, delay damages, compensatory damages, punitive damages, and such other relief as this Honorable Court may deem appropriate.

### COUNT IV
### BREACH OF IMPLIED WARRANTIES
### (Plaintiff v. L'Oreal Defendants, Strength of Nature Defendants, Defendant Avlon, ACME Defendants and CVS Defendants)

164.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

165.    At all relevant times, Defendants L'Oréal Defendants and Strength of Nature Defendants were engaged in the business of manufacturing, formulating, creating, designing, testing, labeling, packaging, supplying, marketing, promoting, selling, advertising, and otherwise introducing Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers that Plaintiff used into the stream of commerce.

166.    At the time L'Oréal Defendants and Strength of Nature Defendants, marketed, sold, and distributed its Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers for use by Plaintiff, Defendants knew of their intended use and implicitly warranted that the products were of merchantable quality and safe and fit for the use for which they were intended, specifically to chemically straighten hair.

Case ID: 240502672

167.     Before the time of Plaintiff's use of Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers, L'Oréal Defendants, Strength of Nature Defendants, and Defendant Avlon impliedly warranted to consumers, including Plaintiff, that its relaxers were of merchantable quality and safe and fit for the use for which they were intended; specifically, to chemically straighten hair.

168.     L'Oréal Defendants, Strength of Nature Defendants, and Defendant Avlon, however, failed to disclose that Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers have dangerous propensities when used as intended and that the use of the relaxers carry an increased risk of developing severe injuries, including Plaintiff's cancer.

169.     Plaintiff reasonably relied upon the skill, superior knowledge, and judgment of L'Oréal Defendants, Strength of Nature Defendants, and Defendant Avlon, and upon their implied warranties that its Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers were of merchantable quality and fit for their intended purpose or use.

170.     Defendants' Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers were expected to reach, and did in fact reach, consumers and/or users, including Plaintiff, without substantial change in the condition in which they were manufactured and sold by L'Oréal Defendants, Strength of Nature Defendants, and Defendant Avlon.

171.     At all relevant times to this litigation, Defendants were aware that consumers and users of its Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers, including Plaintiff, would use the products as marketed; therefore, Plaintiff was a

Case ID: 240502672

foreseeable user of Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers.

172.    Defendants intended that its Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers be used in the manner in which Plaintiff was exposed, and Defendants implicitly warranted their product to be of merchantable quality, safe, and fit for this use, despite the fact that the relaxers were not adequately tested and/or researched.

173.    In reliance on Defendants' implied warranty, Plaintiff used Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers as instructed and labeled and in the foreseeable manner intended, recommended, promoted, and marketed by Defendants.

174.    Plaintiff could not have reasonably discovered or known of the risks of serious injury associated with Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers.

175.    Defendants breached their implied warranty to Plaintiff in that Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers were not of merchantable quality, safe, or fit for their intended use, an/or adequately tested.

176.    Defendants' Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers have dangerous propensities when used as intended and anticipated and can cause serious injuries, including the cancer Plaintiff sustained.

177.    The harm caused by Defendants' Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers far outweighed their benefits, rendering the products more dangerous than an ordinary consumer or user would expect and more dangerous than alternative products.

Case ID: 240502672

178.    As a direct and proximate result of Defendants' wrongful acts and omissions Plaintiff has suffered severe and permanent physical and emotional injuries.

179.    As a result of the Defendants' reckless and conscious disregard for the health and safety of consumers of their hair relaxer products, Plaintiff sustained the following damages as a foreseeable, direct, and proximate result of Defendants' acts and omissions:

a.    Economic losses, including medical care and lost earnings; and

b.    Noneconomic losses, including physical and mental pain and suffering, emotional distress, inconvenience, loss of enjoyment of life, impairment of quality of life, past and future.

WHEREFORE, Plaintiff respectfully demands judgment in her favor and against Defendants, in an amount in excess of the applicable arbitration limits, including interest, costs of suit, delay damages, compensatory damages, punitive damages, and such other relief as this Honorable Court may deem appropriate.

Respectfully submitted,

**KLINE & SPECTER, P.C.**

By: _____

SHANIN SPECTER, ESQUIRE
TOBI L. MILLROOD, ESQUIRE
BRADEN R. LEPISTO, ESQUIRE
SHERRELL L. DANDY, ESQUIRE
*Attorneys for Plaintiffs*

Dated:  May 22, 2024_

Case ID: 240502672

## VERIFICATION

I, Dr. Merle Carter, hereby verify that I am the Plaintiff in the foregoing action; that the attached Complaint is based upon information which I have furnished to my counsel and information which has been gathered by my counsel in the preparation of the lawsuit. The language of the Complaint is that of counsel and not of affiant. I have read the Complaint and to the extent that the allegations therein are based upon information I have given counsel, they are true and correct to the best of my knowledge, information, and belief. To the extent that the contents of the Complaint are that of counsel, I have relied upon counsel in making this Verification. I understand that false statements made herein are made subject to the penalties of 18 Pa. C.S.A. § 4904 relating to unsworn falsifications to authorities.

Date: 5/22/2024

Dr. Merle Carter, Plaintiff

# EXHIBIT A-3



**B&R**
Services for Professionals Inc.

PHILADELPHIA, PA 19107
PHONE: (215) 546-0169
FAX: (215) 985-0169

National Association of
Professional Process Servers

Merle Carter

    -VS-

L'Oreal USA, Inc, et al

**COURT** Court of Common Pleas of Pennsylvania
Philadelphia County - Civil

**CASE NUMBER** 240502676

*Filed and Attested by the
Office of Judicial Records
23 MAY 2024 02:49 am
G. IMPERATO*

## AFFIDAVIT

State of  Pennsylvania
County of  Philadelphia

**B&R Control #**  CS208232.03
**Reference Number**

    Nipsey Mitchell, being duly sworn according to law, deposes and says that he/she is the process server/sheriff herein named, and that the facts set forth below are true and correct to the best of their knowledge, information and belief.

    On 5/23/2024 we received the  **Complaint**  for service upon:

**CVS Pharmacy** at **6701 Ridge Avenue, Philadelphia, PA 19128.**

Service was **NOT SERVED** on  **05/23/2024** at **4:30 PM**,  for the reason described below:

**REFUSED SERVICE. SPOKE TO 3 MANAGERS AND THEY ALL SAID TO SEND TO CORPORATE.**

**I verify that the statements made in this affidavit are true and correct to the best of my knowledge, information, and belief. I understand that false statements herein are made subject to the penalties of 18 Pa.C.S. § 4904, relating to unsworn falsification to authorities.**

**Process Server/Sheriff** _Nipsey Mitchell_

ATTEMPTS:

---

Client    Phone (215) 772-1000              :           **Filed Date:** 05/22/2024  **BR Serve By:** 05/28/2024

Sherrell L. Dandy, Esquire
Kline & Specter, P.C.
1525 Locust Street
19th Floor
Philadelphia, PA  19102



ORIGINAL

# EXHIBIT A-4



B&R
Services for Professionals Inc.

53 SOUTH 12TH STREET
PHILADELPHIA, PA 19107
PHONE: (215) 546-7400
FAX: (215) 985-0169



National Association of
Professional Process Servers

Merle Carter

-VS-

L'Oreal USA, Inc, et al

**COURT**  Court of Common Pleas Of Pennsylvania
Philadelphia County - Civil

**CASE NUMBER**  2405026...

*Filed and Attested by the
Office of Judicial Records
24 MAY 2024 01:57 pm
G. IMPERATO*

## AFFIDAVIT

State of  Pennsylvania
County of   Philadelphia

**B&R Control #**   CS208232.02
**Reference Number**

    James Davis, being duly sworn according to law, deposes and says that he/she is the process server/sheriff herein named, and that the facts set forth below are true and correct to the best of their knowledge, information and belief.

    On 5/23/2024 we received the **Complaint** and that service was effected upon **Acme Markets** at **7700 CRITTENDEN STREET, PHILADELPHIA, PA 19118** on **5/24/2024** at **4:57 PM**, in the manner described below:

    **By service upon:** An individual, (MANAGER) as agent or person in charge of office or usual place of business, who refused to provide their name.

**Description:**
Gender: **MALE**   Race/Skin: **WHITE**      Age:      Weight:         Height: **Over 6ft5in**      Hair: **BROWN**   Glasses:**No**
Other:

**Service Notes:**

**Process Server/Sheriff** _____

ATTEMPTS:

I verify that the statements made in this affidavit are true and correct to the best of my knowledge, information, and belief. I understand that false statements herein are made subject to the penalties of 18 Pa.C.S. § 4904, relating to unsworn falsification to authorities.

Client      Phone (215) 772-1000                            :                    **Filed Date:** 05/22/2024   **BR Serve By:** 05/28/2024

Sherrell L. Dandy, Esquire
Kline & Specter, P.C.
1525 Locust Street
19th Floor
Philadelphia, PA  19102

ORIGINAL

# EXHIBIT A-5



**B&R**
Services for Professionals Inc.

203 N JUNIPER STREET
PHILADELPHIA, PA 19107
PHONE: (215) 546-7400
FAX: (215) 985-0169

National Association of
Professional Process Servers

Merle Carter

-VS-

L'Oreal USA, Inc, et al

**COURT** Court of Common Pleas of Pennsylvania
Philadelphia County - Civil

**CASE NUMBER**  240502672

*Filed and Attested by the*
*Office of Judicial Records*
*24 MAY 2024 01:59 pm*
*G. IMPERATO*

# AFFIDAVIT

State of  Pennsylvania
County of  Philadelphia

**B&R Control #**   CS208232.01

**Reference Number**

James Davis, being duly sworn according to law, deposes and says that he/she is the process server/sheriff herein named, and that the facts set forth below are true and correct to the best of their knowledge, information and belief.

On 5/23/2024 we received the **Complaint** and that service was effected upon **Acme Markets** at **7010 GERMANTOWN AVENUE, PHILADELPHIA, PA 19119** on **5/24/2024** at **4:45 PM**, in the manner described below:

**By service upon:** An individual, (Assistant Manager) as agent or person in charge of office or usual place of business, who refused to provide their name.

**Description:**
Gender: **MALE**   Race/Skin: **WHITE**       Age:      Weight:        Height: **5ft9in - 6ft0in**    Hair: **BROWN**   Glasses:**Yes**
Other:

Service Notes:

**Process Server/Sheriff** _____

ATTEMPTS:

**I verify that the statements made in this affidavit are true and correct to the best of my knowledge, information, and belief. I understand that false statements herein are made subject to the penalties of 18 Pa.C.S. § 4904, relating to unsworn falsification to authorities.**

| Client | Phone (215) 772-1000 | : | | Filed Date: | 05/22/2024 | BR Serve By: | 05/30/2024 |
|---|---|---|---|---|---|---|---|

Sherrell L. Dandy, Esquire
Kline & Specter, P.C.
1525 Locust Street
19th Floor
Philadelphia, PA  19102



ORIGINAL

# EXHIBIT A-6



**B&R**
Services for Professionals Inc.

National Association of
Professional Process Servers

Merle Carter

    -VS-

L'Oreal USA, Inc, et al

**COURT** Court of Common Pleas of Pennsylvania
Philadelphia County - Civil

Filed and Attested by the
Office of Judicial Records
28 May 2024 02:41 pm
G. IMPERATO

**CASE NUMBER** 240502672

# AFFIDAVIT

State of Pennsylvania
County of Philadelphia

**B&R Control #** CS208232.04
**Reference Number**

    James Davis, being duly sworn according to law, deposes and says that he/she is the process server/sheriff herein named, and that the facts set forth below are true and correct to the best of their knowledge, information and belief.

    On 5/23/2024 we received the **Complaint** and that service was effected upon **CVS Pharmacy** at **7065 LINCOLN DRIVE, PHILADELPHIA, PA 19119** on **5/24/2024** at **5:08 PM**, in the manner described below:

    **By service upon:** An individual, (STORE MANAGER) as agent or person in charge of office or usual place of business, who refused to provide their name.

**Description:**
Gender: **MALE**   Race/Skin: **BROWN**   Age:   Weight:   Height: **5ft4in - 5ft8in**   Hair: **BLACK**   Glasses:**No**
Other:

Service Notes:

I verify that the statements made in this affidavit are true and correct to the best of my knowledge, information, and belief. I understand that false statements herein are made subject to the penalties of 18 Pa.C.S. § 4904, relating to unsworn falsification to authorities.

**Process Server/Sheriff** _____

ATTEMPTS:

| Client | Phone (215) 772-1000 | : | | **Filed Date:** | 05/22/2024 | **BR Serve By:** | 05/28/2024 |
|---|---|---|---|---|---|---|---|

Sherrell L. Dandy, Esquire
Kline & Specter, P.C.
1525 Locust Street
19th Floor
Philadelphia, PA 19102



ORIGINAL

# EXHIBIT A-7

MERLE CARTER, M.D.
6608 LINCOLN DRIVE
PHILADELPHIA, PA 19199

PLAINTIFF

V.

L'ORÉAL USA, INC., et al.,

DEFENDANTS.

IN THE COURT OF COMMON PLEAS
PHILADELPHIA COUNTY
PENNSYLVANIA

Case ID. 240502672



Filed and Attested by the
Office of Judicial Records
13 JUN 2024 04:11 pm
B. MERCEDES

## ENTRY OF APPEARANCE

**TO THE OFFICE OF JUDICIAL RECORDS:**

Kindly enter my appearance in the above-captioned matter as counsel of record for Defendant CVS Pharmacy, Inc. (erroneously sued as "CVS Pharmacy 6701 Ridge Avenue" and "CVS Pharmacy 7065 Lincoln Drive").

Dated:  June 13, 2024

**ICE MILLER LLP**

By:

Jacqueline M. Lesser (204622)
1735 Market Street, Suite 3900
Philadelphia, PA  19103
Telephone: (215) 982-5165
Email: jacqueline.lesser@icemiller.com

4884-2648-7751.1

# EXHIBIT A-8

**ICE MILLER LLP**
Jacqueline M. Lesser, Esquire
Attorney ID No: 204622
1735 Market Street, Suite 3900
Philadelphia, PA 19103
Telephone: (215) 982-5165
Email: Jacqueline.Lesser@icemiller.com

*Attorney for Defendant CVS Pharmacy, Inc.
(erroneously sued as "CVS Pharmacy 6701
Ridge Avenue" and "CVS Pharmacy 7065
Lincoln Drive)*

NOTICE TO PLEAD:
To: Plaintiff
You are hereby notified to plead to the
enclosed Preliminary Objections within
twenty (20) days from service hereof, or
judgment may be entered against you.

*s/Jacqueline M. Lesser*

*Attorney for Defendant CVS Pharmacy, Inc.
(erroneously sued as "CVS Pharmacy 6701
Ridge Avenue" and "CVS Pharmacy 7065
Lincoln Drive)*

*Filed and Attested by the
Office of Judicial Records
17 JUN 2024 04:41 pm
S. RUFFO*

---

| | |
|---|---|
| MERLE CARTER, M.D.<br>6608 LINCOLN DRIVE<br>PHILADELPHIA, PA 19199<br><br>PLAINTIFF<br><br>V.<br><br>L'ORÉAL USA, INC. , et al.,<br><br>DEFENDANTS. | IN THE COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY,<br>PENNSYLVANIA<br><br><br>Case ID: 240502672 |

---

**PRELIMINARY OBJECTIONS TO PLAINTIFF'S COMPLAINT BY CVS
PHARMACY, INC. (ERRONEOUSLY SUED AS "CVS PHARMACY 6701 RIDGE
AVENUE" AND "CVS PHARMACY 7065 LINCOLN DRIVE")**

Pursuant to Pennsylvania Rule of Civil Procedure 1028, Defendant CVS Pharmacy, Inc.

("CVS") (erroneously also sued as "CVS Pharmacy 6701 Ridge Avenue" and "CVS Pharmacy

7065 Lincoln Drive")[1], by and through its undersigned counsel, respectfully submits its

---

[1] CVS Pharmacy, Inc. is the operating entity that ultimately controls and is responsible for the sale
of products by CVS retail store locations in Pennsylvania. CVS Pharmacy 6701 Ridge Avenue and
CVS Pharmacy 7065 Lincoln Drive located in Philadelphia are not proper defendants as they are
retail store locations and are not legal entities. Notwithstanding these Preliminary Objections by
CVS Pharmacy, Inc., CVS Pharmacy 6701 Ridge Avenue and CVS Pharmacy 7065 Lincoln Drive
do not waive, and expressly reserve, the right to seek dismissal as improper parties at a later date.

2

Case ID: 240502672
Control No.: 24062644

Preliminary Objections to Plaintiff's Complaint. Plaintiff has improperly sued CVS retail store locations and has improperly attempted to serve CVS at these retail stores. Further, Plaintiff's vague and conclusory allegations fall short of alleging any facts sufficient to show liability for any of her claims on the part of CVS.

1. Plaintiff, Merle Carter, M.D., filed her Complaint on or about May 22, 2024, attached here as Ex. A.

2. In her Complaint, Plaintiff alleges she used numerous hair relaxer products including "different variations" of Dark & Lovely, Precise, Bantu, Optimum Care, Motions, Dr. Miracle, Ultra Sheen, Affirm and other unspecified brands of chemical hair relaxer products every four to eight weeks starting in approximately 1976. *Id.* at ¶¶ 27-29, 71-83.

3. Plaintiff allegedly purchased these unspecified variations of hair relaxer products from local ACME Markets and CVS retail store locations within Pennsylvania. *See id.* at ¶¶ 82-83.

4. Plaintiff alleges she developed endometrial cancer in November 2015 as a result of her use of the "different variations" of hair relaxer products and their alleged endocrine-disrupting chemicals. *See id.* at ¶¶ 30, 113. Plaintiff claims a study in 2022, seven years after her diagnosis, shows that her use of hair relaxers caused her cancer. *Id.* at ¶¶ 108-112, 113.

5. Plaintiff asserts causes of action against all defendants based on strict liability – design defect, strict liability – failure to warn, and breach of implied warranties. *See generally Compl.*[2] Plaintiff asserts a negligence cause of action against only the manufacturing defendants. *See id.* at ¶¶ 153-163.

---

[2] Plaintiff also brings a claim for negligence but not as to CVS.

Case ID: 240502672
Control No.: 24062644

6.    Plaintiff alleges she purchased multiple hair relaxer kits from CVS starting in approximately 2004, including Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen. *Id*. at ¶ 83.

### I.    PRELIMINARY OBJECTIONS

### A.  PRELIMINARY OBJECTIONS TO PLAINTIFF'S COMPLAINT PURSUANT TO P.A. R.C.P. 1028(A)(1) DUE TO IMPROPER SERVICE ON THE CVS RETAIL STORE DEFENDANTS.

7.    Under Pennsylvania Rule of Civil Procedure 1028(a)(1), a preliminary objection may be asserted due to improper service of a writ of summons of a complaint.

8.    In her Complaint, Plaintiff purports to name three CVS defendants: CVS Pharmacy, Inc., CVS Pharmacy 6701 Ridge Avenue and CVS Pharmacy 7065 Lincoln Drive.

9.    CVS Pharmacy, Inc. is the operating entity that ultimately controls and is responsible for the sale of products by CVS retail stores. CVS Pharmacy 6701 Ridge Avenue and CVS Pharmacy 7065 Lincoln Drive are not proper defendants as they are retail store locations and are not legal entities. *Ex. B* at ¶ 5. CVS Pharmacy, Inc. is the only legal CVS entity and, therefore, is the only proper defendant.

10.    As set forth in the attached Affidavit of CVS Pharmacy, Inc. CVS Pharmacy, Inc. is a foreign business corporation formed in Rhode Island and has its principal place of business in Rhode Island. *Ex. B* at ¶ 3. Accordingly, Plaintiff was required to serve CVS in accordance with Pennsylvania Rule of Civil Procedure 404.

11.    On or about May 30, 2024, Plaintiff filed an Affidavit of Service purporting to have served "CVS Pharmacy at 7065 Lincoln Drive" with the Complaint by Personal Service on May 24, 2024, attached here as Ex. C.

Case ID: 240502672
Control No.: 24062644

12.     While Plaintiff's Affidavit of Service suggests that she served CVS Pharmacy 7065 Lincoln Drive on May 24, 2024, Pennsylvania Rule of Civil Procedure 404 provides that "original process shall be served outside the Commonwealth within ninety days of the issuance of the writ or the filing of the complaint or the reissuance or the reinstatement thereof."

13.     Pursuant to Rule 403 of the Pennsylvania Rules of Civil Procedure, "a copy of the process shall be mailed to the defendant by any form of mail requiring a receipt signed by the defendant or his authorized agent."

14.     The retail store locations are not the proper defendants, nor are they authorized agents to accept service on behalf of CVS Pharmacy, Inc.  Therefore, it is submitted that service by personal service upon an unidentified individual at the store locations is not proper service upon CVS.  *See Salas v. Wal-Mart Stores East, Inc.*, 2015 WL 6737591*3 (Pa. Supr. Ct. August 7, 2015) (holding that service was not proper where service was made upon an individual who worked at the store location but was not "a person in charge of an open retail store" in compliance with Pa.R.Civ.P. 424.).[3]

**WHEREFORE**, for the reasons described above and in the accompanying brief, CVS respectfully requests that the Court sustain its preliminary objections and dismiss Counts I (Strict Liability – Design Defect), Count II (Strict Liability – Failure to Warn) and IV (Breach of Implied Warranties).

### B.  PRELIMINARY OBJECTIONS TO PLAINTIFF'S COMPLAINT FOR FAILURE TO COMPLY WITH PA. R. CIV. P. 1019(A) AND 1020(A) AND FOR LACK OF SPECIFICITY UNDER PA.R.CIV.P. 1028(a)(3) – COUNTS I, II, IV

15.     The averments contained in the preceding paragraphs are incorporated herein by reference as if fully set forth herein.

---

[3] CVS Pharmacy, Inc.—the only proper defendant—was served with the Complaint via certified mail on May 30, 2024. Ex. B at ¶ 7.

Case ID: 240502672
Control No.: 24062644

16. Pennsylvania Rule of Civil Procedure 1028(a)(2) provides for the filing of preliminary objections where a complaint fails "[t]o conform to law or rule of court." Pa.R.Civ.P. 1028(a)(2).

17. Rule of Civil Procedure 1019(a) in turn requires that the material facts on which a cause of action is based be stated in a concise and summary form. Pa.R.Civ.P. 1019(a).

18. Indeed, as explained by the Superior Court, "a pleader must set forth concisely the facts upon which his cause of action is based. The complaint must not only apprise the defendant of the claim being asserted, but it must also summarize the essential facts to support the claim." *Bouchon v. Citizen Care, Inc.*, 176 A.3d 244, 258 (Pa. Super. 2017) (*quoting Donaldson v. Davidson Bros., Inc.*, 144 A.3d 93, 103 (Pa. Super. 2016)).

19. Rule 1020(a) also provides that "[t]he plaintiff may state in the complaint more than one cause of action cognizable in a civil action against the same defendant." However, "[e]ach cause of action and any special damage related thereto shall be stated in a separate count containing a demand for relief." Pa.R.Civ.P. 1020(a).

20. With respect to Rule 1020(a), the Superior Court has observed that "[w]hile there is some authority that a single cause of action may be pled against two or more defendants who are alleged to be jointly and severally liable, that cannot be the case where the factual background underlying each defendant's liability is different." *Bouchon*, 176 A.3d at 258 (*citing General State Authority v. Lawrie and Green*, 356 A.2d 851, 854 (Pa. Commw. 1976)).

21. A complaint also "must apprise the defendant of the nature and extent of the plaintiff's claim so that the defendant has notice of what the plaintiff intends to prove at trial and may prepare to meet such proof with his own evidence." *Id.* (*quoting Discover Bank v. Stucka*, 33 A.3d 82, 86–87 (Pa. Super. 2011)).

6

Case ID: 240502672
Control No.: 24062644

22.    In addition, Rule 1028(a)(3) of the Pennsylvania Rules of Civil Procedure, preliminary objections to a Complaint may be sustained where the pleading fails to plead with sufficient specificity. *See* Pa.R.Civ.P. 1028(a)(3).

23.    Pennsylvania is a fact pleading state. A complaint must "disclose 'material facts' sufficient to enable the adverse party to prepare his case." *Laudau v. Western Pennsylvania Nat'l Bank*, 282 A.2d 335, 339 (Pa. 1971). "Simple, vague and conclusory allegations" are not enough. *Id*. at 340.

24.    If Plaintiff "fails to connect any particular [defendant] to the cause" of her injuries, the claim must fail. *Cummins v. Firestone Tire and Rubber Co*., 495 A.2d 963, 967 (Pa. Super. Ct. 1985). Joinder of multiple defendants requires Plaintiff to plead the appropriate elements for "each defendant, separately and independently." *Id*. at 968. Without specific "identification, there can be no allegation of . . . legal causation, and hence there can be no liability." *Id*. (finding that absent connecting specific appellee and their product to the injury, appellant's claims for strict liability failed for lack of specificity).

25.    A complaint must contain essential material facts that support the claim against the defendant, enough to allow the defendant to prepare a defense. *See McShea v. City of Phila*., 995 A.2d 334, 339 (Pa. 2010). If particular allegations are too vague, the defendant may make a preliminary objection in the nature of a motion to strike that portion of the complaint. *See Connor v. Allegheny Hosp*., 461 A.2d 600, 603 n.3 (Pa. 1983).

26.    Plaintiff's Complaint against CVS fails to meet the requisite pleading standard because her allegation that she purchased from CVS "unspecified" and "different variations" of hair relaxer product(s) at an unspecified frequency across a twenty-year span, "starting in approximately 2004", is overbroad and vague. *Compl*. at ¶ 6.

7

Case ID: 240502672
Control No.: 24062644

27.    In her Complaint, Plaintiff fails to provide any further details, and it remains unclear what particular products she purchased on how many occasions, and when.  Plaintiff's allegations that she purchased hair relaxer products at CVS are so vague and ambiguous that CVS cannot determine the actual products purchased at CVS that Plaintiff used or the frequency with which she used those products purchased at CVS.  Accordingly, CVS cannot determine the specific nature and scope of Plaintiff's claims against it and, therefore, cannot understand the specific basis on which Plaintiff seeks to recover.

28.    Moreover, Plaintiff's Complaint repeatedly speaks collectively to "Defendants" without differentiating any conduct or claims as between or among them. *See Compl*. ¶¶ 123, 125, 129-130, 134, 138-139, 142-147, 149-152, 170-173, 175-179.

29.    Plaintiff purports to name twelve defendants in this case, ranging from product manufacturers, retail companies, and retail store locations.

30.    Despite significant differences between the defendants, each of Plaintiff's claims allege, with the exception of Count I, without factual support, that all "defendants" engaged in the same conduct, such as manufacturing the products.

31.    For example, in Plaintiff's strict liability – failure to warn claim, Count II, Plaintiff alleges that "Defendants had a duty to warn of the risks associated with using their hair relaxer products" and that "Defendants knew, or should have known, of the unreasonable risks of harm associated with the use of their chemical hair relaxer products, namely their unreasonably dangerous and carcinogenic properties and their propensity to cause cancer." *Id*. at ¶¶ 143-144.

32.    However, Plaintiff does not, and cannot, plausibly assert that CVS manufactured the hair relaxer products.  In fact, nowhere in the Complaint does Plaintiff allege any conduct attributable to CVS specifically.

8

Case ID: 240502672
Control No.: 24062644

33.    The only allegation in Plaintiff's 179-paragraph Complaint that even mentions conduct attributable specifically to the "Retailer Defendants," which includes CVS as well as other Defendants, is that "Retailer Defendants had a duty to ensure that [their Products] w[ere] not defective and safe for its intended use before selling said products to consumers, such as Dr. Carter." *Id.* at ¶ 128.  This allegation, however, lumps the retailer defendants together as one.

34.    Given the vague averments in the Complaint directed at all defendants, it is impossible for CVS to ascertain which allegations of conduct and facts are directed to it specifically.

35.    CVS is entitled to be informed of the specific conduct that Plaintiff believes is actionable as to CVS.

36.    Plaintiff therefore must plead her claims with specificity so as to put CVS on notice of the nature and extent of Plaintiff's claims.

**WHEREFORE**, for the reasons described above and in the accompanying brief, CVS respectfully requests that the Court sustain its preliminary objections and dismiss Counts I (Strict Liability – Design Defect), Count II (Strict Liability – Failure to Warn) and IV (Breach of Implied Warranties).

## C. PRELIMINARY OBJECTIONS IN THE NATURE OF A DEMURRER TO PLAINTIFF'S COMPLAINT BASED ON LEGAL INSUFFICIENCY UNDER PA.R.CIV.P. 1028(A)(4).

37.    The averments contained in the preceding paragraphs are incorporated herein by reference as if fully set forth herein.

38.    Under Rule 1028(a)(4) of the Pennsylvania Rules of Civil Procedure, the court may sustain objections based on demurrer due to legal insufficiency of the pleading. *See* Pa.R.Civ.P. 1028(a)(4).

9

Case ID: 240502672
Control No.: 24062644

39.     When considering "preliminary objections in the nature of demurrer," all well pleaded "material facts set forth in the challenged pleadings are admitted as true, as well as all inferences reasonably deducible therefrom." *Haun v. Cmty. Health Sys., Inc*., 14 A.3d 120, 123 (Pa. Super. Ct. 2011); *see also Giffin v. Chronister*, 616 A.2d 1070, 1072 (Pa. Commw. Ct. 1992). Yet, "conclusions of law, unwarranted inferences from facts, argumentative allegations or expressions of opinion" need not be accepted as true. *Giffin v. Chronister*, 616 A.2d at 1072.

40.     For a strict liability claim, the Plaintiff must prove first that the product was defective and second that the product's "defect was a substantial factor in causing the injury." *Spino v. John S. Tilley Ladder Co*., 696 A.2d 1169, 1172 (Pa. 1997) (emphasis added); *see also Charlton v. Toyota Indus. Equip.,* 714 A.2d 1043, 1046 (Pa. Super. Ct. 1998).

41.     To prove breach of warranty under Pennsylvania law, Plaintiff must show that the defendant's breach caused the plaintiff's injury. *See Altronics of Bethlehem, Inc. v. Repco, Inc*., 957 F.2d 1102, 1105 (3d Cir. 1992) (to carry the burden on a breach of warranty claim, plaintiff must show an "absence of other reasonable secondary causes").

42.     Plaintiff fails to adequately plead causation for both her strict liability claims and her breach of warranty claim because her allegations are overbroad and lack specificity.

43.     Although Plaintiff alleges she purchased eight different hair relaxer products at two CVS locations, she contradicts that assertion by generally alleging that she used multiple unidentified hair relaxer products including "other brands" over a twenty year period. *Compl*., ¶¶ 85-87. Plaintiff fails to provide any further details, and it remains unclear what particular products she purchased on how many occasions, and when.  Without knowing precisely which products Plaintiff purchased at CVS and how often she purchased and used those products purchased at CVS, it is impossible to assess Plaintiff's claim that her injury was a result of the "link between

10

[the frequency of] hair relaxer use and the development of uterine cancers" allegedly found in the 2022 study cited by Plaintiff.  As such, Plaintiff fails to plead that exposure to any product(s) purchased at CVS was a substantial cause of the complained injury.

44.      In addition, Plaintiff's only allegation specific to CVS regarding strict liability is nothing more than a conclusory statement that "Retailer Defendants had a duty to ensure [hair relaxer products] w[ere] not defective and safe for its intended use before selling said products to consumers, such as Dr. Carter." *Id.* ¶ 128. Plaintiff only makes this argument regarding Count I, strict liability – design defect, and makes no allegations against retailer defendants in Count II, strict liability – failure to warn. *See id.* ¶¶ 140-152.

45.      Though Plaintiff argues the retailer defendants, including CVS, had a duty to ensure the hair relaxer products were safe, no such duty exists in a strict liability claim. *See Barton v. Lowe's Home Ctrs., Inc.*, 124 A.3d 349, 354 (Pa. Super. 2015) (explaining that in *Tincher v. Omega Flex, Inc.*, 104 A.3d 328, 400-01 (Pa. 2014) the Pennsylvania Supreme Court declined to adopt the RESTATEMENT (THIRD) OF TORTS and instead reaffirmed the viability of 402A from the RESTATEMENT (SECOND)). Nonetheless, retailers like CVS have no duty to inspect products for latent defects and are not "liable to a customer for injuries caused by" such defects. *See Kratz v. Am. Stores Co.*, 59 A.2d 138, 138 (Pa. 1948) (stating that there is no duty on the part of the defendant to test and inspect the contents of the product before sale because that would be "wholly impractical").

46.      Furthermore, in her claim for breach of warranty, Plaintiff fails to allege anything specific against the retailer defendants, including CVS. *Compl.* at ¶¶ 164-179. Instead, all allegations are made against the manufacturing defendants or "Defendants" collectively. *Id.* at ¶¶ 123, 125, 129-130, 134, 138-139, 142-147, 149-152, 170-173, 175-179.

Case ID: 240502672
Control No.: 24062644

47.     Finally, Plaintiff's punitive damages claim against CVS should be dismissed. Punitive damages may be dismissed when the complaint fails to allege any facts other than "those which would constitute ordinary negligence." *McDaniel v. Merck, Sharp & Dohme*, 533 A.2d 436, 447-48 (1987) (affirming dismissal of punitive damages in response to preliminary objections because appellant failed to plead any facts in support of their overly conclusory statements of willful and wanton conduct). Punitive damages "may not be awarded for misconduct which constitutes ordinary negligence such as inadvertence, mistake and errors of judgment." *Id*. at 447.

48.     Punitive damages are awarded only when conduct is "outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others." *Id*. at 447 (citing RESTATEMENT (SECOND) OF TORTS, §908(2) (AM. L. INST. 2023).

49.     Punitive damages are "appropriate to punish and deter only extreme behavior, and in those rare instances in which they are justified, they are subject to strict judicial control." *Smith v. Reinhart Ford*, 68 Pa. D. & C.4th 432, 439 (Ct. Com. Pl. 2004) (emphasis added) (finding punitive damages appropriate because intentional fraud was plead which inherently provides proof for "outrageous conduct").

50.     The Court must look at the defendant's state of mind and consider whether there is an "evil motive." *See Feld v. Merriam*, 485 A.2d 742, 747-48 (Pa. 1984) (discussing generally the requirements for punitive damages under Pennsylvania's adoption of the RESTATEMENT (SECOND) OF TORTS guidelines).

51.     If the defendant does not subjectively know of the risk, especially if the danger is not easily perceptible, actions or lack thereof could not be the result of an evil motive. *See Feld v. Merriam*, 485 A.2d 742, 748 (Pa. 1984); *Hutchison ex rel. Hutchison v. Luddy*, 896 A.2d 1260,

Case ID: 240502672
Control No.: 24062644

1266 (Pa. 2006) (applying *Feld v. Merriam's* interpretation of Pennsylvania's adoption of the Restatement).

52.     Plaintiff fails to contend that CVS had "subjective appreciation of the risk" alleged, or that CVS was in any way malicious or evil in its action. *See Hutchison ex rel. Hutchison v. Luddy*, 896 A.2d at 1266. Plaintiff does not allege that CVS's conduct was willful, wanton, or reckless. *See generally Compl*.

53.     Furthermore, Plaintiff's use of the "groundbreaking" study released twenty years after she allegedly began purchasing hair relaxer products at CVS bars the possibility that CVS had any subjective appreciation of the alleged risk required for punitive damages when Plaintiff was purchasing and/or using the product(s). CVS could not have had the evil motive required to support punitive damages when, by Plaintiff's own admission, there was no way for CVS to have knowledge of the alleged link between the product(s) and cancer.

## II.     CONCLUSION

CVS respectfully requests that this Court grant its Preliminary Objections to Plaintiff's Complaint and enter the attached Order.

Respectfully Submitted

**ICE MILLER LLP**

By: */s/ Jacqueline M. Lesser*
    Jacqueline M. Lesser
    Identification No.: 204622
    1735 Market Street
    Suite 3900
    Philadelphia, PA 19103
    215-982-5165
    Jacqueline.lesser@icemiller.com

*Attorney for Defendant, CVS Pharmacy, Inc. (erroneously sued as "CVS Pharmacy 6701 Ridge Avenue" and "CVS Pharmacy 7065 Lincoln Drive").*

13



# EXHIBIT
# A

Case ID: 240502672
Control No.: 24062644

**KLINE & SPECTER, P.C.**
By:    SHANIN SPECTER, ESQUIRE      (Attorney I.D. No.: 40928)
       TOBI L. MILLROOD, ESQUIRE     (Attorney I.D. No.: 77764)
       BRADEN R. LEPISTO, ESQUIRE   (Attorney I.D. No.: 313586)
       SHERRELL L. DANDY, ESQUIRE  (Attorney I.D. No.: 309348)
Shanin.Specter@klinespecter.com
Tobi.Millrood@klinespecter.com
Braden.Lepisto@klinespecter.com
Sherrell.Dandy@klinespecter.com
1525 Locust Street
Philadelphia, Pennsylvania 19102
215-772-1000
215-772-1359 (fax)                                    ATTORNEYS FOR PLAINTIFF

*Filed and Attested by the Office of Judicial Records 22 MAY 2024 09:54 am E. SMITH*

---

| | |
|---|---|
| MERLE CARTER, M.D.<br>6608 LINCOLN DRIVE<br>PHILADELPHIA, PA 19199<br><div align=right>PLAINTIFF</div><br>V.<br><br><div align=right>DEFENDANTS</div><br>L'ORÉAL USA, INC.<br>575 FIFTH AVENUE<br>NEW YORK, NY 10017<br><br>AND<br><br>L'ORÉAL USA PRODUCTS, INC.<br>10 HUDSON YARDS<br>NEW YORK, NY 10001<br><br>AND<br><br>SOFT SHEEN-CARSON, LLC<br>10 HUDSON YARDS<br>NEW YORK, NY 10001<br><br>AND<br><br>STRENGTH OF NATURE, LLC<br>64 ROSS ROAD<br>SAVANNAH, GA 31405<br><br>AND | IN THE COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY,<br>PENNSYLVANIA<br><br><br><br><br><br><br><br><br><br>**JURY TRIAL DEMANDED** |

Case ID: 240502672
Control No.: 24062644

GODREJ SON HOLDINGS, INC.
64 ROSS ROAD
SAVANNAH, GA 31405

AND

AVLON INDUSTRIES, INC.
1999 NORTH 15TH STREET
MELROSE PARK, IL 60160

AND

ACME MARKETS, INC.
75 VALLEY STREAM PARKWAY
MALVERN, PA 19355

AND

ACME MARKETS
7010 GERMANTOWN AVENUE
PHILADELPHIA, PA 19119

AND

ACME MARKETS
7700 CRITTENDEN STREET
PHILADELPHIA, PA 19118

AND

CVS PHARMACY, INC.
1 CVS DRIVE
WOONSOCKET, RI 02895

AND

CVS PHARMACY
6701 RIDGE AVENUE
PHILADELPHIA, PA 19128

AND

CVS PHARMACY
7065 LINCOLN DRIVE
PHILADELPHIA, PA 19119

Case ID: 240502672
Control No.: 24062644

**<u>NOTICE TO PLEAD</u>**

### NOTICE

You have been sued in court.  If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you.  You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff.  You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE.  IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

Lawyer Referral Service
Philadelphia Bar Association
1101 Market Street, 11th Floor
Philadelphia, PA 19107
(215) 238-6338

### ADVISO

Le han demandado a used en la corte.  Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion.  Hace falta asentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona.  Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion.  Ademas, la corte pueda decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda.  Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

LLEVE ESTA DEMANDA A UN ABOGADO INMEDIATAMENTE, SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO, VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.

Lawyer Referral Service
Philadelphia Bar Association
1101 Market Street, 11th Floor
Philadelphia, PA 19107
(215) 238-6338

Case ID: 240502672
Control No.: 24062644

## CIVIL ACTION – COMPLAINT

Plaintiff, Merle Carter, M.D., through her undersigned counsel, Kline & Specter, P.C., hereby demands damages from the Defendants in a sum in excess of the local arbitration limits exclusive of interest, costs, and damages for prejudgment delay, upon the cause of action set forth below:

## PARTIES

1.    Plaintiff, Merle Carter, M.D., is an adult individual citizen and resident of the Commonwealth of Pennsylvania, residing therein at 6608 Lincoln Drive, Philadelphia, PA 19199.

2.    Defendant, L'Oréal USA, Inc., is incorporated in Delaware with its principal place of business and headquarters located at 575 Fifth Avenue, New York, New York 10017.

3.    Defendant, L'Oréal USA Products, Inc., is incorporated in Delaware with its principal place of business and headquarters located at 10 Hudson Yards, 347 Tenth Avenue, New York, New York 10001.

4.    Defendant, SoftSheen-Carson, LLC, is a limited liability company organized in the state of New York with its principal place of business and headquarters located at 90 State St., Albany, New York 12207.  Upon information and belief, SoftSheen-Carson, LLC's members and sole interested parties are L'Oréal USA, Inc. and L'Oréal S.A., L'Oréal's French owned company, with its headquarters and principal place of business located in France.

5.    Defendant, Carson, Inc., D/B/A SoftSheen, is a corporation with its principal place of business and headquarters located at 2870 Peachtree Rd., Suite, 464, Atlanta, Georgia 40405.

6.    Defendant, Carson (W.I.) Inc., D/B/A SoftSheen, is a corporation, with its headquarters located in Delaware at 251 Little Falls Drive, Wilmington, Delaware 19808.

Case ID: 240502672
Control No.: 24062644

7.      Defendants L'Oréal USA, Inc., Loreal USA Products, Inc., SoftSheen-Carson, LLC, Carson, Inc., and Carson (W.I.) Inc., will be collectively referred to as "L'Oréal Defendants."

8.      Defendant Strength of Nature, LLC, is a corporation with its principal place of business and headquarters located at 64 Ross Road, Savannah, Georgia 31405.

9.      Defendant Godrej Consumer Products Limited is, and at all times relevant to this action, a global corporation with its principal place of business located at Godrej One, Fourth Floor, Pirojshanagar, Eastern Express Highway, Fikhroli (East), Mumbai 400 079, India.  The company's website references Strength of Nature as its base of operations in the U.S., which is located at 64 Ross Road, Savannah, Georgia, and process may be served upon its registered agent, Karen Sood, 6355 Peachtree Dunwood Road, Atlanta Georgia, 30328.

10.      Defendants Strength of Nature, LLC and Godrej Consumer Products Limited, will be collectively referred to as "Strength of Nature Defendants."

11.      Defendant Avlon Industries, Inc. ("Avlon") is, and at all times relevant to this action, a corporation with its principal place of business located at 1999 North 15th Street, Melrose Park, Illinois 60160.

12.      ACME Markets, Inc. is a corporation with its principal place of business and headquarters located at 75 Valley Stream Parkway, #250, Malvern, PA 19355.  At all times relevant hereto, ACME Markets, Inc., conducted business as ACME Markets at 7010 Germantown Avenue, Philadelphia, PA 19119 and 7700 Crittenden Street, Philadelphia PA, 19118.

13.      Defendants ACME Markets, Inc., ACME Markets at 7010 Germantown Avenue, and ACME Markets at 7700 Crittenden Street will be collectively referred to as "ACME Defendants."

Case ID: 240502672
Control No.: 24062644

14.     Defendant CVS Pharmacy, Inc. ("CVS") is a corporation with its principal place of business and headquarters located at 1 CVS Drive, Woonsocket, RI 02895.  At all times relevant hereto, CVS conducted business as CVS Pharmacy located at 6701 Ridge Avenue, Philadelphia, PA 19128 and the CVS Pharmacy located at 7605 Lincoln Drive, Philadelphia, PA 19119.

15.     Defendants CVS Pharmacy, Inc., CVS Pharmacy at 6701 Ridge Avenue and CVS Pharmacy at 7605 Lincoln Drive will be collectively referred to as "CVS Defendants."

**JURISDICTION**

16.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

17.     This Court has original jurisdiction over this civil action.

18.     This Court has personal jurisdiction over the Defendants.

19.     At all times relevant hereto, L'Oréal Defendants, Strength of Nature Defendants, and Defendant Avlon (Manufacturer Defendants) contracted with, entered agreements with, sold, shipped, and distributed hair relaxer products, including those products Plaintiff purchased and applied to her hair, to various companies and stores within the Commonwealth of Pennsylvania, including but not limited to Defendants, ACME Markets and CVS Pharmacy.

20.     At all times relevant hereto, L'Oréal Defendants, Strength of Nature Defendants, and Defendant Avlon engaged in the business of manufacturing, making, distributing, creating, dispensing, selling, shipping, advertising, transporting, and marketing hair relaxer products which contained dangerous and harmful amounts of endocrine disrupting chemicals and other harmful substances to sell at ACME Markets and CVS Pharmacy.

21.     At all times relevant hereto, ACME Markets and CVS Pharmacy conducted business in the Commonwealth of Pennsylvania by: (1) selling and distributing products and

Case ID: 240502672
Control No.: 24062644

merchandise, including Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen (Hair Relaxer Brands), in the Commonwealth of Pennsylvania for the purpose of realizing pecuniary benefit from those sales and distributions; (2) shipping products and merchandise, including Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen, directly into and through the Commonwealth of Pennsylvania; (3) engaging in business in the Commonwealth of Pennsylvania; and/or, (4) owning, using, and/or possessing real property situated in the Commonwealth of Pennsylvania.

22.     At all times relevant hereto, L'Oréal Defendants, Strength of Nature Defendants, and Defendant Avlon had, and continues to have, regular and systematic contact with and conducts business in and from the Commonwealth of Pennsylvania, such that it has purposefully availed itself of the laws of the Commonwealth of Pennsylvania and can reasonably expect to both sue and be sued in Pennsylvania.

23.     Additionally, L'Oréal Defendants, Strength of Nature Defendants, and Defendant Avlon's presence in the Commonwealth of Pennsylvania satisfies the due process requirements for Pennsylvania courts to exercise jurisdiction over it. Additionally, L'Oréal Defendants, Strength of Nature Defendants, and Defendant Avlon consented to the exercise of jurisdiction over it by Pennsylvania courts by registering to and conducting business from the Commonwealth of Pennsylvania.

24.     A federal court would not have jurisdiction over this case, as there is no federal question under 28 U.S.C. § 1331 or complete diversity between the parties under 28 U.S.C. § 1332. Therefore, this case is not removable to federal court under 28 U.S.C. § 1441 and 28 U.S.C. § 1446.

Case ID: 240502672
Control No.: 24062644

25.     Venue is proper in Philadelphia County for each of the following reasons: (1) each Defendant regularly conducts business in Philadelphia County; (2) ACME Markets and CVS Pharmacy, as alleged *supra*, has a registered office and/or retail stores in Philadelphia County; (3) the cause of action arose in Philadelphia County; and/or, (4) Philadelphia County is a county where a transaction or occurrence took place out of which the cause of action arose.

26.     The damages Plaintiff seeks, exclusive of interests and costs, exceed the jurisdictional amount requiring arbitration referral. Plaintiff seeks more than $50,000 in damages.

## **FACTUAL BACKGROUND**

27.     At all times material hereto, L'Oréal Defendants developed, tested, assembled, marketed, manufactured, and sold various brands of chemical hair relaxer products that were specifically marketed to black women, including but not limited to the following brands that Plaintiff used to chemically straighten her hair:

      a.      Dark & Lovely;

      b.      Precise;

      c.      Bantu; and,

      d.      Optimum Care.

28.     At all times material hereto, Strength of Nature Defendants developed, tested, assembled, marketed, manufactured, and sold various brands of chemical hair relaxer products that were specifically marketed to black women, including but not limited to the following brands that Plaintiff used to chemically straighten her hair:

      a.      Motions;

      b.      Dr. Miracle; and,

      c.      Ultra Sheen.

Case ID: 240502672
Control No.: 24062644

29.     At all times material hereto, Defendant Avlon Industries, Inc. developed, tested, assembled, marketed, manufactured, and sold various brands of chemical hair relaxer products that were specifically marketed to black women, including but not limited to the Affirm brand that Plaintiff used to chemically straighten her hair.

30.     Plaintiff developed endometrial cancer as a result of frequent use of chemical hair relaxers manufactured by the Defendants.

## CHEMICAL HAIR RELAXERS

31.     Black and brown girls are taught at a young age that to be accepted in society, they must tame and control their natural hair.

32.     This has led black and brown women and girls to temporarily or permanently alter their curly hair strands to make them straight to adhere to western beauty standards.

33.     Traditionally, black women straightened their hair using a heated comb, commonly referred to as the "hot comb" invented by Francois Marcel Gateau.  The hot comb, combined with temporary hair straightening and growth products created by Madame C.J. Walker, became popular in the early 1900s. Madame C.J. Walker became the country's first black female millionaire. This financial success showed the world that black haircare, particularly hair straightening products, is a very lucrative business.

34.     In 1909, Garrett A. Morgan invented a hair straightening cream after mixing chemicals to correct friction in the sewing machine when sewing wool.  The G.A. Morgan Refining Cream, which straightened wool, was later used to straighten hair.

35.     In the 1960s, the first-generation hair relaxer was created to chemically straighten curly hair permanently by breaking and restructuring the disulfide bonds. The active ingredient, sodium hydroxide, a lye, irritated the scalp, diminished hair strength, and was difficult to rinse.

Case ID: 240502672
Control No.: 24062644

Additionally, the lye caused the relaxer to have a short shelf life because of the separation of the oil and water in the relaxer cream.

36.     In the 1970s, to remedy the disadvantages of the lye relaxer, hair relaxer manufacturers began marketing no-lye relaxers using calcium hydroxide or guanidine hydroxide as the active ingredients instead of sodium hydroxide.

37.     Home hair relaxer kits were marketed and sold to women who wanted to apply the chemical hair relaxer at home instead of having it professionally applied at a hair salon.

38.     The home hair relaxer kits were a cheaper alternative to professional application at a hair salon.

39.     The home hair relaxer kit typically contains plastic gloves and a wooden spatula for application because the chemicals are too harmful to touch with bare hands. The home hair relaxer kits also include the relaxer cream, a liquid activator mixed with the relaxer cream before application, neutralizing shampoo, and a restorative moisturizing balm.

40.     For first-time application, the relaxer cream is placed on the hair from the root to the end.  After letting it sit on the hair for ten to twenty minutes, the relaxer is rinsed out with warm water and then shampooed with a neutralizing shampoo to deactivate the alkalizing chemical process, followed by applying conditioner to raise the pH level and soften the hair. Lastly, a moisturizing treatment is used to restore hydration.

41.     Defendants began marketing the new and improved no-lye-based relaxers using two main marketing strategies: 1) marketing directly to black women and 2) portraying the no-lye relaxer as safe.

Case ID: 240502672
Control No.: 24062644



42.     In the 1970s and 1980s, hair relaxer manufacturers used black celebrities such as Debbie Allen and Natalie Cole in their commercial ads to market the no-lye relaxer as a safe way to make curly and coarse hair more manageable.

43.     In Dark & Lovely's 1980 hair relaxer commercial, while applying a hair relaxer, dancer and actress Debbie Allen stated, "For me, there is more to Dark & Lovely than just that it doesn't contain lye. Dark & Lovely is such a pleasure. It makes me feel like dancing." While dancing, she further stated, "It relaxes my hair just as well as those lye-based relaxers with a lot less burning and irritation, and there is no offensive odor...and it leaves it so soft that I can do anything with it."

Case ID: 240502672
Control No.: 24062644



44.    For decades, Defendants continued to market chemical hair relaxer products to black women, but in the 1990s, the industry began to target young black girls with the first hair relaxer for girls, "Just for Me" by Soft & Beautiful.

45.    In 1993, the infamous Just for Me commercial premiered featuring LaTavia Robinson, who later joined the famous music group Destiny's Child. Young girls sang and danced to the song with the lyrics: "Just for Me—the no-lye conditioner relaxing cream," again marketing the relaxer as safe because it did not contain lye.



Case ID: 240502672
Control No.: 24062644

46.    Other manufacturers followed suit, creating other chemical hair relaxers for young girls, including the PCJ hair relaxer, also introduced in the early 1990s.

47.    Young black girls became enamored with the girls depicted on the hair relaxer boxes, believing they could achieve the same look if they used the hair relaxer.



48.    It was recently discovered from a "Where Are They Now" interview that several women depicted on the hair relaxer boxes did not have chemically straightened hair and never used the chemical relaxer products.

49.    The hair relaxer manufacturing companies spent billions of dollars targeting black women and girls:



Case ID: 240502672
Control No.: 24062644






50.    Although the hair relaxer manufacturing companies marketed the no-lye relaxers as safe because they did not contain sodium hydroxide, the Defendant companies failed to warn consumers about the harmful chemicals in the hair relaxers, including endocrine-disrupting chemicals ("EDCs").

**ENDOCRINE DISRUPTING CHEMICALS**

51.    Endocrine-Disrupting Chemicals disrupt the endocrine system, a network of organs and glands that produce, store, and secrete hormones. The glands, controlled by stimulation from the nervous system and chemical receptors in the blood and hormones, help maintain the body's homeostasis by regulating the functions of organs.

Case ID: 240502672
Control No.: 24062644

52.     These glands help maintain the body's homeostasis by regulating the functions of the organs in the body, including but not limited to cellular metabolism, reproduction, sexual development, sugar and mineral hemostasis, heart rate, and digestion.

53.     EDCs can disrupt different hormones by mimicking or interfering with a natural hormone, which can trick the cellular hormone receptor into thinking that the EDC is the hormone the cellular hormone receptor responds to.

54.     This can cause the creation of excess hormones or deficient hormones and can cause adverse effects, including causing abnormalities in sex organs, early puberty, endometriosis, and hormonally responsive cancers, among other hormonally related diseases.

55.     A group of EDCs called xenoestrogens mimic estrogen by pretending to be biologically created estrogen. Over time, these estrogen mimickers become difficult to detoxify in the liver.

56.     Chemical hair relaxers contain various types of endocrine disrupting chemicals, including phthalates and parabens.

**Phthalates**

57.     Phthalates were developed in the 1920s to make plastics more durable and malleable, but today are used in cosmetics to create color and make fragrances last longer.

58.     Phthalates are used in hair relaxers to make the hair more flexible after applying the product.

59.     Phthalates interfere with estrogen receptors and contribute to reproductive problems such as early puberty in girls, menopausal symptoms, infertility, metabolic syndrome and thyroid conditions, cognitive disorders, and cancer.

Case ID: 240502672
Control No.: 24062644

60.     Di-2-ethylheylphtyalate ("DEHP") is a phthalate used in plastics to make them more flexible.  Testing of chemical hair relaxers found the presence of DEHP.

61.     In the Report of Carcinogens, Fifteenth Edition, the U.S. Department of Health and Human Services determined that there is "clear evidence" of carcinogenicity of DEHP in both male and female rats and that it is "reasonably anticipated to be a human carcinogen."

62.     Similarly, the U.S. Environmental Protection Agency classified DEHP as a "B-2; probable human carcinogen" in its Chemical Assessment Summary.

## Parabens

63.     Parabens are a class of chemicals used as preservatives in cosmetic products to prevent the growth of harmful bacteria and mold and therefore preserve the product's shelf life. There are common parabens, including methylparaben, propylparaben, butylparaben, and ethylparaben.

64.     Parabens are EDCs that also bind to estrogen receptors and mimic estrogen, causing estrogen dominance and health conditions such as reproductive issues and hormonal cancers.

65.     A recent study detected three different parabens in hair relaxer kits: methylparaben, ethylparaben, and butylparaben. Testing of hair relaxer kits revealed high concentrations of this parabens.

66.     An August 2019 study examined tissue samples from tumors of women diagnosed with endometrial cancer.  It concluded that paraben molecules were more frequently detected in endometrial carcinoma tissue samples compared to normal endometrium.

67.     Studies have shown that black women have elevated levels of phthalates in their urine compared to white women.  Additionally, a May 2021 study showed higher levels of

Case ID: 240502672
Control No.: 24062644

parabens and phthalates detected in the urine of women diagnosed with endometrial cancer than women without cancer.

68.    In a 2018 study, thirty-five different EDCs were present in three hair relaxer kits, including phthalates, parabens, bisphenol A ("BPA"), cyclosilicates, triclosan, and diethanolamine. Of the chemicals found to be present, 84% were not listed as ingredients on the hair relaxer labels. Each of these individual EDCs is well documented to increase estrogen and cause hormone-sensitive cancers.

69.    The synergistic effects of the combination of the known EDCs in the hair relaxers and the unknown chemicals hidden under the ingredient title "fragrances" further increase the risk of developing hormonally driven cancers.

70.    Moreover, because there is higher percutaneous absorption of chemicals in the scalp compared with other areas of the skin such as on the forearm, palm, and abdomen, there is an even greater risk of developing cancer from carcinogens placed on the scalp/hair.

## PLAINTIFF'S HAIR RELAXER USE

71.    Plaintiff, Merle Carter, M.D., consistently and frequently used Hair Relaxers, starting in 1976.

72.    For decades, Plaintiff used Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen, which are manufactured and advertised by the named Manufacturer Defendants.

73.    Plaintiff used different variations of Avlon's Affirm hair relaxers, including but not limited to Affirm Crème Relaxer and Affirm Sensitive Scalp Relaxer.

74.    Plaintiff used different variations of L'Oréal Defendants' Dark & Lovely hair relaxer, including but not limited to Dark & Lovely Regular No-Lye Hair Relaxer.

Case ID: 240502672
Control No.: 24062644

75.      Plaintiff used different variations of L'Oréal Defendants' Optimum hair relaxer, including but not limited to Optimum Salon Haircare Defy Breakage No-Lye Relaxer.

76.      Plaintiff used different variations of L'Oréal Defendants' Bantu hair relaxer, including but not limited to Bantu No Base Relaxer.

77.      Plaintiff used different variations of L'Oréal Defendants' Precise hair relaxer, including but not limited to Ultra Precise No-Lye Conditioning Relaxer.

78.      Plaintiff used different variations of Strength of Nature Defendants' Dr. Miracle hair relaxer, including but not limited to Dr. Miracle's No Lye Relaxer Kit and Dr. Miracle's New Growth No Lye Relaxer Kit.

79.      Plaintiff used different variations of Strength of Nature Defendants' Motions hair relaxer, including but not limited to Motions No Lye Relaxer, Motions Classic Formula Smooth & Silken Hair Relaxer, and Motions Silkening Shine No Lye Relaxer Kit.

80.      Plaintiff used different variations of Strength of Nature Defendants' Ultra Sheen hair relaxer, including but not limited to Ultra Sheen No Lye Relaxer.

81.      She reapplied the relaxer to newly grown hair approximately every four to eight weeks at a hair salon or at home using home hair relaxer kits.

82.      Plaintiff purchased multiple hair relaxer home kits from ACME Markets at 7010 Germantown Avenue, Philadelphia, Pa 19119 and 7700 Crittendon Street, Philadelphia, Pa, 19118, starting in approximately 2004, including, Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen.

83.      Plaintiff purchased multiple hair relaxer home kits from CVS Pharmacies at 6701 Ridge Avenue, Philadelphia, Pa 19128 and 7605 Lincoln Drive, Philadelphia, Pa 19119 starting in approximately 2004, including, Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr.

Case ID: 240502672
Control No.: 24062644

Miracle, and Ultra Sheen.

84.    Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen hair relaxers purchased and used by the Plaintiff to apply to her hair contained endocrine disrupting chemicals, including phthalates, parabens, and other carcinogenic chemicals.

85.    Plaintiff has reason to believe that L'Oréal Defendants developed, tested, assembled, marketed, manufactured, and sold other brands of chemical hair relaxer products known to L'Oreal Defendants, but unknown to Plaintiff, that contained endocrine disrupting chemicals.

86.    Plaintiff has reason to believe that Strength of Nature Defendants developed, tested, assembled, marketed, manufactured, and sold other brands of chemical hair relaxer products known to Strength of Nature Defendants, but unknown to Plaintiff, that contained endocrine disrupting chemicals.

87.    Plaintiff has reason to believe that Defendant Avlon developed, tested, assembled, marketed, manufactured, and sold other brands of chemical hair relaxer products known to Defendant Avlon, but unknown to Plaintiff, that contained endocrine disrupting chemicals.

88.    The Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen hair relaxers purchased and used by the Plaintiff increased the risk of harm and/or was a substantial contributing factor to her development of endometrial cancer.

## HAIR RELAXERS LINKED TO UTERINE AND ENDOMETRIAL CANCERS

89.    The uterus comprises two main parts: the endometrium and the myometrium. Cancers in the uterus muscle layer are referred to as uterine sarcoma.

90.    Endometrial cancer is a carcinoma that begins in the endometrium lining of the uterus.

Case ID: 240502672
Control No.: 24062644

91.     Endometrial cancer is one of the three most common cancers in females and is the most common form of uterine cancer.

92.     There are two types of endometrial cancers.  Type 1 endometrial cancer tumors are classified as endometroid adenocarcinoma and are linked to excess estrogen in the body.

93.     Type 2 endometrial cancer tumors include uterine serous, clear cell, and squamous cell carcinomas.

94.     Type 1 endometrial cancer is far more common than Type 2, and accounts for approximately 90% of diagnosed endometrial cancer.

95.     Type 1 endometrial cancer incidence increased significantly between 1999 and 2006 compared to Type 2 endometrial cancers, which remained relatively stable during those years.

96.     Some endometrial cancers begin with a pre-cancerous condition called endometrial hyperplasia, which practitioners consider an early stage of endometrial cancer.

97.     One of the main risk factors for endometrial and other uterine cancers include changes in the balance of female hormones in the body.  Accordingly, exposure to EDCs is a risk factor for developing hormone-sensitive cancers such as endometrial cancer.

98.     Black women are twice as likely to be diagnosed with uterine cancer than white women and have poorer prognoses when diagnosed.

99.      For decades, research has shown that black women are far more likely to develop reproductive cancers and other reproductive diseases.

100.     Additionally, black women are two to three times more likely to develop uterine leiomyomata, also known as fibroid tumors, than white women.

Case ID: 240502672
Control No.: 24062644

101.    Endometriosis is an estrogen-dependent reproductive disease that causes growth of the endometrial glands and stroma outside of the uterus, causing chronic inflammation.

102.    Endometriosis is a risk factor for endometrial cancer, and as with other reproductive diseases, it is far more prevalent in black women.

103.    In addition to the research demonstrating the significant disparity between black and white women in the development of reproductive disease, research also establishes that black girls go through puberty and start menstruating earlier than girls of other races.

104.    Scientists from the University of California, San Francisco, and Berkeley conducted a continuing study of over 1,200 girls tracked between 2005 and 2011. They concluded that by age seven, 23% of black girls started to develop breasts, compared with just 10% of white girls.

105.    Researchers have been baffled by the inability to identify why black girls are menstruating so early and why black women are developing reproductive issues at alarming rates.

106.    According to NBC News, approximately 95% of black women reported using chemical hair straightening products, such as hair relaxers. Many of these women also said they began using the products in early childhood, sometimes as young as five or six years old, and continued frequent use through adulthood.

107.    Although there is so much diversity within the black female community, one commonality between generations of black women is using permanent chemical hair relaxers to straighten their hair.

108.    In October 2022, the results of a groundbreaking study were published in the Journal of the National Cancer Institute by Dr. Che-Jung Chang and others regarding the link between hair relaxer use and the development of uterine cancers.

Case ID: 240502672
Control No.: 24062644

109.    The study found that women who frequently used hair relaxers were more than twice as likely to develop uterine cancers compared to women who did not use chemical hair relaxers.  Specifically, the study found that 1.64% of women who never used hair relaxer products would develop uterine cancer before age 70.  However, for women who ever used hair relaxers, the risk of uterine cancer increased to 1.80% and drastically increased to 2.55% for women who frequently used hair relaxers.[1]

110.    Among women who never used straighteners in the 12 months prior to baseline, approximately 1.64% were predicted to develop uterine cancer by age 70 years.  The estimated risk was 1.18% (95% CI for risk difference = 0.15% to 2.54%) higher for the women with ever use, and 2.41% (95% CI for risk difference = 0.52% to 4.80%) higher for those with frequent use compared with women who never used hair relaxers.

111.    According to the researchers, "These findings are consistent with prior studies supporting a role of straighteners in increased risk of other female, hormone-related cancers."

112.     The researchers further stated that "Although no differences in the hazard ratios between racial and ethnic groups were observed, the adverse health effects associated with straightener use could be more consequential for African American and/or Black women because of the higher prevalence and frequency of hair product use, younger age of initiating use, and harsher chemical formulations."[2]

## PLAINTIFF'S CANCER DIAGNOSIS

113.    In November 2015, at the age of forty-nine years old, Dr. Carter underwent endometrial sampling which revealed a diagnosis of endometrial carcinoma.

---

[1] 4 Che-Jung Chang, et al., Use of Straighteners and Other Hair Products and Incident Uterine Cancer, Journal of the National Cancer Institute, Oct. 17, 2022, https://pubmed.ncbi.nlm.nih.gov/36245087.
[2] Id.

Case ID: 240502672
Control No.: 24062644

114.    Dr. Carter was advised to undergo a radical hysterectomy and bilateral oophorectomy.

115.    In December 2015, Dr. Carter underwent a total robotic laparoscopic hysterectomy and bilateral oophorectomy, and surgical pathology confirmed a diagnosis of well-differentiated endometrioid adenocarcinoma, FIGO 1-2.

116.    Plaintiff's use of the hair relaxers manufactured and sold by the Defendants, increased the risk of harm and/or was a substantial contributing factor to her development of endometrial cancer.

117.    Dr. Carter suffered significant pain as a result of her cancer diagnosis and subsequent hysterectomy.

**DISCOVERY RULE**

118.    Despite knowing that their chemical hair relaxer products contain large amounts of EDCs that are more likely to enter the body when applied through the scalp, the Defendants failed to warn of the potential for the use of their products to cause cancer and reproductive issues.

119.    Plaintiff reserves the right to plead and invoke the discovery rule.  Plaintiff's endometrial cancer is a latent injury.  Accordingly, under such circumstances, Plaintiff could not have reasonably been expected to know the cause of her endometrial cancer. Plaintiff lacked the salient facts behind the cause of her endometrial cancer, and Plaintiff could not have been aware of the salient facts through reasonable diligence until less than two years before the filings of Plaintiff's action.

120.    Further, Plaintiff did not and could not have known that her injuries were caused by Defendants' conduct in the exercise of reasonable diligence.

Case ID: 240502672
Control No.: 24062644

121.    The carelessness and recklessness in the acts and omissions of the Defendants, as outlined and averred throughout the entirety of this Complaint, was a factual cause of and/or placed Plaintiff at an increased risk of harm for and/or was a substantial factor in causing and did in fact directly and proximately cause the severe, permanent and grievous personal injuries and damages to Plaintiff.

**COUNT I**
**STRICT LIABILITY – DESIGN DEFFECT**
**(Plaintiff v. L'Oreal Defendants, Strength of Nature Defendants, Defendant Avlon, ACME Defendants and CVS Defendants)**

122.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

123.    At all relevant times, Defendants were engaged in the business of manufacturing, formulating, creating, designing, testing, labeling, packaging, supplying, marketing, promoting, selling, and advertising relaxers like Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen.

124.    Plaintiff used Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen frequently and consistently.

125.    Defendants marketed and advertised Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen as a safe product for use by consumers, specifically to black women and women of color, including Plaintiff, despite knowing that they contained EDCs and other harmful chemicals.

126.    At all relevant times, Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen reached their intended consumers, including Plaintiff, without substantial change in the condition in which the Defendants designed, produced, manufactured, sold, distributed, labeled, and marketed them.

Case ID: 240502672
Control No.: 24062644

127.    Manufacturer Defendants had a duty to create Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen in a way that was not unreasonably dangerous for their normal, intended, or anticipated use.

128.    Retailer Defendants had a duty to ensure that Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen was not defective and safe for its intended use before selling said products to consumers, such as Dr. Carter.

129.    Defendants' Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers were defective as they were formulated, designed, and manufactured with carcinogens.

130.    The Defendants' Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen were defective because their carcinogenic properties made them unreasonably dangerous in that they were dangerous to an extent beyond that which an ordinary consumer, such as the Plaintiff, would contemplate.

131.    Further, the magnitude of the danger associated with use of Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen's Best relaxers outweighs the utility of these products.

132.    The dangers of the Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen were unknown to the ordinary consumer.

133.    Plaintiff did not know of these dangers. If she would have known, these dangers would have been unacceptable to her.

134.    Defendants knew, or should have known, of the unreasonable risks of harm associated with the use of Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle,

Case ID: 240502672
Control No.: 24062644

and Ultra Sheen, namely their unreasonably dangerous and carcinogenic properties and their propensity to cause cancer.

135.    At the time of Plaintiff's exposure, Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers were being used in a normal, intended, or anticipated manner, as a chemical hair relaxer product.

136.    Plaintiff used Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers without knowledge of their dangerous characteristics, specifically the carcinogenic risks associated with use of the products.

137.    The foreseeable risks associated with use of Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers exceeded the alleged benefits associated with their design and formulation.

138.    Defects in Defendants' Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxer products increased the risk, and were a producing cause, proximate cause, and substantial factor in the development of Plaintiff's cancer.

139.    As a result of the Defendants' reckless and conscious disregard for the health and safety of consumers of their hair relaxer products, Plaintiff sustained the following damages as a foreseeable, direct, and proximate result of Defendants' acts and omissions:

    a.    Economic losses, including medical care and lost earnings; and,

    b.    Noneconomic losses, including physical and mental pain and suffering, emotional distress, inconvenience, loss of enjoyment of life, impairment of quality of life, past and future.

WHEREFORE, Plaintiff respectfully demands judgment in her favor and against Defendants, in an amount in excess of the applicable arbitration limits, including interest, costs of

Case ID: 240502672
Control No.: 24062644

suit, delay damages, compensatory damages, punitive damages, and such other relief as this Honorable Court may deem appropriate.

## COUNT II
## STRICT LIABILITY – FAILURE TO WARN
## (Plaintiff v. L'Oreal Defendants, Strength of Nature Defendants, Defendant Avlon, ACME Defendants and CVS Defendants)

140.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

141.    Plaintiff brings this strict liability claim against Defendants for failure to warn about the toxic carcinogenic chemicals in their hair relaxer products.

142.    At all relevant times, Defendants engaged in the business of testing, developing, designing, manufacturing, marketing, selling, distributing, and/or promoting Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers, which are defective and unreasonably dangerous to its consumers, including Plaintiff because they do not contain adequate warnings or instructions regarding the dangerous carcinogenic chemicals contained in the relaxer products.

143.    The Defendants had a duty to warn of the risks associated with using their hair relaxer products.

144.    Defendants knew, or should have known, of the unreasonable risks of harm associated with the use of their chemical hair relaxer products, namely their unreasonably dangerous and carcinogenic properties and their propensity to cause cancer.

145.    However, Defendants purposefully marketed their no-lye hair relaxer products as safe because they did not contain "lye" or sodium hydroxide but failed to warn consumers about the carcinogenic endocrine-disrupting chemicals in the hair relaxers.

Case ID: 240502672
Control No.: 24062644

146.    Defendants disseminated information that was inaccurate, false, and misleading and that failed to communicate accurately or adequately the comparative severity, duration, and extent of the risk of injuries associated with use and frequent use of Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers; and continued to promote the efficacy of the relaxers, even after they knew or should have known of the unreasonable risks from use; and concealed, downplayed, or otherwise suppressed, through aggressive marketing and promotion, any information or research about the risks and dangers of use of the relaxers.

147.    Defendants failed to exercise reasonable care to warn of the dangerous carcinogenic risks associated with the use of its hair relaxers.

148.    Plaintiff reasonably relied on the skill, superior knowledge, and judgment of the Defendants.

149.    Had Defendants properly disclosed the risks associated with use of their chemical hair relaxers, Plaintiff could have chosen not to use the chemical hair relaxer and avoid the risk of developing cancer from exposure to the hair relaxing chemicals.

150.    As a result of the absence of warning or instruction by Defendants regarding the significant health-and-safety risks associated with the use of their hair relaxers, Plaintiff was unaware that the Defendants' hair relaxers were unreasonably dangerous and had carcinogenic properties, since such information was not known to the general public.

151.    Defendants' failure to warn regarding the dangers associated with use of Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers increased the risk, and was a producing cause, proximate cause, and substantial factor in the development of Plaintiff's cancer.

Case ID: 240502672
Control No.: 24062644

152.    As a result of the Defendants' reckless and conscious disregard for the health and safety of consumers of their hair relaxer products, Plaintiff sustained the following damages as a foreseeable, direct, and proximate result of Defendants' acts and omissions:

    a.    Economic losses, including medical care and lost earnings; and

    b.    Noneconomic losses, including physical and mental pain and suffering, emotional distress, inconvenience, loss of enjoyment of life, impairment of quality of life, past and future.

WHEREFORE, Plaintiff respectfully demands judgment in her favor and against Defendants, in an amount in excess of the applicable arbitration limits, including interest, costs of suit, delay damages, compensatory damages, punitive damages, and such other relief as this Honorable Court may deem appropriate.

### COUNT III
### NEGLIGENCE
### (Plaintiff v. L'Oreal Defendants, Strength of Nature Defendants, and Avlon Defendant)

153.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

154.    At all relevant times, Defendants engaged in the business of testing, developing, designing, manufacturing, marketing, selling, distributing, and/or promoting Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen.

155.    Plaintiff used Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen.

156.    Defendants had a duty to exercise reasonable care in the research, design, manufacturing, packaging, marketing, advertisement, supply, promotion, sale, and distribution of Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers,

Case ID: 240502672
Control No.: 24062644

including a duty to assure that the products would not cause users to suffer unreasonable dangerous side effects, including developing cancer.

157.    Defendants had a duty to provide true and accurate information and warnings concerning the risks of using Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers.

158.    Defendants failed to exercise reasonable care in that they knew, or should have known, of the unreasonable risks of harm associated with the use of Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers and the propensity for the Hair Relaxers to cause cancer.

159.    Defendants also knew, or in the exercise of reasonable care, should have known, that consumers and users of Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers were unaware of the carcinogenic risks associated with use of the product.

160.    Defendants' negligence includes, but is not limited to, the following acts and/or omissions:

a.    Failing to sufficiently test Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers to determine whether they were safe for their intended use;

b.    Failing to sufficiently test Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers to determine their carcinogenic properties after learning that their formulations could be carcinogenic;

Case ID: 240502672
Control No.: 24062644

c.     Marketing, advertising, and recommending the use of Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers without sufficient knowledge as to their dangerous propensities;

d.     Representing that Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers were safe for their intended use when they were not;

e.     Failing to disclose the risk of serious harm associated with use Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers;

f.     Failing to provide adequate instructions, guidelines, and safety precautions to protect the health of those persons whom Defendants could reasonably foresee would use Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen;

g.     Failing to use reasonable and prudent care in the design, development, and manufacture of Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers, so as to avoid the risk of serious harm associated with use;

h.     Failing to sufficiently test the "inert" ingredients and/or adjuvants, including the chemicals classified as fragrances contained within Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers, and the propensity of these ingredients to render the relaxers toxic or to increase the toxicity of the relaxers;

Case ID: 240502672
Control No.: 24062644

i.   Systematically suppressing or downplaying contrary evidence about the risks, incidence, and prevalence of the side effects of exposures to Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers, such as side effects of exposure to endocrine-disrupting chemicals;

j.   Failing to disclose the risk of serious harm associated with use of endocrine-disrupting chemicals either alone or when included Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen; and,

k.   Continuing to manufacture and sell Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers, with the knowledge that they were unreasonably safe and dangerous.

l.   Marketing, advertising, and recommending the use Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers without sufficient knowledge as to their dangerous propensities;

m.   Representing that Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers were safe for their intended use when they were not;

n.   Failing to disclose the risk of serious harm associated with use of Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers;

o.    Failing to provide adequate instructions, guidelines, and safety precautions to protect the health of those persons whom Defendants could reasonably

Case ID: 240502672
Control No.: 24062644

foresee would use Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers;

p.    Representing that Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers were safe, specifically because they did not contain "Lye", sodium hydroxide, for their intended use when they were not;

q.    Failing to disclose the risk of serious harm associated with use of Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers;

r.    Continuing to manufacture and sell Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers, with the knowledge that the relaxers were unreasonably safe and dangerous.

161.    It was reasonably foreseeable that consumers, including Plaintiff, would suffer injury and possibly die as a result of Defendants' failure to exercise reasonable care in the manufacturing, marketing, promotion, labeling, distribution, and sale Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers.

162.    Defendants' negligent decisions to market and distribute Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers increased the risk of harm, and was a producing cause, proximate cause, and substantial factor of the development of Plaintiff's cancer.

163.    As a result of the Defendants' reckless and conscious disregard for the health and safety of consumers of their hair relaxer products, Plaintiff sustained the following damages as a foreseeable, direct, and proximate result of Defendants' acts and omissions:

Case ID: 240502672
Control No.: 24062644

a.     Economic losses, including medical care and lost earnings; and,

b.     Noneconomic losses, including physical and mental pain and suffering, emotional distress, inconvenience, loss of enjoyment of life, impairment of quality of life, past and future.

WHEREFORE, Plaintiff respectfully demands judgment in her favor and against Defendants, in an amount in excess of the applicable arbitration limits, including interest, costs of suit, delay damages, compensatory damages, punitive damages, and such other relief as this Honorable Court may deem appropriate.

## COUNT IV
## BREACH OF IMPLIED WARRANTIES
### (Plaintiff v. L'Oreal Defendants, Strength of Nature Defendants, Defendant Avlon, ACME Defendants and CVS Defendants)

164.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

165.    At all relevant times, Defendants L'Oréal Defendants and Strength of Nature Defendants were engaged in the business of manufacturing, formulating, creating, designing, testing, labeling, packaging, supplying, marketing, promoting, selling, advertising, and otherwise introducing Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers that Plaintiff used into the stream of commerce.

166.    At the time L'Oréal Defendants and Strength of Nature Defendants, marketed, sold, and distributed its Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers for use by Plaintiff, Defendants knew of their intended use and implicitly warranted that the products were of merchantable quality and safe and fit for the use for which they were intended, specifically to chemically straighten hair.

Case ID: 240502672
Control No.: 24062644

167.     Before the time of Plaintiff's use of Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers, L'Oréal Defendants, Strength of Nature Defendants, and Defendant Avlon impliedly warranted to consumers, including Plaintiff, that its relaxers were of merchantable quality and safe and fit for the use for which they were intended; specifically, to chemically straighten hair.

168.     L'Oréal Defendants, Strength of Nature Defendants, and Defendant Avlon, however, failed to disclose that Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers have dangerous propensities when used as intended and that the use of the relaxers carry an increased risk of developing severe injuries, including Plaintiff's cancer.

169.     Plaintiff reasonably relied upon the skill, superior knowledge, and judgment of L'Oréal Defendants, Strength of Nature Defendants, and Defendant Avlon, and upon their implied warranties that its Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers were of merchantable quality and fit for their intended purpose or use.

170.     Defendants' Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers were expected to reach, and did in fact reach, consumers and/or users, including Plaintiff, without substantial change in the condition in which they were manufactured and sold by L'Oréal Defendants, Strength of Nature Defendants, and Defendant Avlon.

171.     At all relevant times to this litigation, Defendants were aware that consumers and users of its Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers, including Plaintiff, would use the products as marketed; therefore, Plaintiff was a

Case ID: 240502672
Control No.: 24062644

foreseeable user of Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers.

172.    Defendants intended that its Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers be used in the manner in which Plaintiff was exposed, and Defendants implicitly warranted their product to be of merchantable quality, safe, and fit for this use, despite the fact that the relaxers were not adequately tested and/or researched.

173.    In reliance on Defendants' implied warranty, Plaintiff used Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers as instructed and labeled and in the foreseeable manner intended, recommended, promoted, and marketed by Defendants.

174.    Plaintiff could not have reasonably discovered or known of the risks of serious injury associated with Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers.

175.    Defendants breached their implied warranty to Plaintiff in that Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers were not of merchantable quality, safe, or fit for their intended use, an/or adequately tested.

176.    Defendants' Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers have dangerous propensities when used as intended and anticipated and can cause serious injuries, including the cancer Plaintiff sustained.

177.    The harm caused by Defendants' Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers far outweighed their benefits, rendering the products more dangerous than an ordinary consumer or user would expect and more dangerous than alternative products.

Case ID: 240502672
Control No.: 24062644

178.     As a direct and proximate result of Defendants' wrongful acts and omissions Plaintiff has suffered severe and permanent physical and emotional injuries.

179.     As a result of the Defendants' reckless and conscious disregard for the health and safety of consumers of their hair relaxer products, Plaintiff sustained the following damages as a foreseeable, direct, and proximate result of Defendants' acts and omissions:

      a.     Economic losses, including medical care and lost earnings; and

      b.     Noneconomic losses, including physical and mental pain and suffering, emotional distress, inconvenience, loss of enjoyment of life, impairment of quality of life, past and future.

WHEREFORE, Plaintiff respectfully demands judgment in her favor and against Defendants, in an amount in excess of the applicable arbitration limits, including interest, costs of suit, delay damages, compensatory damages, punitive damages, and such other relief as this Honorable Court may deem appropriate.

Respectfully submitted,

**KLINE & SPECTER, P.C.**

By: _____
SHANIN SPECTER, ESQUIRE
TOBI L. MILLROOD, ESQUIRE
BRADEN R. LEPISTO, ESQUIRE
SHERRELL L. DANDY, ESQUIRE
*Attorneys for Plaintiffs*

Dated:   May 22, 2024

Case ID: 240502672
Control No.: 24062644

**VERIFICATION**

    I, Dr. Merle Carter, hereby verify that I am the Plaintiff in the foregoing action; that the attached Complaint is based upon information which I have furnished to my counsel and information which has been gathered by my counsel in the preparation of the lawsuit. The language of the Complaint is that of counsel and not of affiant. I have read the Complaint and to the extent that the allegations therein are based upon information I have given counsel, they are true and correct to the best of my knowledge, information, and belief. To the extent that the contents of the Complaint are that of counsel, I have relied upon counsel in making this Verification. I understand that false statements made herein are made subject to the penalties of 18 Pa. C.S.A. § 4904 relating to unsworn falsifications to authorities.

Date:  5/22/2024                                         
                                          Dr. Merle Carter, Plaintiff



Filed and Attested by the
Office of Judicial Records
13 JUN 2024 04:41 pm
G. IMPERATO

# EXHIBIT
# B

| | |
|---|---|
| MERLE CARTER, M.D.<br>6608 LINCOLN DRIVE<br>PHILADELPHIA, PA 19199<br><br>PLAINTIFF<br><br>V.<br><br>L'ORÉAL USA, INC., et al.,<br><br>DEFENDANTS. | IN THE COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY,<br>PENNSYLVANIA<br><br><br>Case ID: 240502672 |

## AFFIDAVIT OF CVS PHARMACY, INC.

Thomas S. Moffatt, upon their oath to tell the truth states as follows:

1. I am over the age of twenty-one years of age and competent to testify. I have personal knowledge of all facts in this affidavit.

2. I am the current Vice President, Secretary and Senior Legal Counsel – Corporate Services, for CVS Pharmacy, Inc. In my role, I am familiar with and have personal knowledge of the corporate structure of CVS Pharmacy, Inc., its parent, subsidiary and affiliate entities, and its retail store locations.

3. CVS Pharmacy, Inc. is a Rhode Island corporation, with a principal place of business located at One CVS Drive, Woonsocket, RI 02895.

4. CVS Pharmacy, Inc.'s Pennsylvania registered agent for service of process is CT Corporation System, 600 North Second Street, Suite 401, Harrisburg, PA 17101.

5. CVS Pharmacy, Inc., is the operating entity that ultimately controls and is responsible for the sale of products by CVS retail store locations in Pennsylvania. CVS Pharmacy 6701 Ridge Avenue and CVS Pharmacy 7065 Lincoln Drive are retail store locations in the City of Philadelphia and are not legal entities.

6. I understand that Plaintiff, Merle Carter, M.D., filed a Complaint in this Court against CVS Pharmacy, Inc., CVS Pharmacy 6701 Ridge Avenue, and CVS Pharmacy 7065 Lincoln Drive on May 22, 2024.

7. CVS Pharmacy, Inc. received service of the Complaint via certified mail on May 30, 2024.


FURTHER AFFIANT SAYETH NOT.

I affirm under the penalties for perjury that the statements made in this affidavit are true and correct.

6/13/2024
_____
Date

_____
Name

Case ID: 240502672
Control No.: 24062644



Filed and Attested by the
Office of Judicial Records
13 JUN 2024 04:41 pm
G. IMPERATO

# EXHIBIT
# C

B&R Services for Professionals Inc.
235 SOUTH 13TH STREET
PHILADELPHIA, PA 19107
PHONE: (215) 546-7400
FAX: (215) 985-0169

NAPPS National Association of Professional Process Servers

Merle Carter

-VS-

L'Oreal USA, Inc, et al

COURT Court of Common Pleas of Pennsylvania Philadelphia County - Civil

CASE NUMBER 240502672

Filed and Attested by the Office of Judicial Records 30 MAY 2024 02:01 pm G. IMPERATO

# AFFIDAVIT

State of Pennsylvania
County of Philadelphia

B&R Control # CS208232.04
Reference Number

James Davis, being duly sworn according to law, deposes and says that he/she is the process server/sheriff herein named, and that the facts set forth below are true and correct to the best of their knowledge, information and belief.

On 5/23/2024 we received the **Complaint** and that service was effected upon **CVS Pharmacy** at **7065 LINCOLN DRIVE, PHILADELPHIA, PA 19119** on **5/24/2024** at **5:08 PM**, in the manner described below:

**By service upon:** An individual, (STORE MANAGER) as agent or person in charge of office or usual place of business, who refused to provide their name.

**Description:**
Gender: **MALE** Race/Skin: **BROWN** Age: Weight: Height: **5ft4in - 5ft8in** Hair: **BLACK** Glasses:**No**
Other:

Service Notes:

**I verify that the statements made in this affidavit are true and correct to the best of my knowledge, information, and belief. I understand that false statements herein are made subject to the penalties of 18 Pa.C.S. § 4904, relating to unsworn falsification to authorities.**

**Process Server/Sheriff** ______________________

ATTEMPTS:

Client Phone (215) 772-1000 : **Filed Date:** 05/22/2024 **BR Serve By:** 05/28/2024

Sherrell L. Dandy, Esquire
Kline & Specter, P.C.
1525 Locust Street
19th Floor
Philadelphia, PA 19102



ORIGINAL



# EXHIBIT
# D

Case ID: 240502672
Control No.: 24062644

**B&R**
Services for Professionals Inc.
PHILADELPHIA, PA 19107
PHONE: (215) 546-0169
FAX: (215) 985-0169

National Association of
Professional Process Servers

Merle Carter

-VS-

L'Oreal USA, Inc, et al

**COURT** Court of Common Pleas of Pennsylvania
Philadelphia County   Civil

*Filed and Attested by the
Office of Judicial Records
26 MAY 2024 01:49 am
G. IMPERATO*

**CASE NUMBER** 240502672

## AFFIDAVIT

State of  Pennsylvania
County of  Philadelphia

**B&R Control #**   CS208232.03

**Reference Number**

Nipsey Mitchell, being duly sworn according to law, deposes and says that he/she is the process server/sheriff herein named, and that the facts set forth below are true and correct to the best of their knowledge, information and belief.

On 5/23/2024 we received the **Complaint** for service upon:

**CVS Pharmacy** at **6701 Ridge Avenue, Philadelphia, PA 19128.**

Service was **NOT SERVED** on **05/23/2024** at **4:30 PM**, for the reason described below:

**REFUSED SERVICE. SPOKE TO 3 MANAGERS AND THEY ALL SAID TO SEND TO CORPORATE.**

**Process Server/Sheriff**  *Nipsey Mitchell*

ATTEMPTS:

**I verify that the statements made in this affidavit are true and correct to the best of my knowledge, information, and belief. I understand that false statements herein are made subject to the penalties of 18 Pa.C.S. § 4904, relating to unsworn falsification to authorities.**

| Client | Phone (215) 772-1000 | : | **Filed Date:** 05/22/2024 | **BR Serve By:** 05/28/2024 |
|---|---|---|---|---|

Sherrell L. Dandy, Esquire
Kline & Specter, P.C.
1525 Locust Street
19th Floor
Philadelphia, PA  19102



ORIGINAL

Case ID: 240502672
Control No.: 24062644

# EXHIBIT A-9



**ICE MILLER LLP**

Jacqueline M. Lesser, Esquire
Attorney ID No: 204622
1735 Market Street, Suite 3900
Philadelphia, PA 19103
Telephone: (215) 982-5165
Email: Jacqueline.Lesser@icemiller.com

*Attorney for Defendant CVS Pharmacy, Inc. (erroneously sued as "CVS Pharmacy 6701 Ridge Avenue" and "CVS Pharmacy 7065 Lincoln Drive)*

---

| | |
|---|---|
| MERLE CARTER, M.D.<br>6608 LINCOLN DRIVE<br>PHILADELPHIA, PA 19199<br><br>PLAINTIFF<br><br>V.<br><br>L'ORÉAL USA, INC., et al.,<br><br>DEFENDANTS. | IN THE COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY,<br>PENNSYLVANIA<br><br><br>Case ID: 240502672 |

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT CVS PHARMACY, INC.'S (ERRONEOUSLY SUED AS "CVS PHARMACY 6701 RIDGE AVENUE" AND "CVS PHARMACY 7065 LINCOLN DRIVE")
PRELIMINARY OBJECTIONS TO PLAINTIFF'S COMPLAINT**

Defendant CVS Pharmacy, Inc. ("CVS") (erroneously also sued CVS Pharmacy 6701 Ridge Avenue" and "CVS Pharmacy 7065 Lincoln Drive")[4], by and through its undersigned

---

[4] CVS Pharmacy, Inc. is the operating entity that ultimately controls and is responsible for the sale of products by CVS retail store locations in Pennsylvania. CVS Pharmacy 6701 Ridge Avenue and CVS Pharmacy 7065 Lincoln Drive located in Philadelphia are not proper defendants as they are retail store locations and are not legal entities. Notwithstanding these Preliminary Objections by CVS Pharmacy, Inc., CVS Pharmacy 6701 Ridge Avenue and CVS Pharmacy 7065 Lincoln Drive do not waive, and expressly reserve, the right to seek dismissal as improper parties at a later date.

14

Case ID: 240502672
Control No.: 24062644

counsel, hereby files this Memorandum of Law in Support of its Preliminary Objections to Plaintiff

Merle Carter, M.D.'s Complaint, and in support thereof, states the following:

## I.    MATTER BEFORE THE COURT

Before the Court are Preliminary Objections on behalf of CVS to Plaintiff's Complaint

pursuant to Pa.R.Civ.P. 1028(a)(1), (2), (3) and (a)(4).  Plaintiff has improperly attempted to name

and serve CVS retail store locations. It is submitted that service on these individual store locations

does not constitute proper service upon CVS.  Further, Plaintiff's Complaint fails to conform with

Pa.R.Civ.P. 1019(a) and Pa.R.Civ.P. 1020(a) and does not satisfy Rule 1028(a)(3) as she has not

pleaded any specific allegations of her purported use of certain unidentified hair relaxer products

for the time period 2004 to the present. In addition, the allegations against Defendants are lumped

together with no differentiation between Defendants and their alleged conduct. Plaintiff also fails

to satisfy Rule 1028(a)(4) because she has not and cannot plead that CVS, or any of the retailer

defendants, caused her injury. Furthermore, the Complaint fails to allege that CVS had the requisite

malicious state of mind to support a claim for punitive damages.

## II.    STATE OF QUESTIONS INVOLVED

1.  Should this Court dismiss Counts I, II, and IV, as to CVS Pharmacy 6701 Ridge
    Avenue and CVS Pharmacy 7065 Lincoln Drive, of Plaintiff's Complaint due to
    improper service?

    *Suggest Answer: Yes*

2.  Should this Court dismiss Counts I, II and IV of Plaintiff's Complaint for failure to
    conform to law or rule of court under Pa. R. Civ. P. 1028(a)(2) and failure to plead with
    factual specificity under Pa. R. Civ. P. 1028(a)(3)?

    *Suggest Answer: Yes*

Case ID: 240502672
Control No.: 24062644

3. Should this Court dismiss Counts I, II, and IV of Plaintiff's Complaint and Plaintiff's request for punitive damages for failure to allege legally sufficient claims under Pa.R.Civ.P. 1028(a)(4)?

*Suggest Answer: Yes*

## III.   PROCEDURAL HISTORY AND FACTUAL BACKGROUND

In this products liability action, Plaintiff Merle Carter, M.D. alleges that she used chemical hair relaxer brands "Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen" (the "Products") purchased from CVS starting in approximately 2004. *See Ex. A., Compl*. at ¶¶ 83, 88. Plaintiff further alleges that the Products "contain large amounts" of cancer-causing chemicals, and that this information was "concealed" from the public, the government, and Plaintiff. *Id*. at ¶¶ 118, 146. Plaintiff also asserts that she purchased the Products "from retailers", which purportedly includes CVS. *Id*. at ¶ 83. Plaintiff asserts claims against CVS for strict liability – design defect, strict liability – failure to warn, and breach of implied warranties. *See generally id.*

Plaintiff's Complaint is wholly devoid of any assertions regarding her alleged purchases of the hair relaxer products at issue from CVS; for example, she does not have any allegations regarding where she purchased the Products (rather, lumping two CVS retail store locations together), when she purchased the Products or how often she purchased the Products. Indeed, she fails to include this requisite information for each of the eight product names she allegedly purchased at CVS. In addition, Plaintiff's Complaint is wholly devoid of allegations regarding how, when, or on what basis CVS allegedly should have—or even could have—known of any allegedly cancer-causing chemicals Plaintiff claims were in the Products. *See generally id*.

16

While Plaintiff alleges she purchased several products from CVS—she does not specify when, or on how many occasions, and she also makes an overbroad and contradictory allegation that she bought all of the alleged hair relaxer products from two CVS retail store locations at unspecified periods of time across a twenty-year span (beginning in 2004). *See id.* ¶ 83.

## IV.    PRELIMINARY OBJECTIONS

### a.    PRELIMINARY OBJECTIONS TO PLAINTIFF'S COMPLAINT PURSUANT TO PA.R.CIV.P. 1028(A)(1) DUE TO IMPROPER SERVICE ON THE CVS RETAIL STORE DEFENDANTS.

Plaintiff purports to name CVS Pharmacy, Inc. in her Complaint filed on May 22, 2024, but also sued two CVS retail store locations, CVS Pharmacy 6701 Ridge Avenue and CVS Pharmacy 7065 Lincoln Drive (the "CVS retail store locations"). Under Pennsylvania Rule of Civil Procedure 1028(a)(1), a preliminary objection may be asserted due to improper service of a writ of summons of a complaint. The CVS retail store locations are not proper defendants as they are not legal entities and, thus, not proper defendants in this matter. *Ex. B* at ¶ 5. CVS Pharmacy, Inc. is the only legal CVS entity with a principal place of business in Rhode Island and thus, is the only proper defendant. *Ex. B* at ¶ 3. Accordingly, Plaintiff was required to serve CVS in accordance with Pennsylvania Rule of Civil Procedure 404. On or about May 30, 2024, Plaintiff filed an Affidavit of Service purporting to have served "CVS Pharmacy at 7065 Lincoln Drive" with the Complaint by Personal Service on May 24, 2024. *Ex. C.* 12. While Plaintiff's Affidavit of Service suggests that she served CVS Pharmacy 7065 Lincoln Drive on May 24, 2024, Pennsylvania Rule of Civil Procedure 404 provides that "original process shall be served outside the Commonwealth within ninety days of the issuance of the writ or the filing of the complaint or the reissuance or the reinstatement thereof." Pursuant to Rule 403 of the Pennsylvania Rules of Civil Procedure, "a copy of the process shall be mailed to the defendant by any form of mail requiring a receipt signed

17

Case ID: 240502672
Control No.: 24062644

by the defendant or his authorized agent."   As the retail store locations are not the proper

defendants nor are they authorized agents to accept service on behalf of CVS Pharmacy, Inc., it is

submitted that service by mail at the store locations, upon an unidentified individual, is not proper

service upon CVS.  *See Salas v. Wal-Mart Stores East, Inc*., 2015 WL 6737591*3 (Pa. Supr. Ct.

August 7, 2015).[5]

> ### b. PRELIMINARY OBJECTIONS TO PLAINTIFF'S COMPLAINT FOR FAILURE TO COMPLY WITH PA.R.CIV.P. 1019(A) AND 1020(A) AND FOR LACK OF SPECIFICITY UNDER PA.R.CIV.P. 1028(a)(3) – COUNTS I, II, IV

Pennsylvania Rule of Civil Procedure 1028(a)(2) provides for the filing of preliminary

objections where a complaint fails "[t]o conform to law or rule of court." Pa. R.Civ.P. 1028(a)(2).

Rule of Civil Procedure 1019(a) in turn requires that the material facts on which a cause of action

is based be stated in a concise and summary form. Pa. R.Civ.P. 1019(a).  Indeed, as explained by

the Superior Court, "a pleader must set forth concisely the facts upon which his cause of action is

based. The complaint must not only apprise the defendant of the claim being asserted, but it must

also summarize the essential facts to support the claim." *Bouchon v. Citizen Care, Inc*., 176 A.3d

244, 258 (Pa. Super. 2017) (quoting *Donaldson v. Davidson Bros., Inc*., 144 A.3d 93, 103 (Pa.

Super. 2016)).

Rule 1020(a) also provides that "[t]he plaintiff may state in the complaint more than one

cause of action cognizable in a civil action against the same defendant." However, "[e]ach cause

of action and any special damage related thereto shall be stated in a separate count containing a

demand for relief." Pa. R.Civ.P. 1020(a).  With respect to Rule 1020(a), the Superior Court has

---

[5] As evidence, on or about May 23, 2024, Plaintiff filed an Affidavit of Service properly noting that CVS Pharmacy at 6701 Ridge Avenue was not served as the managers properly directed service to be made upon CVS's corporate office. Ex. D.  CVS Pharmacy, Inc. – the only proper defendant in this case – received service of the Complaint via certified mail on May 30, 2024. *See Ex. B* at ¶ 7.

Case ID: 240502672
Control No.: 24062644

observed that "[w]hile there is some authority that a single cause of action may be pled against two or more defendants who are alleged to be jointly and severally liable, that cannot be the case where the factual background underlying each defendant's liability is different." *Bouchon*, 176 A.3d at 258 (citing *General State Authority v. Lawrie and Green*, 356 A.2d 851, 854 (Pa. Commw. 1976)). A complaint also "must apprise the defendant of the nature and extent of the plaintiff's claim so that the defendant has notice of what the plaintiff intends to prove at trial and may prepare to meet such proof with his own evidence." *Id.* (quoting *Discover Bank v. Stucka*, 33 A.3d 82, 86–87 (Pa. Super. 2011)).

In addition, under Rule 1028(a)(3) of the Pennsylvania Rules of Civil Procedure, preliminary objections to a Complaint may be sustained where the pleading fails to plead allegations with sufficient specificity. *See* Pa.R.Civ.P. 1028(a)(3). Pennsylvania is a fact pleading state. A complaint must "disclose 'material facts' sufficient to enable the adverse party to prepare his case." *Laudau v. Western Pennsylvania Nat'l Bank*, 282 A.2d 335, 339 (Pa. 1971).

"Simple, vague and conclusory allegations" are not enough. *Id.* at 340. If Plaintiff "fails to connect any particular [defendant] to the cause" of her injuries, the claim must fail. *Cummins v. Firestone Tire and Rubber Co.*, 495 A.2d 963, 967 (Pa. Super. Ct. 1985). Joinder of multiple defendants does not permit Plaintiff to fail to plead the appropriate elements for "each defendant, separately and independently." *Id.* at 968. Without specific "identification, there can be no . . . legal causation, and hence there can be no liability." *Id.* (finding that absent connecting specific appellee and their product to the injury, appellant's claims for strict liability failed for lack of specificity). A complaint must contain essential material facts that support the claim against the defendant, enough to allow the defendant to prepare a defense. *See McShea v. City of Phila.*, 995 A.2d 334, 339 (Pa. 2010). If any particular allegation is too vague, the defendant may make a

19

Case ID: 240502672
Control No.: 24062644

preliminary objection in the nature of a motion to strike that portion of the complaint. *See Connor v. Allegheny Hosp.*, 461 A.2d 600, 603 n.3 (Pa. 1983).

Plaintiff's Complaint against CVS fails to satisfy this standard. Plaintiff asserts three claims against CVS – strict liability – design defect, Count I, strict liability – failure to warn, Count II, and breach of implied warranties, Count IV. *See generally, Compl.*

As to all of these counts, Plaintiff's specific allegations against CVS are contradictory, overbroad, and vague. Plaintiff alleges she purchased from CVS an unspecified number of "different variations" of hair relaxer product(s) under eight different brand names across a twenty-year span, beginning in 2004. *Compl.* at ¶ 83. The allegations are unclear whether she is alleging that her claims against CVS are limited to these eight products, on what occasions she purchased or used them, or whether they include unspecified products from one or more of the eight identified brand names purchased and used with unspecified frequency throughout the course of twenty years. Plaintiff's allegations are so vague, contradictory and confusing that CVS cannot determine the specific nature and scope of Plaintiff's claims against it. Accordingly, CVS cannot understand the specific basis on which Plaintiff seeks recovery under Counts I, II and IV.

Moreover, within all three of these Counts, Plaintiff's Complaint repeatedly speaks collectively to "Defendants" without differentiating any conduct or claims as between or among them. *See Compl*. ¶¶.  Plaintiff purports to name twelve defendants in this case, ranging from product manufacturers, retail companies, and retail store locations.  Despite significant differences between the defendants, each of Plaintiff's claims allege, with the exception of Count I, without factual support, that all "defendants" engaged in the same conduct, such as manufacturing the products.

Case ID: 240502672
Control No.: 24062644

For example, in Plaintiff's strict liability – failure to warn claim, Count II, Plaintiff alleges that "Defendants had a duty to warn of the risks associates with using their hair relaxer products" and that "Defendants knew, or should have known, of the unreasonable risks of harm associated with the use of their chemical hair relaxer products, namely their unreasonably dangerous and carcinogenic properties and their propensity to cause cancer." *Id*. at ¶¶ 143-144.  However, Plaintiff does not, and cannot, plausibly assert that CVS manufactured the hair relaxer products. In fact, nowhere in the Complaint does Plaintiff allege any conduct attributable to CVS specifically.

The only allegation in Plaintiff's 179-paragraph Complaint that even mentions conduct attributable to the "Retailer Defendants," which includes CVS as well as other Defendants, is that "Retailer Defendants had a duty to ensure that [their Products] w[ere] not defective and safe for its intended use before selling said products to consumers, such as Dr. Carter." *Id*. at ¶ 128.  This allegation lumps the retailer defendants together as one and does not specify which product(s) are attributed to each retailer by which they claim the retailer defendants have a legal duty.

Thus, CVS respectfully requests that the Preliminary Objections be sustained as to Counts I, II, and IV, or in the alternative, that the Court strike Paragraphs 83 and 128 of the Complaint for lack of specificity pursuant to Pa.R.Civ.P. 1028(a)(3).

### c.  PRELIMINARY OBJECTIONS IN THE NATURE OF A DEMURRER TO PLAINTIFF'S COMPLAINT BASED ON LEGAL INSUFFICIENCY UNDER PA.R.CIV.P. 1028(A)(4).

Under Rule 1028(a)(4) of the Pennsylvania Rules of Civil Procedure, the court may sustain objections based on demurrer due to legal insufficiency of the pleading. *See* Pa.R.Civ.P. 1028(a)(4). When considering "preliminary objections in the nature of demurrer," all well- pleaded "material facts set forth in the challenged pleadings are admitted as true, as well as all inferences

Case ID: 240502672
Control No.: 24062644

reasonably deducible therefrom." *Haun v. Cmty. Health Sys., Inc.*, 14 A.3d 120, 123 (Pa. Super. Ct. 2011); *see also Giffin v. Chronister*, 616 A.2d 1070, 1072 (Pa. Commw. Ct. 1992). Yet, "conclusions of law, unwarranted inferences from facts, argumentative allegations or expressions of opinion" need not be accepted as true. *Giffin v. Chronister*, 616 A.2d at 1072.

The Complaint fails to allege facts legally sufficient to impose liability on CVS and thus all claims against CVS should be dismissed.  First, Plaintiff's claims fail to allege CVS's—or any other retailer defendants'—role in her injury. Second, Plaintiff fails to allege any facts remotely suggesting that CVS had the requisite state of mind for punitive damages to be awarded.

   1.  <u>All Of Plaintiff's Claims Against CVS (Count I, II, IV) Are Legally Insufficient Due To A Failure To Establish Causation.</u>

To succeed on a strict liability claim, the Plaintiff must prove first that "the product was defective" and second that the product's "defect was a *substantial factor in causing* the injury." *Spino v. John S. Tilley Ladder Co.*, 696 A.2d 1169, 1172 (Pa. 1997) (emphasis added); *see also Charlton v. Toyota Indus. Equip.,* 714 A.2d 1043, 1046 (Pa. Super. Ct. 1998).  Relatedly, to prove breach of warranty under Pennsylvania law, the Plaintiff must show that the defendant's breach caused the plaintiff's injury. *See Altronics of Bethlehem, Inc. v. Repco, Inc.*, 957 F.2d 1102, 1105 (3d Cir. 1992) (to carry the burden on a breach of warranty claim, plaintiff must show an "absence of other reasonable secondary causes").

Plaintiff fails to allege CVS's role in her injury. Plaintiff's only allegation specific to the retailer defendants regarding strict liability is nothing more than a conclusory statement that "Retailer Defendants had a duty to ensure [hair relaxer products] w[ere] not defective and safe for its intended use before selling said products to consumers, such as Dr. Carter." *Compl.* at ¶ 128. Plaintiff only makes this argument regarding Count I, strict liability – design defect, and makes no allegations against retailer defendants in Count II, strict liability – failure to warn. *See id*. ¶¶ 140-

22

Case ID: 240502672
Control No.: 24062644

152. Though Plaintiff argues the retailer defendants, including CVS, had a duty to ensure the hair relaxer products were safe, no such duty exists in a strict liability claim. *See Barton v. Lowe's Home Ctrs., Inc.*, 124 A.3d 349, 354 (Pa. Super. 2015) (explaining that in *Tincher v. Omega Flex, Inc.*, 104 A.3d 328, 400-01 (Pa. 2014) the Pennsylvania Supreme Court declined to adopt the RESTATEMENT (THIRD) OF TORTS and instead reaffirmed the viability of 402A from the RESTATEMENT (SECOND)). Nonetheless, retailers like CVS have no duty to inspect products for latent defects and are not "liable to a customer for injuries caused by" such defects. *See Kratz v. Am. Stores Co.*, 59 A.2d 138, 138 (Pa. 1948) (stating that there is no duty on the part of the defendant to test and inspect the contents of the product before sale because that would be "wholly impractical"). Furthermore, in her claim for breach of warranty, Plaintiff does not assert any allegations against the retailer defendants, including CVS. Compl. ¶¶ 153-163. Instead, all allegations are made against the manufacturing defendants or "Defendants" collectively.

Plaintiff also fails to adequately plead—and cannot adequately plead—causation against CVS. Plaintiff makes an overbroad and vague allegation that she bought unspecified products from eight different named brands at the CVS retail store locations beginning in 2004. *Id*. ¶ 83. Even if such allegations were sufficient (which they are not), the allegedly "groundbreaking" study on which Plaintiff relies is not sufficient for Plaintiff to allege that the hair relaxer products allegedly purchased from any given retailer defendant caused her cancer. Plaintiff alleges that the study upon which she relies shows that women who used hair relaxer products were more likely to develop uterine cancer. *Id*. ¶¶ 108-109. Plaintiff further alleges that the risk increases for those who "frequently used hair relaxers." *Id*. The Complaint alleges broadly that Plaintiff used hair relaxers "every four to eight weeks." *See id*. ¶ 81. Plaintiff does not allege when exactly she purchased any brands of hair relaxer products from CVS, other than a vague allegation that she began purchasing

Case ID: 240502672
Control No.: 24062644

products approximately in 2004, and so CVS is unable to determine if she purchased the products before or after her cancer diagnosis. *See id*. ¶ 83, 113. Plaintiff never explains how frequently she purchased and used any of the listed products from CVS. *See generally* Compl. Additionally, she never specifies how often she purchased or used the products she allegedly purchased from CVS. *See generally* Compl.; *see id*. ¶ 83. It is therefore impossible to ascertain from the allegations if Plaintiff's purported use of hair relaxer product(s) purchased from CVS even corresponds with the type and frequency of use allegedly discovered in the "groundbreaking" study. *See id*. ¶¶ 108-109. Thus, Plaintiff fails to establish that exposure to specific product(s) purchased at CVS was a substantial cause of the complained injury and causation is therefore not properly plead in the Complaint against CVS.

2.  <u>Plaintiff's Request For Punitive Damages Is Not Sufficiently Plead As It Is Not Based On Legally Sufficient Allegations.</u>

Finally, Plaintiff's claim for punitive damages against CVS should likewise be dismissed. Punitive damages should be dismissed when the complaint alleges nothing more than mere "ordinary negligence." *McDaniel v. Merck, Sharp & Dohme*, 533 A.2d 436, 447-48 (1987) (affirming dismissal of punitive damages in response to preliminary objections because appellant failed to plead any facts in support of their overly conclusory statements of willful and wanton conduct). Punitive damages "may not be awarded for misconduct which constitutes ordinary negligence such as inadvertence, mistake and errors of judgment." *Id*. at 447.

Punitive damages are awarded only when conduct is "outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others." *Id*. at 447 (citing RESTATEMENT (SECOND) OF TORTS, §908(2) (AM. L. INST. 2023). Punitive damages are "appropriate to punish and deter *only extreme* behavior, and in those *rare* instances in which they are justified, they are subject to strict judicial control." *Smith v. Reinhart Ford*, 68 Pa. D. & C.4th

Case ID: 240502672
Control No.: 24062644

432, 439 (Ct. Com. Pl. 2004) (emphasis added) (finding punitive damages appropriate because intentional fraud was plead which inherently provides proof for "outrageous conduct"). The Court must look at the defendant's state of mind and consider whether there is an "evil motive." *See Feld v. Merriam*, 485 A.2d 742, 747-48 (Pa. 1984) (discussing generally the requirements for punitive damages under Pennsylvania's adoption of the RESTATEMENT (SECOND) OF TORTS guidelines). If the defendant does not subjectively know of the risk, especially if the danger is not easily perceptible, actions or lack thereof could not be the result of an evil motive. *See Feld v. Merriam*, 485 A.2d 742, 748 (Pa. 1984); *Hutchison ex rel. Hutchison v. Luddy*, 896 A.2d 1260, 1266 (Pa. 2006) (applying *Feld v. Merriam*'s interpretation of Pennsylvania's adoption of the Restatement).

Here, Plaintiff fails to allege that CVS had "subjective appreciation of the risk," or that CVS was in any way malicious or evil in its action. *See Hutchison ex rel. Hutchison v. Luddy*, 896 A.2d at 1266. First, Plaintiff's Complaint is devoid of any allegation that CVS's conduct was willful, wanton, or reckless. *See generally* Compl. Second, Plaintiff's reliance on the "groundbreaking" study released eighteen years after she began purchasing hair relaxer products bars the possibility that CVS had the subjective appreciation of the risk required for punitive damages when Plaintiff was purchasing and using the product(s). *Id.* ¶ 109. CVS could not have had the evil motive required for punitive damages when, by Plaintiff's own admission, there was no way for CVS to have knowledge of the alleged link between the product(s) and cancer. *Id.* Plaintiff cannot meet the high standard for punitive damages without showing the Defendant's necessary intent and subjective appreciation. *See Feld v. Merriam*, 485 A.2d at 748 (finding a defendant's inadequate response to a not easily perceptible danger does not reach the level of intent

Case ID: 240502672
Control No.: 24062644

needed for punitive damages). Consequently, Plaintiff's request for punitive damages should be dismissed.

## V.    CONCLUSION

CVS respectfully requests that this Court grant its Preliminary Objections to Plaintiff's Complaint and enter the attached Order.

**ICE MILLER LLP**

By: */s/ Jacqueline M. Lesser*_____
  Jacqueline M. Lesser
  Identification No.: 204622
  1735 Market Street
  Suite 3900
  Philadelphia, PA 19103
  215-982-5165
  Jacqueline.lesser@icemiller.com

*Attorney for Defendant, CVS Pharmacy, Inc.*
*(erroneously sued as "CVS Pharmacy 6701 Ridge*
*Avenue" and "CVS Pharmacy 7065 Lincoln*
*Drive").*

26

Case ID: 240502672
Control No.: 24062644

## **CERTIFICATE OF SERVICE**

I, Jacqueline Lesser, do hereby certify that I have served a true and correct copy of Defendant CVS Pharmacy, Inc.'s ("CVS") (erroneously also sued as "CVS Pharmacy 6701 Ridge Avenue" and "CVS Pharmacy 7065 Lincoln Drive") Preliminary Objections to Plaintiff's Complaint, upon all counsel of record, via the court's electronic filing system on the following counsel of record:

> Tobias Millrood
> Braden Lepisto
> Sherrell Dandy
> KLINE & SPECTER, P.C.
> 1525 LOCUST STREET
> 19TH FLOOR
> PHILADELPHIA PA 19102
> (215)772-1000
> sherrell.dandy@klinespecter.com

**ICE MILLER LLP**

/s/ Jacqueline Lesser

Dated: June 13, 2024

27

# EXHIBIT A-10

MERLE CARTER, M.D.
6608 LINCOLN DRIVE
PHILADELPHIA, PA 19199

                    PLAINTIFF

        V.

L'ORÉAL USA, INC., et al.,


                    DEFENDANTS.

IN THE COURT OF COMMON PLEAS
PHILADELPHIA COUNTY
PENNSYLVANIA




Case ID: 240502672

Filed and Attested by the
Office of Judicial Records
26 JUN 2024 04:41 pm
G. IMPERATO

# ORDER

AND NOW, this_____ day of _____ 2024, upon consideration of the Preliminary Objections to Plaintiff's Complaint filed by Defendant CVS Pharmacy, Inc. ("CVS") (erroneously sued as "CVS Pharmacy 6701 Ridge Avenue" and "CVS Pharmacy 7065 Lincoln Drive"), and any response filed thereto, it is hereby ORDERED that the Preliminary Objections are SUSTAINED, and Counts I (Strict Liability – Design Defect) II (Strict Liability – Failure to Warn) and IV (Breach of Implied Warranties) against CVS are DISMISSED with prejudice.


                                        BY THE COURT:


                                        _____

# EXHIBIT A-11

**KLINE & SPECTER, P.C.**
By:  SHANIN SPECTER, ESQUIRE      (Attorney I.D. No.: 40928)
     TOBI L. MILLROOD, ESQUIRE     (Attorney I.D. No.: 77764)
     BRADEN R. LEPISTO, ESQUIRE    (Attorney I.D. No.: 313586)
     SHERRELL L. DANDY, ESQUIRE    (Attorney I.D. No.: 309348)
Shanin.Specter@klinespecter.com
Tobi.Millrood@klinespecter.com
Braden.Lepisto@klinespecter.com
Sherrell.Dandy@klinespecter.com
1525 Locust Street
Philadelphia, Pennsylvania 19102
215-772-1000
215-772-1359 (fax)                              ATTORNEYS FOR PLAINTIFF

Filed and Attested by the
Office of Judicial Records
17 JUN 2024 02:41 pm
S. GILLIAM

| | |
|---|---|
| **MERLE CARTER** <br><br> *Plaintiff,* <br><br> V. <br><br> **L'ORÉAL USA, INC.,** et al. <br><br> *Defendants.* | COURT OF COMMON PLEAS PHILADELPHIA COUNTY <br><br> MAY TERM, 2024 <br><br> NO. 02672 <br><br> **JURY TRIAL DEMANDED** |

### AFFIDAVIT OF SERVICE

COMMONWEALTH OF PENNSYLVANIA        :
                                    : SS
COUNTY OF PHILADELPHIA              :

     SHAINA ROBBINS, being duly sworn according to law, deposes and says that on May 22, 2024, I mailed a true and correct copy of the Complaint in the above-captioned matter to Defendant, Avlon Industries, Inc. via Certified Mail, Return Receipt Requested and that same was received on May 28, 2024. A copy of the transmittal letter, return receipt and tracking information from usps.com is attached hereto as Exhibit A.

                                         _____
                                         SHAINA ROBBINS

SWORN TO AND SUBSCRIBED
before me this 17TH day of
_____, 2024.

Commonwealth of Pennsylvania - Notary Seal
ANGELA F. FATTIZZO, Notary Public
Philadelphia County
My Commission Expires November 9, 2025
Commission Number 1048180

Commonwealth of Pennsylvania - Notary Seal
ANGELA F. FATTIZZO, Notary Public
Philadelphia County
My Commission Expires November 9, 2025
Commission Number 1048180

# EXHIBIT "A"

Case ID: 240502672

## KLINE & SPECTER PC

ATTORNEYS AT LAW
1525 LOCUST STREET
PHILADELPHIA, PENNSYLVANIA 19102
WWW.KLINESPECTER.COM

SHERRELL L. DANDY

SHERRELL.DANDY@KLINESPECTER.COM

215-792-5608
FAX: 215-402-2352

May 22, 2024

**VIA CERTIFIED MAIL/RRR:**
**9590 9402 8234 3030 8731 31**

Avlon Industries, Inc.
1999 North 15th Street
Melrose Park, IL 60160

   *Re: Merle Carter v. L'Oreal USA, Inc., et al.*

Dear Sir/Madam:

   Enclosed please find the Complaint in the above-refenced matter, in which you were named as a Defendant, which was filed in the Philadelphia Court of Common Pleas on May 22, 2024.

    Very truly yours

    Sherrell L. Dandy

SLD/cm
encls

Case ID: 240502672

USPS.com® - USPS Tracking® Results

# USPS Tracking®

FAQs >

Tracking Number:                                                                        Remove ✕

# 70222410000015049849

Copy          Add to Informed Delivery (https://informeddelivery.usps.com/)

## Latest Update

Your item was delivered to an individual at the address at 2:43 pm on May 28, 2024 in
MELROSE PARK, IL 60160.

### Get More Out of USPS Tracking:

USPS Tracking Plus®

## Delivered
**Delivered, Left with Individual**

MELROSE PARK, IL 60160
May 28, 2024, 2:43 pm

**See All Tracking History**

What Do USPS Tracking Statuses Mean? (https://faq.usps.com/s/article/Where-is-my-
package)

---

**Text & Email Updates**                                                              ⌄

---

**USPS Tracking Plus®**                                                                ⌄

---

**Product Information**                                                                ⌄

---

**See Less** ⌃

Case ID: 240502672

6/12/24, 9:55 AM                                    USPS.com® - USPS Tracking® Results

Track Another Package

Enter tracking or barcode numbers

# Need More Help?

Contact USPS Tracking support for further assistance.

FAQs

Case ID: 240502672

| SENDER: *COMPLETE THIS SECTION* | *COMPLETE THIS SECTION ON DELIVERY* |
|---|---|
| ■ Complete items **1**, **2**, and **3**.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>**X** ☐ Agent ☐ Addressee<br>B. Received by *(Printed Name)*    C. Date of Delivery |
| 1. Article Addressed to:<br><br>Aylon Industries, Inc.<br>1999 N. 15th St.<br>Melrose Park, IL 60160 | D. Is delivery address different from item 1? ☐ Yes<br>If YES, enter delivery address below: ☐ No |
| ‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖<br>9590 9402 8234 3030 8731 31 | 3.  Service Type<br>☐ Adult Signature<br>☐ Adult Signature Restricted Delivery<br>☑ Certified Mail®<br>☐ Certified Mail Restricted Delivery<br>☐ Collect on Delivery<br>☐ Collect on Delivery Restricted Delivery<br>☐ Insured Mail<br>  Insured Mail Restricted Delivery<br>  (over $500) | ☐ Priority Mail Express®<br>☐ Registered Mail™<br>☐ Registered Mail Restricted<br>  Delivery<br>☐ Signature Confirmation™<br>☐ Signature Confirmation<br>  Restricted Delivery |
| 2. Article Number *(Transfer from service label)*<br>7022 2410 0000 1504 9849 | |
| PS Form **3811**, July 2020 PSN 7530-02-000-9053 | Domestic Return Receipt |

Case ID: 240502672

# EXHIBIT A-12

**KLINE & SPECTER, P.C.**
By:    SHANIN SPECTER, ESQUIRE    (Attorney I.D. No.: 40928)
        TOBI L. MILLROOD, ESQUIRE    (Attorney I.D. No.: 77764)
        BRADEN R. LEPISTO, ESQUIRE    (Attorney I.D. No.: 313586)
        SHERRELL L. DANDY, ESQUIRE    (Attorney I.D. No.: 309348)
Shanin.Specter@klinespecter.com
Tobi.Millrood@klinespecter.com
Braden.Lepisto@klinespecter.com
Sherrell.Dandy@klinespecter.com
1525 Locust Street
Philadelphia, Pennsylvania 19102
215-772-1000
215-772-1359 (fax)                ATTORNEYS FOR PLAINTIFF

*Filed and Attested by the Office of Judicial Records 17 JUN 2024 12:42 pm E. GILLIAM*

| | |
|---|---|
| **MERLE CARTER** | COURT OF COMMON PLEAS PHILADELPHIA COUNTY |
| *Plaintiff,* | |
| V. | MAY TERM, 2024 |
| **L'ORÉAL USA, INC.,** et al. | NO. 02672 |
| *Defendants.* | |
| | **JURY TRIAL DEMANDED** |

## AFFIDAVIT OF SERVICE

COMMONWEALTH OF PENNSYLVANIA    :
                                   : SS
COUNTY OF PHILADELPHIA             :

    SHAINA ROBBINS, being duly sworn according to law, deposes and says that on May 22, 2024, I mailed a true and correct copy of the Complaint in the above-captioned matter to Defendant, <u>CVS Pharmacy, Inc.</u> via Certified Mail, Return Receipt Requested and that same was received on May 25, 2024. A copy of the transmittal letter and tracking information from usps.com is attached hereto as Exhibit A.

                                            _____
                                            SHAINA ROBBINS

SWORN TO AND SUBSCRIBED
before me this 17 day of
June , 2024.

_____

Commonwealth of Pennsylvania - Notary Seal
ANGELA F. FATTIZZO, Notary Public
Philadelphia County
My Commission Expires November 9, 2025
Commission Number 1048180

# EXHIBIT "A"

Case ID: 240502672

**KLINE & SPECTER** PC

ATTORNEYS AT LAW

1525 LOCUST STREET

PHILADELPHIA, PENNSYLVANIA 19102

WWW.KLINESPECTER.COM

SHERRELL L. DANDY                                                                                              SHERRELL.DANDY@KLINESPECTER.COM

215-792-5608

FAX: 215-402-2352

May 22, 2024

**VIA CERTIFIED MAIL/RRR:**
**9590 9402 8234 3030 8731 24**

CVS Health Corporation
1 CVS Drive
Woonsocket, RI 02895

   *Re:*   *Merle Carter v. L'Oreal USA, Inc., et al.*

Dear Sir/Madam:

   Enclosed please find the Complaint in the above-refenced matter, in which you were named as a Defendant, which was filed in the Philadelphia Court of Common Pleas on May 22, 2024.

       Very truly yours

       Sherrell L. Dandy

SLD/cm
encls

Case ID: 240502672

6/12/24, 9:53 AM                                    USPS.com® - USPS Tracking® Results

# USPS Tracking®

FAQs >

**Tracking Number:**                                                           Remove ✕

# 70222410000015049856

Copy        Add to Informed Delivery (https://informeddelivery.usps.com/)

## Latest Update

Your item has been delivered and is available at a PO Box at 8:40 am on May 25, 2024 in
WOONSOCKET, RI 02895.

**Get More Out of USPS Tracking:**

   **USPS Tracking Plus®**

## Delivered
**Delivered, PO Box**

WOONSOCKET, RI 02895
May 25, 2024, 8:40 am

**See All Tracking History**

**What Do USPS Tracking Statuses Mean? (https://faq.usps.com/s/article/Where-is-my-package)**

| Text & Email Updates | ∨ |
|---|---|

| USPS Tracking Plus® | ∨ |
|---|---|

| Product Information | ∨ |
|---|---|

## See Less ∧

Case ID: 240502672

USPS.com® - USPS Tracking® Results

Track Another Package

Enter tracking or barcode numbers

# Need More Help?

Contact USPS Tracking support for further assistance.

FAQs

Case ID: 240502672

# EXHIBIT A-13

**KLINE & SPECTER, P.C.**
By:    SHANIN SPECTER, ESQUIRE      (Attorney I.D. No.: 40928)
       TOBI L. MILLROOD, ESQUIRE    (Attorney I.D. No.: 77764)
       BRADEN R. LEPISTO, ESQUIRE   (Attorney I.D. No.: 313586)
       SHERRELL L. DANDY, ESQUIRE   (Attorney I.D. No.: 309348)
Shanin.Specter@klinespecter.com
Tobi.Millrood@klinespecter.com
Braden.Lepisto@klinespecter.com
Sherrell.Dandy@klinespecter.com
1525 Locust Street
Philadelphia, Pennsylvania 19102
215-772-1000
215-772-1359 (fax)                              ATTORNEYS FOR PLAINTIFF

*Filed and Attested by the Office of Judicial Records 17 JUN 2024 01:40 pm S. GILLIAM*

| | |
|---|---|
| **MERLE CARTER** | COURT OF COMMON PLEAS PHILADELPHIA COUNTY |
| *Plaintiff,* | |
| V. | MAY TERM, 2024 |
| **L'ORÉAL USA, INC.,** et al. | |
| *Defendants.* | NO. 02672 |
| | **JURY TRIAL DEMANDED** |

**AFFIDAVIT OF SERVICE**

COMMONWEALTH OF PENNSYLVANIA    :
                                : SS
COUNTY OF PHILADELPHIA          :

SHAINA ROBBINS, being duly sworn according to law, deposes and says that on May 22, 2024, I mailed a true and correct copy of the Complaint in the above-captioned matter to Defendant, L'Oreal USA Products, Inc. via Certified Mail, Return Receipt Requested and that same was received on May 28, 2024. A copy of the transmittal letter and tracking information from usps.com is attached hereto as Exhibit A.

_____
SHAINA ROBBINS

SWORN TO AND SUBSCRIBED
before me this 17ᵗʰ day of
_____, 2024.

Commonwealth of Pennsylvania - Notary Seal
ANGELA F. FATTIZZO, Notary Public
Philadelphia County
My Commission Expires November 9, 2025
Commission Number 1048180

# EXHIBIT "A"

Case ID: 240502672

**KLINE & SPECTER** PC

ATTORNEYS AT LAW

1525 LOCUST STREET

PHILADELPHIA, PENNSYLVANIA 19102

WWW.KLINESPECTER.COM

SHERRELL L. DANDY                                                                                    SHERRELL.DANDY@KLINESPECTER.COM

———

215-792-5608

FAX: 215-402-2352

May 22, 2024

**VIA CERTIFIED MAIL/RRR:**
**9590 9402 7390 2055 0920 44**

L'Oreal USA Products, Inc.
10 Hudson Yards
New York, NY 10001

      *Re:*    *Merle Carter v. L'Oreal USA, Inc., et al.*

Dear Sir/Madam:

    Enclosed please find the Complaint in the above-refenced matter, in which you were named as a Defendant, which was filed in the Philadelphia Court of Common Pleas on May 22, 2024.

    Very truly yours

*Sherrell L. Dandy*

    Sherrell L. Dandy

SLD/cm
encls

6/12/24, 12:50 PM                                         USPS.com® - USPS Tracking® Results

# USPS Tracking®

FAQs >

Tracking Number:                                                                            Remove ✕

# 70222410000015049801

Copy          Add to Informed Delivery (https://informeddelivery.usps.com/)

## Latest Update

Your item was delivered to the front desk, reception area, or mail room at 3:44 pm on May 28, 2024 in NEW YORK, NY 10001.

### Get More Out of USPS Tracking:

USPS Tracking Plus®

## Delivered
**Delivered, Front Desk/Reception/Mail Room**

NEW YORK, NY 10001
May 28, 2024, 3:44 pm

**See All Tracking History**

**What Do USPS Tracking Statuses Mean? (https://faq.usps.com/s/article/Where-is-my-package)**

---

**Text & Email Updates**                                                                    ⌄

---

**USPS Tracking Plus®**                                                                     ⌄

---

**Product Information**                                                                     ⌄

---

See Less ⌃

Track Another Package

Enter tracking or barcode numbers

Case ID: 240502672

USPS.com® - USPS Tracking® Results

# Need More Help?

Contact USPS Tracking support for further assistance.

FAQs

Case ID: 240502672

# EXHIBIT A-14

**KLINE & SPECTER, P.C.**
By:    SHANIN SPECTER, ESQUIRE      (Attorney I.D. No.: 40928)
       TOBI L. MILLROOD, ESQUIRE    (Attorney I.D. No.: 77764)
       BRADEN R. LEPISTO, ESQUIRE   (Attorney I.D. No.: 313586)
       SHERRELL L. DANDY, ESQUIRE   (Attorney I.D. No.: 309348)
Shanin.Specter@klinespecter.com
Tobi.Millrood@klinespecter.com
Braden.Lepisto@klinespecter.com
Sherrell.Dandy@klinespecter.com
1525 Locust Street
Philadelphia, Pennsylvania 19102
215-772-1000
215-772-1359 (fax)                          ATTORNEYS FOR PLAINTIFF

*Filed and Attested by the
Office of Judicial Records
17 JUN 2024 02:49 pm
S. GILLIAM*

| | |
|---|---|
| **MERLE CARTER**<br><br>*Plaintiff,*<br><br>V.<br><br>**L'ORÉAL USA, INC.,** et al.<br><br>*Defendants.* | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY<br><br>MAY TERM, 2024<br><br>NO. 02672<br><br>**JURY TRIAL DEMANDED** |

## AFFIDAVIT OF SERVICE

COMMONWEALTH OF PENNSYLVANIA      :
                                  : SS
COUNTY OF PHILADELPHIA            :

SHAINA ROBBINS, being duly sworn according to law, deposes and says that on May 22, 2024, I mailed a true and correct copy of the Complaint in the above-captioned matter to Defendant, <u>Soft Sheen-Carson, LLC.</u> via Certified Mail, Return Receipt Requested and that same was received on May 29, 2024. A copy of the transmittal letter, return receipt, and tracking information from usps.com is attached hereto as Exhibit A.

_____
SHAINA ROBBINS

SWORN TO AND SUBSCRIBED
before me this 17th      day of
                , 2024.

_____

Commonwealth of Pennsylvania - Notary Seal
ANGELA F. FATTIZZO, Notary Public
Philadelphia County
My Commission Expires November 9, 2025
Commission Number 1048180

Case ID: 240502672

# EXHIBIT "A"

Case ID: 240502672

**KLINE & SPECTER** PC

ATTORNEYS AT LAW

1525 LOCUST STREET

PHILADELPHIA, PENNSYLVANIA 19102

WWW.KLINESPECTER.COM

SHERRELL L. DANDY

———

215-792-5608

FAX: 215-402-2352

SHERRELL.DANDY@KLINESPECTER.COM

May 22, 2024

**VIA CERTIFIED MAIL/RRR:**
**9590 9402 7390 2055 0920 51**

Soft Sheen-Carson, LLC
10 Hudson Yards
New York, NY 10001

       *Re:*    *Merle Carter v. L'Oreal USA, Inc., et al.*

Dear Sir/Madam:

      Enclosed please find the Complaint in the above-refenced matter, in which you were named as a Defendant, which was filed in the Philadelphia Court of Common Pleas on May 22, 2024.

            Very truly yours

            Sherrell L. Dandy

SLD/cm
encls

USPS.com® - USPS Tracking® Results

# USPS Tracking®

FAQs >

**Tracking Number:**

Remove ✕

## 70222410000015049818

Copy        Add to Informed Delivery (https://informeddelivery.usps.com/)

### Latest Update

Your item was delivered to the front desk, reception area, or mail room at 3:07 pm on May 29, 2024 in NEW YORK, NY 10001.

Feedback

**Get More Out of USPS Tracking:**

  **USPS Tracking Plus®**

## Delivered
**Delivered, Front Desk/Reception/Mail Room**

NEW YORK, NY 10001
May 29, 2024, 3:07 pm

**See All Tracking History**

**What Do USPS Tracking Statuses Mean? (https://faq.usps.com/s/article/Where-is-my-package)**

---

## Text & Email Updates                                              ⌄

---

## USPS Tracking Plus®                                               ⌄

---

## Product Information                                               ⌄

**See Less** ⌃

Case ID: 240502672

6/11/24, 9:11 AM                                USPS.com® - USPS Tracking® Results

Track Another Package

Enter tracking or barcode numbers

# Need More Help?

Contact USPS Tracking support for further assistance.

FAQs

Case ID: 240502672

**SENDER:** *COMPLETE THIS SECTION*

- ■ Complete items 1, 2, and 3.
- ■ Print your name and address on the reverse so that we can return the card to you.
- ■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Soft Sheen-Carson, Inc.
10 Hudson Yards
New York, NY 10001

9590 9402 7390 2055 0920 51

2. Article Number *(Transfer from service label)*

7022 2410 0000 1504 9818

PS Form **3811**, July 2020 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X ☐ Agent
☐ Addressee

B. Received by *(Printed Name)*    C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
- ☑ Adult Signature
- ☐ Adult Signature Restricted Delivery
- ☑ Certified Mail®
- ☐ Certified Mail Restricted Delivery
- ☐ Collect on Delivery
- ☐ Collect on Delivery Restricted Delivery
- ☐ Insured Mail
- ☐ Insured Mail Restricted Delivery (over $500)

- ☐ Priority Mail Express®
- ☐ Registered Mail™
- ☐ Registered Mail Restricted Delivery
- ☐ Signature Confirmation™
- ☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

# EXHIBIT A-15

**KLINE & SPECTER, P.C.**
By:    SHANIN SPECTER, ESQUIRE       (Attorney I.D. No.: 40928)
       TOBI L. MILLROOD, ESQUIRE      (Attorney I.D. No.: 77764)
       BRADEN R. LEPISTO, ESQUIRE     (Attorney I.D. No.: 313586)
       SHERRELL L. DANDY, ESQUIRE     (Attorney I.D. No.: 309348)
Shanin.Specter@klinespecter.com
Tobi.Millrood@klinespecter.com
Braden.Lepisto@klinespecter.com
Sherrell.Dandy@klinespecter.com
1525 Locust Street
Philadelphia, Pennsylvania 19102
215-772-1000
215-772-1359 (fax)                              ATTORNEYS FOR PLAINTIFF


*Filed and Attested by the
Office of Judicial Records
17 JUN 2024 02:41 pm
S. GILLIAM*

| | |
|---|---|
| **MERLE CARTER** | COURT OF COMMON PLEAS |
| | PHILADELPHIA COUNTY |
| *Plaintiff,* | |
| V. | MAY TERM, 2024 |
| **L'ORÉAL USA, INC.,** et al. | |
| | NO. 02672 |
| *Defendants.* | |
| | **JURY TRIAL DEMANDED** |

## AFFIDAVIT OF SERVICE

COMMONWEALTH OF PENNSYLVANIA    :
                                                                   : SS
COUNTY OF PHILADELPHIA             :

SHAINA ROBBINS, being duly sworn according to law, deposes and says that on May 22, 2024, I mailed a true and correct copy of the Complaint in the above-captioned matter to Defendant, Strength of Nature, LLC. via Certified Mail, Return Receipt Requested and that same was received on May 29, 2024. A copy of the transmittal letter and return receipt is attached hereto as Exhibit A.

                                                                   _____
                                                                   SHAINA ROBBINS

SWORN TO AND SUBSCRIBED
before me this  17ᵀᴴ  day of
_____June_____, 2024.

_____

Commonwealth of Pennsylvania - Notary Seal
ANGELA F. FATTIZZO, Notary Public
Philadelphia County
My Commission Expires November 9, 2025
Commission Number 1048180

Case ID: 240502672

# EXHIBIT "A"

Case ID: 240502672

# KLINE & SPECTER PC

ATTORNEYS AT LAW
1525 LOCUST STREET
PHILADELPHIA, PENNSYLVANIA 19102
WWW.KLINESPECTER.COM

SHERRELL L. DANDY                                              SHERRELL.DANDY@KLINESPECTER.COM

—————

215-792-5608
FAX: 215-402-2352

May 22, 2024

**VIA CERTIFIED MAIL/RRR:**
**9590 9402 3662 7335 1306 34**

Strength of Nature, LLC
64 Ross Road
Savannah, GA 31405

      *Re:*    *Merle Carter v. L'Oreal USA, Inc., et al.*

Dear Sir/Madam:

      Enclosed please find the Complaint in the above-refenced matter, in which you were named as a Defendant, which was filed in the Philadelphia Court of Common Pleas on May 22, 2024.

      Very truly yours

*Sherrell L. Dandy*

Sherrell L. Dandy

SLD/cm
encls



**USPS TRACKING #**

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

9590 9402 3662 7335 1306 34

**United States**
**Postal Service**

• Sender: Please print your name, address, and ZIP+4® in this box•

Klinc and Specter
1525 Locust St.
Philadelphia, PA 19102

SLD



—373299

Case ID: 240502672

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Strength of Nature, LLC
44 Ross Road
Savannah, GA 31405

9590 9402 3662 7335 1306 34

2. Article Number (Transfer from service label)
7022 2410 0000 1504 9825

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _____  ☐ Agent  ☑ Addressee

B. Received by (Printed Name)   C. Date of Delivery
5-29-24

D. Is delivery address different from item 1?   ☐ Yes
If YES, enter delivery address below:   ☐ No

3. Service Type
☑ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053          Domestic Return Receipt

Case ID: 240502672

# EXHIBIT A-16

**KLINE & SPECTER, P.C.**
By:   SHANIN SPECTER, ESQUIRE      (Attorney I.D. No.: 40928)
      TOBI L. MILLROOD, ESQUIRE    (Attorney I.D. No.: 77764)
      BRADEN R. LEPISTO, ESQUIRE   (Attorney I.D. No.: 313586)
      SHERRELL L. DANDY, ESQUIRE   (Attorney I.D. No.: 309348)
Shanin.Specter@klinespecter.com
Tobi.Millrood@klinespecter.com
Braden.Lepisto@klinespecter.com
Sherrell.Dandy@klinespecter.com
1525 Locust Street
Philadelphia, Pennsylvania 19102
215-772-1000
215-772-1359 (fax)                          ATTORNEYS FOR PLAINTIFF

*Filed and Attested by the Office of Judicial Records 19 JUN 2024 03:51 pm E. IMPERATO*

| | |
|---|---|
| **MERLE CARTER**<br><br>*Plaintiff,*<br><br>V.<br><br>**L'ORÉAL USA, INC.,** et al.<br><br>*Defendants.* | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY<br><br>MAY TERM, 2024<br><br>NO. 02672<br><br><u>**JURY TRIAL DEMANDED**</u> |

<u>**AFFIDAVIT OF SERVICE**</u>

COMMONWEALTH OF PENNSYLVANIA    :
                                : SS
COUNTY OF PHILADELPHIA          :

    CAROLYN METCALF, being duly sworn according to law, deposes and says that on May 22, 2024, I mailed a true and correct copy of the Complaint in the above-captioned matter to Defendant, <u>Godrej Son Holdings, Inc.</u> via Certified Mail, Return Receipt Requested and that same was received on May 29, 2024. A copy of the transmittal letter and return receipt are attached hereto as Exhibit A.

                                         CAROLYN METCALF

SWORN TO AND SUBSCRIBED
before me this  19   day of
 June        , 2024.

Commonwealth of Pennsylvania - Notary Seal
ANGELA F. FATTIZZO, Notary Public
Philadelphia County
My Commission Expires November 9, 2025
Commission Number 1048180

Case ID: 240502672

# EXHIBIT "A"

Case ID: 240502672

**KLINE & SPECTER** PC

ATTORNEYS AT LAW

1525 LOCUST STREET

PHILADELPHIA, PENNSYLVANIA 19102

WWW.KLINESPECTER.COM

SHERRELL L. DANDY                                                            SHERRELL.DANDY@KLINESPECTER.COM

————

215-792-5608

FAX: 215-402-2352

May 22, 2024

**VIA CERTIFIED MAIL/RRR:**
**9590 9402 3662 7335 1306 03**

Godrej Son Holdings, Inc.
64 Ross Road
Savannah, GA 31405

      *Re:*    *Merle Carter v. L'Oreal USA, Inc., et al.*

Dear Sir/Madam:

    Enclosed please find the Complaint in the above-refenced matter, in which you were named as a Defendant, which was filed in the Philadelphia Court of Common Pleas on May 22, 2024.

    Very truly yours

*Sherrell L. Dandy*

    Sherrell L. Dandy

SLD/cm
encls

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse
  so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
  or on the front if space permits.

1. Article Addressed to:

Godrej Son Holdings, Inc.
04 Ross Road
Savannah, GA 31405

9590 9402 3662 7335 1306 03

2. Article Number *(Transfer from service label)*

022 2410 0000 1504 9832

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X

☐ Agent
☑ Addressee

B. Received by *(Printed Name)*       C. Date of Delivery
                                      5-29-24

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:       ☐ No

3. Service Type
☑ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery
   (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted
   Delivery
☐ Return Receipt for
   Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation
   Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053          Domestic Return Receipt

# EXHIBIT A-17

**IN THE COURT OF COMMON PLEAS**
**OF PHILADELPHIA COUNTY, PENNSYLVANIA**

*Filed and Attested by the*
*Office of Judicial Records*
*20 JUN 2024 04:14 pm*
*E. GILLIAM*

| | |
|---|---|
| MERLE CARTER, | May Term, 2024 |
| Plaintiff, | Civil Division |
| vs. | No. 240502672 |
| L'ORÉAL USA, INC., et al., | JURY TRIAL DEMANDED |
| Defendants. | |

**ORDER**

AND NOW, this ____ day of _____, 20___, upon consideration of Defendants L'Oréal USA, Inc., L'Oréal USA Products, Inc., and SoftSheen-Carson LLC's Preliminary Objections to Plaintiff's Complaint, and any responses thereto, it is **HEREBY ORDERED AND DECREED** that the Preliminary Objections are **SUSTAINED**, and

1.    Any and all claims in Plaintiff's Complaint against Defendants L'Oréal USA, Inc., L'Oréal USA Products, Inc., and SoftSheen-Carson LLC are **DISMISSED WITH PREJUDICE**; and

2.    Plaintiff's claims for punitive damages against Defendants L'Oréal USA, Inc., L'Oréal USA Products, Inc., and SoftSheen-Carson LLC are **DISMISSED WITH PREJUDICE**.

BY THE COURT:

_____

J.

1

**GORDON & REES LLP**
Regina M. Nelson, Esquire
Attorney ID 307082
Three Logan Square
1717 Arch Street, Suite 610
Philadelphia, PA  19103
Telephone: (215) 561-2300
Facsimile: (215) 693-6650
Email: rmnelson@grsm.com

**ELLIS GEORGE LLP**
Dennis S. Ellis (*pro hac vice* pending)
Katherine F. Murray (*pro hac vice* pending)
Serli Polatoglu (*pro hac vice* forthcoming)
2121 Avenue of the Stars, 30th Floor
Los Angeles, CA 90067
Telephone: (310) 274-7100
Facsimile: (310) 275-5697
Email: dellis@ellisgeorge.com
Email: kmurray@ellisgeorge.com
Email: spolatoglu@ellisgeorge.com

Counsel for Defendants L'Oréal USA, Inc.,
L'Oréal USA Products, Inc., and SoftSheen-
Carson LLC

**IN THE COURT OF COMMON PLEAS
OF PHILADELPHIA COUNTY, PENNSYLVANIA**

MERLE CARTER,

        Plaintiff,

    vs.

L'ORÉAL USA, INC., et al.,

        Defendants.

May Term, 2024

Civil Division

No. 240502672

JURY TRIAL DEMANDED

**NOTICE TO PLEAD TO PLAINTIFF:
You are hereby notified to file a written
response to the enclosed Preliminary
Objections within twenty (20) days from
service hereof or a judgment may be
entered against you.**

**_/s/ Regina M. Nelson_
Regina M. Nelson, Esq.**

2

Case ID: 240502672
Control No.: 24064165

**DEFENDANTS L'ORÉAL USA, INC., L'ORÉAL USA PRODUCTS, INC., AND SOFTSHEEN-CARSON LLC'S PRELIMINARY OBJECTIONS TO PLAINTIFF'S COMPLAINT**

Defendants, L'Oréal USA, Inc., L'Oréal USA Products, Inc., and SoftSheen-Carson LLC (collectively, "L'Oréal USA"), by and through their undersigned attorneys, hereby file these Preliminary Objections to Plaintiff Merle Carter's ("Plaintiff") Complaint pursuant to Pennsylvania Rule of Civil Procedure 1028, and in support thereof, aver as follows:

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

1.      On May 22, 2024, Plaintiff filed a Complaint against L'Oréal USA.  A true and correct copy of the Complaint is attached hereto as Exhibit A.

2.      Plaintiff alleges that she developed endometrial cancer as a result of using various hair relaxer products during an unspecified period of time.  (*See* Ex. A.)

3.      Plaintiff filed this lawsuit after the publication of a first-ever "groundbreaking study" observing a purported association between the use of hair straightening products and uterine cancer (the "Chang Article").  (Ex. A ¶¶ 108, 109 n.1.)[1]

4.      Plaintiff alleges that she used eight different hair relaxer brands for an unspecified number of decades and alleges that these products are associated with ten different Defendants. (Ex. A ¶¶ 2-6, 8-9, 11-12, 14, 27-29, 72.)

5.      Plaintiff does not identify all of the hair relaxer products she used.  Rather, she alleges that she used products from various brands including, but not limited to, L'Oréal USA's Dark & Lovely, Optimum Care, Bantu, and Precise product lines, all of which have marketed multiple hair relaxer products over time.  (Ex. A ¶ 27.)

---

[1] (Citing Che-Jung Chang, PhD, et al., *Use of Straighteners and Other Hair Products and Incident Uterine Cancer*, 114 J. Nat'l Cancer Inst., no. 12, Dec. 2022, at 1636 (published Oct. 17, 2022), https://academic.oup.com/jnci/article/114/12/1636/6759686.)

Case ID: 240502672
Control No.: 24064165

6.  Plaintiff alleges that she used "different variations" of hair relaxers from these L'Oréal USA brands "including but not limited to" Dark & Lovely Regular No-Lye Hair Relaxer, Optimum Salon Haircare Defy Breakage No-Lye Relaxer, Bantu No Base Relaxer, and Ultra Precise No-Lye Conditioning Relaxer.  (Ex. A ¶¶ 74-77.)  But Plaintiff fails to identify any of the other variations of hair relaxer products she used.

7.  Plaintiff alleges that she used L'Oréal USA relaxer products for an untold number of decades beginning in 1976, during which time she also used at least eight other types of hair relaxers marketed by three other defendants.  (Ex. A ¶¶ 71-73, 78-80.)

8.  Plaintiff does not disclose when or how frequently she used the products beyond claiming that she used a hair relaxer belonging to one of the eight brands approximately every four to eight weeks.  (Ex. A ¶¶ 72, 81.)

9.  Pursuant to Pennsylvania Rules of Civil Procedure 1028(a)(2), (a)(3), and (a)(4), L'Oréal USA now files the within Preliminary Objections to Plaintiff's Complaint.

## II.   <u>PRELIMINARY OBJECTIONS</u>

10.  Preliminary objections may be filed by any party to any pleading on grounds that include:  the pleading fails to conform to law or rule of court or includes scandalous or impertinent matter; the pleading is not sufficiently specific; or the pleading is legally insufficient (demurrer).  Pa.R.Civ.P. 1028(a)(2)-(4).

11.  All preliminary objections are to be raised at one time.  Pa.R.Civ.P. 1028(b).  Two or more preliminary objections may be raised in one responsive pleading.  *Id.*  The grounds for each preliminary objection shall be stated and may be inconsistent with each other.  *Id.*  The role of the trial court in ruling on preliminary objections is to determine whether the facts, as pled, are legally sufficient to allow a claim to proceed.  *Firing v. Kephart*, 353 A.2d 833, 835 (Pa. 1976).

Case ID: 240502672
Control No.: 24064165

**A.**    **Counts III and IV Should Be Dismissed Pursuant to Rule 1028(a)(4) Because Federal Law Preempts These Claims.**

12.    L'Oréal USA incorporates by reference all preceding paragraphs as if fully set forth herein.

13.    Plaintiff's claims for negligence (Count III) and breach of implied warranties (Count IV) are expressly preempted by the Federal Food, Drug, and Cosmetic Act ("FDCA"). The FDCA, 21 U.S.C. § 301, *et seq.*, provides that "no State or political subdivision of a State may establish or continue in effect any requirement for labeling or packaging of a cosmetic that is different from or in addition to, or that is otherwise not identical with, a requirement specifically applicable to a particular cosmetic or class of cosmetics under this chapter." 21 U.S.C. § 379s(a).

14.    While FDCA preemption does not apply to products liability claims, it bars all other claims that seek to impose labeling requirements that are not identical to those imposed by the FDCA and its regulations. *Critcher v. L'Oréal USA, Inc.*, 959 F.3d 31, 35-36 (2d Cir. 2020).

15.    Plaintiff's Complaint would require L'Oréal USA to identify constituent ingredients in the fragrance component of its hair relaxers. (Ex. A ¶ 69 (alleging that "unknown chemicals" are "hidden under the ingredient title 'fragrances'").) However, FDA regulations expressly do not require disclosing the ingredients in the fragrance component. 21 C.F.R. § 701.3(a).

16.    Plaintiff's non-products liability claims are therefore preempted.

WHEREFORE, L'Oréal USA respectfully requests that Counts III and IV of the Complaint be dismissed.

Case ID: 240502672
Control No.: 24064165

**B.    Counts I through IV Should Be Dismissed Pursuant to Rules 1028(a)(2) and (a)(3) Because Plaintiff Fails to Satisfy Pennsylvania's Fact-Pleading Standards and Plaintiff's Allegations Are Insufficiently Specific.**

17.    L'Oréal USA incorporates by reference all preceding paragraphs as if fully set forth herein.

18.    Pursuant to Pennsylvania Rule of Civil Procedure 1028(a)(2), a preliminary objection may be filed where a pleading fails to conform to law or rule of court.  Pa.R.Civ.P. 1028(a)(2).  Rule 1028(a)(3) separately provides that a preliminary objection may be filed if a pleading is insufficiently specific.  *Id.* 1028(a)(3).

19.    The Commonwealth of Pennsylvania is a fact pleading jurisdiction.  Under Pennsylvania's system of fact pleading, the plaintiff bears the burden of defining the issues, and setting forth every act or performance essential to that end in the complaint.  *Santiago v. Pa. Nat'l Mut. Cas. Ins. Co.*, 613 A.2d 1235, 1238 (Pa. Super. Ct. 1992).

20.    Further, pursuant to Pennsylvania Rule of Civil Procedure 1019(a), the material facts on which a cause of action or defense is based shall be stated in a concise and summary form.  Pa.R.Civ.P. 1019(a).

21.    Rule 1019(f) further provides that "[a]verments of time, place and items of special damages shall be specifically stated."  Pa.R.Civ.P. 1019(f).

22.    Pleadings are to place the defendant on notice of the intended grounds for suit, and should not require the defendant to guess at their substance.  *Schweikert v. St. Luke's Hosp. of Bethlehem*, 886 A.2d 265, 270 (Pa. Super. Ct. 2005).

23.    Plaintiff's allegations against L'Oréal USA are so vague and conclusory that they cannot apprise L'Oréal USA of the precise nature of Plaintiff's claims.  As a result, L'Oréal USA cannot understand the specific basis for which recovery is sought and cannot, therefore, understand the grounds for defense.

6

Case ID: 240502672
Control No.: 24064165

24.    Plaintiff's Complaint violates the specificity requirements because it fails to identify all of the L'Oréal USA products Plaintiff alleges she used, the time period in which she used them and how often she used them, and makes no attempt to identify the chemical Plaintiff claims caused her injury and whether any such chemical was included in a product that she used. This lack of specificity, alone, is sufficient grounds to dismiss all of Plaintiff's claims against L'Oréal USA.

WHEREFORE, L'Oréal USA respectfully requests that the Complaint be dismissed.

**C.    Plaintiff's Strict Liability Causes of Action (Counts I and II) Should Be Dismissed Pursuant to Rule 1028(a)(4) Because Plaintiff Fails to Identify All of the Products that Caused Her Injury and How the Injuries Were Caused.**

25.    L'Oréal USA incorporates by reference all preceding paragraphs as if fully set forth herein.

26.    Pursuant to Pennsylvania Rule of Civil Procedure 1028(a)(4), a preliminary objection in the nature of a demurrer may be filed if a pleading is legally insufficient. Pa.R.Civ.P. 1028(a)(4).

27.    "Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint.  When considering preliminary objections, all material facts set forth in the challenged pleadings are admitted as true, as well as all inferences reasonably deducible therefrom."  *Feingold v. Hendrzak*, 15 A.3d 937, 941 (Pa. Super. Ct. 2011) (citation omitted). However, "the court need not accept as true conclusions of law, unwarranted inferences from the facts, argumentative allegations, or expressions of opinion."  *Silo v. Ridge*, 728 A.2d 394, 398 (Pa. Commw. Ct. 1999) (citation omitted) (internal quotation marks omitted).

28.    To state a strict products liability claim, Pennsylvania law requires that an allegedly defective product be "***causally*** connected to a compensable injury."  *Tincher v. Omega Flex, Inc.*, 104 A.3d 328, 383-84 (Pa. 2014) (emphasis added); *Spino v. John S. Tilley Ladder*

Case ID: 240502672
Control No.: 24064165

*Co.*, 696 A.2d 1169, 1172 (Pa. 1997) ("Pennsylvania law requires that a plaintiff prove two elements in a product liability action: that the product was defective, and that the defect was a substantial factor in causing the injury.").

29.    The Complaint does not identify all of the L'Oréal USA products allegedly used by Plaintiff, much less allege a causal connection between any such product and Plaintiff's alleged injury.

WHEREFORE, L'Oréal USA respectfully requests that Counts I and II of the Complaint be dismissed.

> **D.    Plaintiff's Negligence and Warranty Causes of Action (Counts III and IV) Should Be Dismissed Pursuant to Rule 1028(a)(4) Because Plaintiff Fails to Identify Products, Fails to Allege a Duty, and Fails to Allege Causation.**

30.    L'Oréal USA incorporates by reference all preceding paragraphs as if fully set forth herein.

31.    Pursuant to Pennsylvania Rule of Civil Procedure 1028(a)(4), a preliminary objection may be filed if a pleading is legally insufficient.  Pa.R.Civ.P. 1028(a)(4).

32.    "Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint. When considering preliminary objections, all material facts set forth in the challenged pleadings are admitted as true, as well as all inferences reasonably deducible therefrom."  *Feingold*, 15 A.3d at 941 (citation omitted).  However, "the court need not accept as true conclusions of law, unwarranted inferences from the facts, argumentative allegations, or expressions of opinion."  *Silo*, 728 A.2d at 398 (citation omitted) (internal quotation marks omitted).

33.    Like strict liability claims, claims for negligence and breach of warranty under Pennsylvania law similarly require proof that the defendant's negligence or breach of warranty caused the plaintiff's injury.  *See, e.g.*, *Rhodes v. Avis Budget Car Rental, LLC*, No. C.A. 15-

Case ID: 240502672
Control No.: 24064165

1459, 2016 WL 1435443, at *3, *7 (W.D. Pa. Apr. 12, 2016) (dismissing claims for negligence

and breach of warranty where the plaintiff's allegations could not establish that the defendant's

conduct caused the plaintiff's injury).

34.    Additionally, a negligence claim is appropriately dismissed where the plaintiff

does not specifically allege the existence of a statutory or common law duty. *See Phillips v.*

*Cricket Lighters*, 841 A.2d 1000, 1008 (Pa. 2003) ("It is axiomatic that in order to maintain a

negligence action, the plaintiff must show that the defendant had a duty 'to conform to a certain

standard of conduct;' that the defendant breached that duty; that such breach caused the injury in

question; and actual loss or damage." (citation omitted)).

35.    Plaintiff's Complaint identifies only four of the L'Oréal USA products she

allegedly used, but alleges that she used other "variations" of L'Oréal USA products, which she

fails to name. (Ex. A ¶¶ 74-77.)  Plaintiff's failure to identify some of the products she used

renders her unable to properly allege that L'Oréal USA owed her a duty of care as to any of

those products.  Furthermore, Plaintiff's Complaint similarly does not identify the ingredient or

chemical in any product that she alleges caused her to develop endometrial cancer.  Her failure to

allege such facts demonstrating causation is also fatal to her negligence claim.

36.    Plaintiff's failure to allege all of the products she used and how they were

defective is also fatal to her breach of warranty claim.  To prevail on a claim for breach of

implied warranty of merchantability, a plaintiff must show (1) that the seller is a merchant with

respect to goods of that kind and (2) that the goods are merchantable, including that they "are fit

for the ordinary purposes for which such goods are used" and that they "conform to the promises

or affirmations of fact made on the container or label if any." *See* 13 Pa.C.S.A. § 2314.  Without

identifying all of the products she used, Plaintiff necessarily cannot allege that the goods failed to

Case ID: 240502672
Control No.: 24064165

conform to promises made on their containers. And because Plaintiff does not allege what promises were made on the labels of the few products she does name, she has not pled a warranty claim as to any of those products.

37.    Plaintiff's negligence and warranty claims are insufficiently pled and should be dismissed pursuant to Pennsylvania Rule of Civil Procedure 1028(a)(4).

WHEREFORE, L'Oréal USA respectfully requests that Counts III and IV of the Complaint be dismissed.

**E.    Plaintiff's Claim for Punitive Damages Should be Stricken Pursuant to Rule 1028(a)(4).**

38.    L'Oréal USA incorporates by reference all preceding paragraphs as if fully set forth herein.

39.    L'Oréal USA objects to Plaintiff's claims for punitive damages because Plaintiff fails to allege the requisite levels of conduct on behalf of L'Oréal USA. Claims for punitive damages must be supported by allegations of malicious, willful, or reckless conduct. *See Wright v. Ryobi Techs., Inc.*, 175 F. Supp. 3d 439, 455-56 (E.D. Pa. 2016) (applying Pennsylvania law) ("Punitive damages may be awarded because the defendant's conduct was outrageous, or because the defendant's motive was evil, or because of the defendant's reckless indifference to the rights of others . . . . Punitive damages are only warranted for conduct that is malicious, wanton, reckless, willful, or oppressive." (citations omitted)). In *Wright*, for example, the court granted summary judgment for the defendants on the plaintiff's punitive damages claim because his evidence that a safer design of the product at issue was possible was not alone sufficient to show knowledge of "a high degree of risk of physical harm to another" followed by a deliberate act, or failure to act, in conscious disregard of that risk. *Id*. at 457.

10

Case ID: 240502672
Control No.: 24064165

40.     Plaintiff merely alleges that L'Oréal USA failed to exercise reasonable care with respect to the manufacture of the Dark & Lovely, Optimum Care, Bantu, and Precise brands. These allegations do not meet the pleading threshold required to state a claim for punitive damages, and thus each and every one of Plaintiff's punitive damages claims should be dismissed pursuant to Pennsylvania Rule of Civil Procedure 1028(a)(4).

WHEREFORE, L'Oréal USA respectfully requests that the Court sustain these Preliminary Objections and dismiss all of Plaintiff's four causes of action and her claims for punitive damages with prejudice.

Date: June 20, 2024                          By:   _/s/ Regina M. Nelson_

**GORDON & REES LLP**
Regina M. Nelson, Esquire
Attorney ID 307082
Three Logan Square
1717 Arch Street, Suite 610
Philadelphia, PA  19103
Telephone: (215) 561-2300
Facsimile: (215) 693-6650
Email: rmnelson@grsm.com

**ELLIS GEORGE LLP**
Dennis S. Ellis (*pro hac vice* pending)
Katherine F. Murray (*pro hac vice* pending)
Serli Polatoglu (*pro hac vice* forthcoming)
2121 Avenue of the Stars, 30th Floor
Los Angeles, CA 90067
Telephone: (310) 274-7100
Facsimile: (310) 275-5697
Email: dellis@ellisgeorge.com
Email: kmurray@ellisgeorge.com
Email: spolatoglu@ellisgeorge.com

Attorneys for Defendants, L'Oréal USA, Inc.,
L'Oréal USA Products, Inc., and SoftSheen-
Carson LLC

Case ID: 240502672
Control No.: 24064165

**GORDON & REES LLP**
Regina M. Nelson, Esquire
Attorney ID 307082
Three Logan Square
1717 Arch Street, Suite 610
Philadelphia, PA 19103
Telephone: (215) 561-2300
Facsimile: (215) 693-6650
Email: rmnelson@grsm.com

**ELLIS GEORGE LLP**
Dennis S. Ellis (*pro hac vice* pending)
Katherine F. Murray (*pro hac vice* pending)
Serli Polatoglu (*pro hac vice* forthcoming)
2121 Avenue of the Stars, 30th Floor
Los Angeles, CA 90067
Telephone: (310) 274-7100
Facsimile: (310) 275-5697
Email: dellis@ellisgeorge.com          Counsel for Defendants L'Oréal USA, Inc.,
Email: kmurray@ellisgeorge.com         L'Oréal USA Products, Inc., and
Email: spolatoglu@ellisgeorge.com      SoftSheen-Carson LLC

---

<div align="center">

**IN THE COURT OF COMMON PLEAS
OF PHILADELPHIA COUNTY, PENNSYLVANIA**

</div>

| | |
|---|---|
| MERLE CARTER, | May Term, 2024 |
| Plaintiff, | Civil Division |
| vs. | No. 240502672 |
| L'ORÉAL USA, INC., et al., | JURY TRIAL DEMANDED |
| Defendants. | |

<div align="center">

**MEMORANDUM OF LAW IN SUPPORT OF L'ORÉAL USA, INC., L'ORÉAL USA
PRODUCTS, INC, AND SOFTSHEEN-CARSON LLC'S PRELIMINARY OBJECTIONS
TO PLAINTIFF'S COMPLAINT**

</div>

Defendants, L'Oréal USA, Inc., L'Oréal USA Products, Inc., and SoftSheen-Carson LLC

(collectively, "L'Oréal USA"), by and through their undersigned attorneys, hereby file the within

Case ID: 240502672
Control No.: 24064165

Memorandum of Law in Support of their Preliminary Objections to Plaintiff Merle Carter's ("Plaintiff") Complaint.

## I.    **MATTER BEFORE THE COURT**

Before the Court are Preliminary Objections on behalf of L'Oréal USA to Plaintiff's Complaint and Plaintiff's claims of punitive damages pursuant to Pennsylvania Rules of Civil Procedure 1028(a)(2), (3) and (4). The Complaint fails to allege any facts on which Plaintiff may be entitled to relief—Plaintiff does not identify each of the products that she claims caused her injuries, nor does she, more critically, identify what chemicals were contained in any product she allegedly used that may have caused her injuries. For the reasons set forth below, L'Oréal USA respectfully requests that this Court sustain its Preliminary Objections and dismiss Plaintiff's Complaint.

## I.    **STATEMENT OF QUESTIONS INVOLVED**

1.    Should Plaintiff's non-products liability claims (Counts III and IV) be dismissed because they are preempted by federal law?

*Proposed answer:*  Yes.

2.    Should Plaintiff's Complaint be dismissed for insufficient specificity and failure to conform to Pennsylvania Rule of Civil Procedure 1019(a) because Plaintiff fails to identify all of the products she used, her frequency of use, or the chemicals contained in the products?

*Proposed answer:*  Yes.

3.    Should Plaintiff's strict liability claims (Counts I and II) be dismissed because they are legally insufficient to state a claim against L'Oréal USA, given that Plaintiff fails to identify all of the products she used and fails to allege causation?

*Proposed answer:*  Yes.

13

Case ID: 240502672
Control No.: 24064165

4.      Should Plaintiff's negligence claim (Count III) be dismissed because it is legally insufficient to state a claim against L'Oréal USA, given that Plaintiff has not alleged sufficient facts to establish a duty owed to her by L'Oréal USA nor facts showing that her injury was caused by a product manufactured by L'Oréal USA?

*Proposed answer:*  Yes.

5.      Should Plaintiff's breach of warranty claim (Count IV) be dismissed because it is legally insufficient to state a claim against L'Oréal USA, given Plaintiff has not alleged facts showing that her injury was caused by a product manufactured by L'Oréal USA?

*Proposed answer:*  Yes.

6.      Should Plaintiff's claim for punitive damages be dismissed because it is legally insufficient to state a claim against L'Oréal USA, given that Plaintiff has not sufficiently alleged facts showing that L'Oréal USA acted with reckless indifference to the safety of others?

*Proposed answer:*  Yes.

## II.    RELEVANT FACTS

### A.    Allegations Of The Complaint

#### 1.    General Allegations Unrelated to Plaintiff

L'Oréal USA entered the hair relaxer market when it acquired Soft Sheen Products in 1998 and Carson, Inc. in 2000 and then merged them into the SoftSheen-Carson brand.  The Complaint focuses very little on L'Oréal USA.  Instead, it provides lengthy discussions about the invention and use of hair relaxers and the targeting of the African American community, starting around the 1970s, by persons and entities other than L'Oréal USA.  (*See* Ex. A ¶¶ 31-50.)

The Complaint then turns its focus to endocrine-disrupting chemicals ("EDCs"), specifically phthalates, identifying one phthalate in particular, Di-2-ethylhexylphthalate ("DEHP").  (Ex. A ¶¶ 51-70.)  Plaintiff alleges that chemical hair relaxers contain EDCs, which

Case ID: 240502672
Control No.: 24064165

"can cause the creation of excess hormones or deficient hormones and can cause adverse effects, including causing abnormalities in sex organs, early puberty, endometriosis, and hormonally responsive cancers, among other hormonally related diseases."  (*Id*. ¶ 54.)

The Complaint associates uterine and endometrial cancers with exposure to EDCs (Ex. A ¶¶ 89-97), but only the October 2022 Chang Article made a tacit association between hair relaxers and Plaintiff's injury.  The Chang Article authors observed "novel" findings of a relationship between hair relaxers and uterine cancer.  (*Chang*, *supra* note 1, at 1638.)  The study noted that "[b]rands or ingredients of hair products were not collected" (*id*. at 1638, 1641), and that "[m]ore research is warranted to replicate [the] findings in other settings and to identify specific chemicals driving this observed association" (*id*. at 1636).

### 2.    Allegations Regarding Plaintiff

Plaintiff alleges that she used hair relaxers approximately every four to eight weeks beginning in 1976.  (Ex. A ¶¶ 71, 72, 81.)  The Complaint identifies eight purported hair relaxer brands that Plaintiff used over an unspecified period.  (*Id.* ¶ 72.)  Four of the brands listed are L'Oréal USA brands:  "Dark & Lovely," "Optimum Care," "Bantu," and "Precise."  (*Id.* ¶¶ 27, 72.)  While Plaintiff identifies one product she used from each of these brands, she also alleges that she used "different variations" of these hair relaxer products, but does not identify them in her Complaint.  (Ex. A ¶¶ 74-77.)  Plaintiff alleges that her use of these various products, including at least eight other products manufactured by the other named Defendants, resulted in her being diagnosed with endometrial cancer in November of 2015.  (*Id.* ¶¶ 30, 72, 73, 78-80, 113.)

### B.    Notable Omissions From The Complaint

The Complaint reveals more by what it omits than by what it contains.  While Plaintiff's Complaint identifies four brands sold by L'Oréal USA (Dark & Lovely, Optimum Care, Bantu,

Case ID: 240502672
Control No.: 24064165

and Precise) and alleges that she used "different variations" of hair relaxer sold under each

brand, she only identifies one product from each of those brands that she actually used.  (Ex. A

¶ 27, 74-77.)  Furthermore, Plaintiff does not identify a single product she used that contains

DEHP, or any other phthalate, nor does she provide the frequency of her product use.  Plaintiff

also has not identified any material misrepresentation or omission made by L'Oréal USA.

## III.    LEGAL STANDARD

### A.    Preliminary Objections in the Nature of a Demurrer Based on Legal Insufficiency Pursuant to Pennsylvania Rule of Civil Procedure 1028(a)(4).

Pursuant to Pennsylvania Rule of Civil Procedure 1028(a), preliminary objections may be

filed "by any party to any pleading."  Pa.R.Civ.P. 1028(a).  Preliminary objections may be made

on the grounds of legal insufficiency of a pleading styled as a demurrer.  *Id*. 1028(a)(4).  In

evaluating a demurrer, the question for the court is "whether, on the facts averred, the law says

with certainty that no recovery is possible."  *Werner v. Plater-Zyberk*, 799 A.2d 776, 783 (Pa.

Super. Ct. 2002).  If, on a review of the facts, the complaint is legally insufficient, a preliminary

objection in the nature of a demurrer will be sustained.  *See Cardenas v. Schober*, 783 A.2d 317,

321 (Pa. Super. Ct. 2001).

Additionally, "[i]n reviewing preliminary objections, only facts that are well pleaded,

material, and relevant will be considered as true, together with such reasonable inferences that

may be drawn from those facts . . . ."  *Santiago v. Pa. Nat. Mut. Cas. Ins. Co.*, 613 A.2d 1235,

1238 (Pa. Super. Ct. 1992).  The plaintiff's "conclusions or averments of law are not considered

to be admitted as true by a demurrer."  *MacGregor v. Mediq Inc.*, 576 A.2d 1123, 1125 (Pa.

Super. Ct. 1990).  Accordingly, a court "may not supply a fact missing in the complaint."  *Hart

v. O'Malley*, 647 A.2d 542, 552-53 (Pa. Super. Ct. 1994), *aff'd*, 676 A.2d 222 (Pa. 1996).

16

Case ID: 240502672
Control No.: 24064165

**B.** **Preliminary Objections Based Upon Plaintiff's Failure to Properly Plead Pursuant to Pennsylvania Rules of Civil Procedure Rule 1028(a)(2) and (a)(3).**

Pennsylvania Rule of Civil Procedure 1028(a)(2) provides that preliminary objections may be made on the ground that a pleading fails to conform to law or rule of court. Pa.R.Civ.P. 1028(a)(2). Pennsylvania Rule of Civil Procedure 1019(a) further mandates that "[t]he material facts on which a cause of action or defense is based shall be stated in a concise and summary form." *Id.* 1019(a). "'The complaint must not only apprise the defendant of the claim being asserted, but **it must also summarize the essential facts to support the claim.**'" *Donaldson v. Davidson Bros.*, 144 A.3d 93, 103 (Pa. Super. Ct. 2016) (citation omitted).

Pennsylvania Rule of Civil Procedure 1028(a)(3) similarly provides that preliminary objections may be made on the ground that a pleading is insufficiently specific. Pa.R.Civ.P. 1028(a)(3). This rule asks "'whether the complaint is sufficiently clear to enable the defendant to prepare his defense,' or 'whether the plaintiff's complaint informs the defendant with accuracy and completeness of the specific basis on which recovery is sought so that he may know without question upon what grounds to make his defense.'" *Rambo v. Greene*, 906 A.2d 1232, 1236 (Pa. Super. Ct. 2006) (citation omitted). "In this Commonwealth, the pleadings must define the issues and thus every act or performance to that end must be set forth in the complaint." *Koch v. First Union Corp.*, Nos. CONTROL 100727, CONTROL 100746, 2002 WL 372939, at *2 (Pa. Com. Pl. Jan. 10, 2002) (citation omitted) (internal quotation marks omitted).

Preliminary objections "are properly granted when the pleadings are legally insufficient for one or more of several reasons enumerated in Rule of Civil Procedure 1028 . . . [including] (2) failure of a pleading to conform to law or rule of court . . .; [and] (3) insufficient specificity in a pleading." *Baker v. Cambridge Chase, Inc.*, 725 A.2d 757, 764 (Pa. Super. Ct. 1999) (second omission in original). Finally, "a court is not required to allow amendment of a pleading if a

Case ID: 240502672
Control No.: 24064165

party will be unable to state a claim on which relief could be granted." *Werner v. Zazyczny*, 681 A.2d 1331, 1338 (Pa. 1996).

IV.  **ARGUMENT**

A.  **Plaintiff's Non-Products Liability Claims are Preempted by Federal Law.**

Plaintiff's negligence and warranty causes of action are expressly preempted by the FDCA.  Under the Supremacy Clause of the United States Constitution, "federal law is 'the supreme Law of the land' and any conflicts between federal and state laws must be resolved in favor of federal law." *Werner v. Plater-Zyberk*, 799 A.2d 776, 787 (Pa. 2002) (citation omitted). One recognized method of preemption, express preemption, exists where "there is an explicit statutory command that state law be displaced." *Id.* "It is also well established that federal law may impliedly preempt state law to the extent that the state law conflicts with a federal regulatory scheme." *Id.* at 788.

With regard to the labeling of cosmetics, the FDCA includes an express preemption provision that prohibits any state from "establish[ing] or continu[ing] in effect any requirement for labeling or packaging of a cosmetic that is ***different from*** or ***in addition to***, or that is ***otherwise not identical with***, a requirement specifically applicable to a particular cosmetic or class of cosmetics under this chapter."  21 U.S.C. § 379s(a) (emphases added).  The only exception to this broad preemption is for products liability claims.  *Id.* § 379s(d).

Thus, a plaintiff cannot seek to "impose labeling requirements that are additional to, or different from, those that [the FDCA] has established." *Critcher v. L'Oréal USA, Inc.*, 959 F.3d 31, 38 (2d Cir. 2020).  Congress conferred authority to the Food and Drug Administration ("FDA") to promulgate rules and regulations under the FDCA, 21 U.S.C. § 371(a), and the FPLA, 15 U.S.C. § 1454(a).  Federal regulations do not require cosmetic manufacturers to designate phthalates apart from what it requires to be designated as a "fragrance."  21 C.F.R.

Case ID: 240502672
Control No.: 24064165

§ 701.3(a) ("The label on each package of a cosmetic shall bear a declaration of the name of each ingredient in descending order of predominance, ***except that fragrance or flavor may be listed as fragrance or flavor***." (emphasis added)).

The "sweeping preemptive force" of the FDCA led the Second Circuit to affirm the dismissal of analogous mislabeling claims in *Critcher*, 959 F.3d at 38. There, the plaintiffs asserted consumer protection, unjust enrichment, and breach of warranty claims against L'Oréal USA, alleging various cosmetic products' labels were misleading because they did not disclose that consumers "will not be able to access or use a large percentage . . . of the product." *Id.* at 36. While the FDCA requires that labels contain an "accurate statement of the quantity of the [products'] contents in terms of weight, measure, or numerical count," the FDA promulgated more "specific labeling requirements" consistent with the statute, and no statute or regulation required plaintiffs' desired disclosure. *Id.* at 35. Thus, because the FDCA preempts "*any* state law that provides for labeling requirements that are not *exactly the same* as those set forth in the FDCA and its regulations," the claims were found to be preempted. *Id.* at 35-36.

Plaintiff accuses L'Oréal USA of falsely marketing, mislabeling, and/or failing to disclose the existence of phthalates in its products. Plaintiff then speculates that she could not identify from the ingredient label whether a product contains phthalates because phthalates may be part of the product's fragrance. (Ex. A ¶ 69.) As L'Oréal USA has no obligation to identify fragrance ingredients, and certainly has no obligation to identify ingredients that are not in their products, Plaintiff's claims are preempted.[2]

---

[2] Plaintiff's claims are also impliedly preempted both because the FDCA occupies the field and because Plaintiff's demands conflict with the FDCA. *See Plater-Zyberk*, 799 A.2d at 787.

Case ID: 240502672
Control No.: 24064165

**B.**    **Plaintiff's Complaint Should Be Dismissed Because Plaintiff Fails to Comply with Pennsylvania's Fact Pleading Standard.**

Plaintiff's claims should be dismissed because Plaintiff fails to identify all of the products she used. Pennsylvania has a specific pleading standard, fact pleading, which places on the plaintiff the burden of defining the issues and setting forth every act or performance essential to that end in the complaint. *Santiago v. Pa. Nat'l Mut. Cas. Ins. Co.*, 613 A.2d 1235, 1238 (Pa. Super. Ct. 1992). Pennsylvania Rule of Civil Procedure 1019(a) further mandates that "[t]he material facts on which a cause of action or defense is based shall be stated in a concise and summary form." Pa.R.Civ.P. 1019(a). Additionally, subsection (f) requires that "[a]verments of time, place and items of special damage shall be specifically stated." *Id.* 1019(f). Pennsylvania Rule of Civil Procedure 1022 adds that each paragraph in a pleading "shall contain as far as practicable only one material allegation." *Id.* 1022. Each of Plaintiff's causes of action fails because she does not meet this fact pleading standard. She fails to identify all of the products she used, she does not allege how or when she used specific products, nor does she allege what chemicals caused her injury. These deficiencies are fatal to her claims.

Plaintiff did not properly plead her strict liability claims for design defect and failure to warn, because she failed to allege the necessary facts as to each particular product. The court in *Commonwealth v. Monsanto Co.*, 269 A.3d 623, 661 (Pa. Commw. Ct. 2021) confirmed that "[a]s required to plead a valid design defect claim, Plaintiffs allege that Defendants' PCB products were defective, the products were defective when they left Monsanto's hands, and the defects harmed the public and/or Plaintiffs' natural resources." As to failure to warn claims, "[t]he first element of a strict-liability claim is that the product be defective [including where it has an inadequate warning]. . . . 'The second element of a strict-liability failure-to-warn claim is that the defective warning caused the plaintiff's injury.'" *Id.* at 663-64 (quoting *Whyte v. Stanley*

Case ID: 240502672
Control No.: 24064165

*Black & Decker, Inc.*, 514 F. Supp. 3d 684, 700 (W.D. Pa. 2021)).  Here, in her design defect and her failure to warn claims, Plaintiff identifies only some of the products she allegedly used.  The product she used is material to her strict products liability claims, thus by failing to name all of the products she used, Plaintiff has not met Pennsylvania's fact-pleading requirements under Rule 1019(a).  As to the products Plaintiff does identify, she does not allege the defect in any product or how it caused her injury.  Failure to identify these necessary facts is similarly fatal to both her design defect and failure to warn claims.  These claims should therefore be dismissed.

Plaintiff's claim for negligence fails for similar reasons.  As to the unnamed products in Plaintiff's Complaint, Plaintiff has not alleged a duty owed to her by L'Oréal USA to conform to a particular standard of conduct.  *Barton v. Lowe's Home Ctrs., Inc.*, 124 A.3d 349, 359 (Pa. Super. Ct. 2015).  In a products liability action, a plaintiff can allege a duty by showing a relationship between the purchaser of a product and the manufacturer of that product.  *Id.*  Here, Plaintiff cannot allege such a relationship because she does not include facts specifying what particular products she purchased from L'Oréal USA.  As her Complaint fails to allege what particular product she allegedly used that was manufactured by L'Oréal USA, she cannot establish the first element of her negligence claim.  Similarly, as to the products Plaintiff does name, she has not alleged how the products caused her injury and thus cannot establish the third element of her negligence claim:  causation.  *See Phillips v. Cricket Lighters*, 841 A.2d 1000, 1008 (Pa. 2003).  Accordingly, her negligence claim should be dismissed.

Finally, Plaintiff's claim for breach of warranty also fails because she has not included allegations in her Complaint as to all of the products she allegedly used.  "Under Pennsylvania law, contract claims for breach of the implied warranty of merchantability and fitness for a particular purpose may also fall within the sphere of products liability actions."  *Barton*, 124

Case ID: 240502672
Control No.: 24064165

A.3d at 357.  Such warranties are "implied by law to protect buyers from loss where goods purchased are below commercial standards."  *Id*.  Here, Plaintiff fails to allege facts identifying each of the particular goods that she used.  The products she allegedly used, and which allegedly harmed her, are material facts underlying her claims.  Without them, her breach of warranty claim cannot proceed.  As to the four products she has identified, Plaintiff has failed to specify what aspect of these products' warnings or labels were insufficient.  Thus, this claim should also be dismissed for failure to abide by Pennsylvania's fact-pleading standard.

Plaintiff's failure to meet her burden of pleading the material facts underlying her claims with the requisite specificity leaves L'Oréal USA to guess at which of its hair relaxer products she may have used over an indeterminate number of decades, how the product was defective, and what component of the product harmed her.  This leaves L'Oréal USA unable to properly prepare a defense to the action.  This situation is precisely what Rules 1028 and 1019 exist to protect against, and Plaintiff's Complaint should be dismissed in its entirety accordingly.

### C. Plaintiff's Strict Liability Claims Fail as a Matter of Law Because She Fails to Identify All of the Products She Used or Allege Causation.

Plaintiff brings two claims against L'Oréal USA in strict liability:  one alleging design defect and the other alleging a failure to warn.  As detailed below, both claims fail as a matter of law because they lack an essential component of a strict products liability claim:  identification of every product that caused the complained-of injury.  *See Cummins v. Firestone Tire & Rubber Co.*, 495 A.2d 963, 968-69 (Pa. Super. Ct. 1985) (affirming the dismissal of the plaintiff's strict liability cause of action because he could not "adequately aver the requisite connection between appellees and the defective product," which constituted a "fatal deficiency" to his claim); *see also Tincher v. Omega Flex, Inc.*, 104 A.3d 328, 401 (Pa. 2014) ("[I]n Pennsylvania, the cause of action in strict products liability requires proof, in the alternative, either of the ordinary

Case ID: 240502672
Control No.: 24064165

consumer's expectations or of the risk-utility of a product.").  As Plaintiff does not allege all of the products she used in either of her strict liability causes of action, nor does she allege how any product caused her harm, Plaintiff's design defect and failure to warn claims must be dismissed.

<p style="text-align:center;"><strong>1.    <u>Plaintiff's Strict Liability Design Defect Claim Fails Because She Does Not Identify Every Product She Used or How the Products were Defective.</u></strong></p>

Plaintiff's design defect claim (Count I) fails because the Complaint does not identify a defect in any product—let alone an actual product Plaintiff purportedly used.  To prevail on a design defect claim, "the plaintiff must prove that the product was defective, the defect existed when it left the defendant's hands, and the defect caused the harm." *Barton v. Lowe's Home Ctrs., Inc.*, 124 A.3d 349, 354-55 (Pa. 2015) (citing *Riley v. Warren Mfg., Inc.*, 688 A.2d 221, 224 (Pa. Super. Ct. 1997)).  In Pennsylvania, a defective condition may be proven "by showing either that (1) the danger is unknowable and unacceptable to the average or ordinary consumer, or that (2) a reasonable person would conclude that the probability and seriousness of harm caused by the product outweigh the burden or costs of taking precautions." *Tincher v. Omega Flex, Inc.*, 104 A.3d 328, 335 (Pa. 2014).  No matter which method a plaintiff elects, the baseline requirement remains the same:  the plaintiff must allege both that a particular product is defective and what makes it purportedly defective.  Here, Plaintiff does neither.

Plaintiff's design defect claim first fails because she does not identify all of the L'Oréal USA products she allegedly used.  Plaintiff instead alleges that she used "different variations" of products "including but not limited to" Dark & Lovely Regular No-Lye Hair Relaxer, Optimum Salon Haircare Defy Breakage No-Lye Relaxer, Bantu No Base Relaxer, and Ultra Precise No-Lye Conditioning Relaxer.  (*See* Ex. A ¶¶ 74-77).  By failing to identify the other products she allegedly used, Plaintiff has not satisfied her pleading burden.

<p style="text-align:center;">23</p>

Case ID: 240502672
Control No.: 24064165

In *Barton*, the court found that the plaintiff had included sufficient detail in his complaint alleging a design defect in a lawnmower so as to avoid dismissal.  The allegations in his complaint included that:

> (1) [Plaintiff] purchased a Husqvarna lawnmower (with a Kohler engine) from Lowe's; (2) just three days later, he used the lawnmower for the first time to cut grass on his property and then stored the lawnmower in his barn; (3) later that day, the engine or mower caught fire and/or exploded inside the barn, because the engine ran too hot and melted the fuel lines, causing fuel to leak onto the hot engine or muffler; and (4) the barn burned down.

124 A.3d at 355.  The court determined that the allegations were sufficient to survive preliminary objections because "when a brand new lawnmower catches fire or explodes after its first use, it could be the result of a defect in its design or manufacture." *Id*. at 356.  Although more specifics would likely be unearthed during the discovery process, the plaintiff's complaint sufficiently "furnish[ed] a concise overview of the defects that he intend[ed] to prove." *Id*.

In contrast to the detailed allegations in the complaint in *Barton*, Plaintiff's Complaint includes hardly any specific factual allegations.  Instead, Plaintiff's 37-page Complaint recounts the history of chemical hair relaxer products (¶¶ 31-50), details what endocrine disrupting chemicals are and how they purportedly work (¶¶ 51-70), and makes allegations concerning the link between chemical hair relaxers and endometrial cancers (¶¶ 89-112).  Plaintiff does not identify all of the products she actually used, nor does she specify when or how often she used hair relaxer products, or what ingredient in the products rendered them defective.  Plaintiff merely alleges that over the course of an unspecified number of decades, she used hair relaxers from any one of eight different brands every four to eight weeks.  (Ex. A ¶¶ 72, 81.)  Accordingly, Plaintiff's strict liability design defect claim fails as a matter of law and should be dismissed.

Case ID: 240502672
Control No.: 24064165

**2.    Plaintiff's Strict Liability Failure to Warn Claim Fails Because
Plaintiff Does Not Identify All of the Products She Used, How the
Products Were Defective, or How the Purported Defect Injured Her.**

Plaintiff's failure to warn claim (Count II) is similarly lacking because the Complaint

does not identify all of the products she allegedly used, the nature of any defect, nor how the

purported defect injured her.

In order to prevail on a failure to warn claim, "a plaintiff must prove that the lack of

warning rendered the product unreasonably dangerous and that it was the proximate cause of the

injury." *Barton*, 124 A.3d at 355 (quoting *Weiner v. Am. Honda Motor Co.*, 718 A.2d 305, 309

(Pa. Super. Ct. 1998)).  In *Chandler v. L'Oréal USA, Inc.*, 340 F. Supp. 3d 551, 556 (W.D. Pa.

2018), *aff'd*, 774 F. App'x 752 (3d Cir. 2019), the plaintiff purchased a L'Oréal USA product:

the Regular Optimum Salon Haircare Defy Breakage Salon No-Lye Relaxer (the "Defy Breakage

relaxer").  Although it was her first time using this particular product, the plaintiff "did not read

the warnings on the exterior of the Defy Breakage relaxer box and while she read the

warnings/instructions which were provided inside the box, she concedes that she ignored same."

*Id.* at 562.  The plaintiff alleged that she experienced hair loss after using the Defy Breakage

relaxer and she brought claims including failure to warn under both negligence and strict liability

theories.  *Id.* at 559, 561.  The court recited several of the safety warnings that were "clearly

state[d] under bold headings" on the exterior of the packaging, including that the product must be

tested on a strand of hair before using because failure to do so "can damage hair or result in

permanent hair loss."  *Id.* at 563.  Similar warnings appeared on the interior instruction sheet, yet

the plaintiff did not heed them.  The court determined "that the product's packaging and

instruction sheet clearly warn consumers that failure to follow the written instructions may result

in injury, including permanent hair loss, the exact injury about which Plaintiff complains" and

granted summary judgment for L'Oréal USA on the failure to warn claim.  *Id.* at 563-64.

Case ID: 240502672
Control No.: 24064165

Here, such an evaluation is not possible because Plaintiff has not identified all of the specific products she used nor when she used them. Instead, Plaintiff avers that she used "different variations" of products sold under four L'Oréal USA brands (Dark & Lovely, Optimum Care, Bantu, and Precise) over a period of "decades." (Ex. A ¶ 72, 74-77.) Although Plaintiff identifies one product from each brand, she alleges that her use of L'Oréal USA products is not limited to these products, and fails to specify what additional products she used. (*Id*. ¶¶ 74-77.) Each brand markets various products (*e.g.*, Dark and Lovely Triple Nourished Silkening Relaxer). This ambiguity thus makes it impossible for her to allege how L'Oréal USA's warnings rendered each product she used unreasonably dangerous. As a result, Plaintiff also cannot allege that her injury was "proximately" caused by L'Oréal USA.

Furthermore, Plaintiff fails to allege any direct link between an ingredient contained in any L'Oréal USA product and risk of developing endometrial cancer. Plaintiff's conclusory and speculative allegations cannot satisfy her pleading burden. For these reasons, the claim must be dismissed.

**D.** **Plaintiff's Negligence Claim Fails Because She Does Not Allege a Duty Owed to Her By L'Oréal USA Nor Does She Allege How the Products Caused Her Injury.**

Plaintiff's negligence claim (Count III) should also be dismissed because Plaintiff fails to allege a duty owed to her by L'Oréal USA. Pennsylvania law requires that, in order to prevail on a claim sounding in negligence, a plaintiff must show that the defendant had a duty to conform to a certain standard of conduct, that the defendant breached that duty, that such breach caused the injury in question and actual loss or damage was sustained by the plaintiff. *Phillips v. Cricket Lighters*, 841 A.2d 1000, 1008 (Pa. 2003). Plaintiff's negligence claim should be dismissed because the Complaint does not allege facts supporting a claim that L'Oréal USA owed her a

26

Case ID: 240502672
Control No.: 24064165

common law or statutory duty as to the unnamed products she claims to have used, nor does it allege any facts explaining what ingredient in the products she does identify caused her harm.

In order to determine whether a duty exists, courts weigh the following factors: "(1) the relationship between the parties; (2) the social utility of the actor's conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the actor; and (5) the overall public interest in the proposed solution." *Althaus ex rel. Althaus v. Cohen*, 756 A.2d 1166, 1169 (Pa. 2000) (citations omitted). Although Plaintiff alleges she used four hair relaxer products manufactured by L'Oréal USA, she also alleges that she used other "variations" of these products (Ex. A ¶¶ 74-77) which she fails to identify and thus cannot properly allege are L'Oréal USA products. Even if she had identified all of the products she allegedly used, a relationship between Plaintiff and L'Oréal USA as a manufacturer alone is not sufficient to impose a duty on L'Oréal USA. Similarly, though the social utility of hair relaxers may weigh in favor of a duty, this factor is likewise not dispositive.

As to foreseeability, Plaintiff's Complaint relies heavily on the Chang Article, which was the first to associate hair relaxer use with uterine cancer and was published in October 2022. (*Chang*, *supra* note 1, at 1638; Ex. A ¶¶ 108-112.) Despite the recent date of publication, Plaintiff's Complaint contends that L'Oréal USA did not perform sufficient testing "after learning that their formulations could be carcinogenic." (Ex. A ¶ 160(b)). Plaintiff's allegations that products allegedly manufactured by L'Oréal USA (or any one of four other brands) over the course of decades might possibly be carcinogenic based on the limited and qualified findings of one recent study is a far cry from foreseeable and unreasonable harm. *Compare with Barton*, 124 A.3d at 359 (finding that the design or manufacture of a lawnmower engine foreseeably created an unreasonable risk of harm to others when it exploded after its first use while standing

27

in a barn).  Factor three thus weighs against a finding of duty as do factors four and five; although the public has an interest in product safety, the consequences of finding a duty on such threadbare allegations as exist here will discourage companies from manufacturing innovative products.  The public interest in engaging companies in litigation over minimal, ambiguous, and vague allegations made without any factual substance is weak, thereby weighing against a finding of duty here.  In sum, Plaintiff's allegations are not sufficient to establish a duty owed to her by L'Oréal USA and thus her negligence claim must fail as a matter of law.

Plaintiff's failure to identify many of the products she purportedly used is also fatal to her negligence claim because she cannot allege causation.  For example, in *Cummins v. Firestone Tire & Rubber Co.*, 495 A.2d 963, 966 (Pa. Super. Ct. 1985), the plaintiff was injured when a car tire and rim exploded at a car service garage he was visiting.  The damaged car parts were irretrievable and, thus, the plaintiff brought his negligence and strict liability claims against various manufacturers of truck wheel rims, the owner of the fleet of trucks, manufacturers of truck trailers and tractors, suppliers of truck tires and rims, and the owner of the real estate where the accident occurred.  *Id*.  Several defendants filed preliminary objections, arguing that the plaintiff could not bring negligence claims without specifically identifying a defendant as the one responsible for the rim at issue.  *Id*.  The preliminary objections were sustained and the trial court dismissed the complaint as to those defendants.  *Id*. at 966-67.  On appeal, the Superior Court agreed and held that identification of the manufacturer of the "particular offending product" is required to bring a negligence claim, and because the plaintiff was unable to identify any one manufacturer of the offending product, "there can be no allegations of duty, breach of duty or legal causation, and hence there can be no liability." *Id*. at 967-68.

Case ID: 240502672
Control No.: 24064165

Here, Plaintiff's Complaint is similarly lacking in facts alleging a particular offending product and an associated manufacturer for some of the products she claims to have used. Plaintiff alleges that she used "different variations" of hair relaxer from each brand not limited to the four she names in her Complaint. (Ex. A ¶¶ 74-77.) As she has not identified the remaining products, she is unable to identify the defect associated with the product or the causative link between the defective product and her injury. *See Klein v. Council of Chem. Assn's*, 587 F. Supp. 213, 223 (E.D. Pa. 1984) ("Because plaintiffs have failed to identify a specific product, plaintiffs cannot allege a causal connection between conduct of the defendants and [the plaintiff's] injuries. Plaintiffs have failed to allege a cause of action for negligence against the product defendants."). Moreover, as to the four products Plaintiff does identify in her Complaint, Plaintiff does not allege what ingredient or chemical contained in those products caused her injuries. Thus, Plaintiff's negligence claim fails to state a claim as a matter of law and should be dismissed.

     **E.**    <ins>**Plaintiff's Breach of Implied Warranties Claim Should Be Dismissed Because She Fails to State What Product She Used and How It Was Defective.**</ins>

Plaintiff's claim for a breach of the implied warranty of merchantability (Count IV) also fails as a matter of law.[3] In Pennsylvania, to prevail on a claim for breach of implied warranty of merchantability, a plaintiff must show (1) that the seller is a merchant with respect to goods of that kind and (2) that the goods are merchantable, including that they "are fit for the ordinary

---

[3] Plaintiff's Complaint styles Count IV as a "Breach of Implied Warranties," however, the language of this cause of action regarding goods not being "of merchantable quality and safe and fit for the use for which they were intended" indicates that her claim is specifically one of a breach of implied warranty of merchantability. To the extent that Plaintiff intended to also plead a breach of the implied warranty of fitness for a particular purpose, L'Oréal USA addresses that claim as well.

Case ID: 240502672
Control No.: 24064165

purposes for which such goods are used" and that they "conform to the promises or affirmations

of fact made on the container or label if any." *See* 13 Pa.C.S.A. § 2314. Merchantability

requires that goods "have an inherent soundness which makes them suitable for the purpose for

which they are designed" and also "that they be free from significant defects, that they perform

in the way that goods of that kind should perform, and that they be of reasonable quality within

expected variations and for the ordinary purpose for which they are used." *Gall ex rel. Gall v.*

*Allegheny Cnty. Health Dep't*, 555 A.2d 786, 789-90 (Pa. 1989) (citation omitted).

Here, Plaintiff's Complaint only satisfies the first prong of the statutory requirement,

alleging that L'Oréal USA was in the business of manufacturing hair relaxers. (Ex. A ¶ 173.)

The Complaint, however, alleges no facts in support of the second prong. While the Complaint

does identify four products representing some of the L'Oréal USA products Plaintiff used, it

does not allege additional necessary information—such as that those hair relaxer products were

not suitable for the purpose for which they were designed, or that they were significantly

defective due to containing a certain ingredient or a flawed instruction. Of course, Plaintiff

could likewise not make such allegations as to any other L'Oréal USA product she purportedly

used without first identifying a particular product manufactured by L'Oréal USA. As she makes

no such allegation in her Complaint, Plaintiff cannot state a claim for breach of the implied

warranty of merchantability, and thus her claim must be dismissed as a matter of law.

Additionally, to the extent that Plaintiff purports to make a claim for a breach of the

implied warranty of fitness for a particular purpose, this claim also must fail. The Pennsylvania

Commercial Code provides that, when a seller has reason to know of any particular purpose for

which the goods are required and also knows that the buyer is relying on the seller's skill or

judgment to furnish suitable goods, that an implied warranty then exists that the goods shall be

Case ID: 240502672
Control No.: 24064165

fit for such purpose.  *See* 13 Pa.C.S.A. § 2315.  A "'particular purpose' differs from the 'ordinary purpose' for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business" as contrasted with the ordinary purpose, which covers the uses for which the goods are customarily used.  *Gall*, 555 A.2d at 790 (quoting 13 Pa.C.S.A. § 2315, Uniform Commercial Code Comment 2).

*Gall* is instructive on this point.  In *Gall*, the plaintiffs brought a claim for breach of implied warranties against the local county health department, alleging that they contracted giardiasis because the defendants had failed to property treat and protect the water supply.  *Id*. at 787.  The court held that "[t]he sale of water for drinking and household use does not carry with it the implied warranty of fitness for a particular purpose" and sustained the defendants' preliminary objections in the nature of a demurrer to the plaintiffs' claim of breach of warranty of fitness for a particular purpose.  *Id.* at 790.

Similarly, here, Plaintiff's breach of warranty of fitness for a particular purpose claim fails because any type of hair relaxer product Plaintiff may have used would have been used for its ordinary purpose:  chemically straightening hair.  Thus, she cannot sustain a claim for breach of implied warranty of fitness for a particular purpose.

**F.      Plaintiff Has Not Adequately Pled a Claim for Punitive Damages.**

Plaintiff's demand for an award of punitive damages for each of her four causes of action fails because she has not sufficiently alleged that L'Oréal USA's conduct was malicious, willful, or done with knowledge of a high risk of physical harm.  (Ex. A ¶¶ 139, 152, 163, 179.)  In Pennsylvania, "punitive damages are an 'extreme remedy' available in only the most exceptional matters."  *Phillips v. Cricket Lighters*, 883 A.2d 439, 445 (Pa. 2005) (citation omitted).  A claim for punitive damages "must be based on "'malicious", "wanton", "reckless", "willful", or "oppressive" conduct on the part of defendant.'"  *Chambers v. Montgomery*, 192 A.2d 355, 358

Case ID: 240502672
Control No.: 24064165

(Pa. 1963) (quoting *Hughes v. Babcock*, 37 A.2d 551, 554 (Pa. 1944)); *see also Feld v. Merriam*, 485 A.2d 742, 748 (Pa. 1984) ("The state of mind of the actor is vital.  The act, or the failure to act, must be intentional, reckless or malicious.").  In determining whether a defendant exhibited reckless indifference sufficient to support an award of punitive damages, the court "must analyze whether the complaint's allegations establish that the actor actually knew or had reason to know of facts which created a high risk of physical harm to plaintiff.  Further, the defendant must have proceeded to act in conscious disregard of or indifference to that risk."  *Field v. Phila. Elec. Co.*, 565 A.2d 1170, 1182 (Pa. Super. Ct. 1989).

For example, in *McDaniel v. Merck, Sharp & Dohme*, 533 A.2d 436 (Pa. Super. Ct. 1987), the plaintiff, executor of a decedent's estate, brought claims for punitive damages against a hospital, several of its doctors, and a pharmaceutical company for administering a drug to the decedent that allegedly led to her death.  The court explained that "[p]unitive damages may not be awarded for misconduct which constitutes ordinary negligence such as inadvertence, mistake and errors of judgment."  *Id*. at 447.  As the plaintiff's complaint had alleged facts against the hospital and doctors that were only sufficient to support a claim for ordinary negligence, the court affirmed the dismissal of punitive damages claims against those defendants.  *Id*. at 447-48.  However, because the plaintiff alleged that the pharmaceutical company "knew of a serious risk of illness and death resulting from [the drug's] use, and deliberately and negligently failed to communicate that knowledge to the medical community" the court found the punitive damages claim appropriate as to that defendant.  *Id*. at 448.

Here, Plaintiff does not allege that any conduct of L'Oréal USA was malicious, wanton, reckless, willful, or oppressive.  She merely contends that L'Oréal USA knew, or should have known, of unreasonable risks of harm associated with unidentified products manufactured by

<div align="center">32</div>

Case ID: 240502672<br>Control No.: 24064165

Dark & Lovely, Optimum, Bantu, and Precise, including their alleged propensity to cause cancer, and that it "concealed, downplayed, or otherwise suppressed" information about the risks. (Ex. A ¶¶ 134, 146.) Importantly, Plaintiff's allegations that L'Oréal USA should have known that its products were potentially carcinogenic are belied by her own allegations that any purported association between hair relaxers and uterine cancer was revealed in a "groundbreaking study" published in October of 2022. (Ex. A ¶ 108.) This recent development is a far cry from knowledge and deliberate withholding of information supporting a "serious risk of illness and death" that supported a punitive damages claim in *McDaniel*. Plaintiff's allegations that L'Oréal USA failed to sufficiently test its products and failed to disclose a recently suggested risk of harm associated with endocrine-disrupting chemicals does not rise to the level of malicious and intentional conduct sufficient to warrant an "extreme" damages remedy. Accordingly, as Plaintiff has not alleged facts sufficient to support an award of punitive damages for any of her four claims, all of her punitive damages claims should be dismissed.

**V.    RELIEF REQUESTED**

For the foregoing reasons, L'Oréal USA respectfully requests the Court sustain its Preliminary Objections to Plaintiff's Complaint and dismiss all of Plaintiff's claims against L'Oréal USA with prejudice.

Date: June 20, 2024                          By:  *Regina M. Nelson*

**GORDON & REES LLP**
Regina M. Nelson, Esquire
Attorney ID 307082
Three Logan Square
1717 Arch Street, Suite 610
Philadelphia, PA  19103
Telephone: (215) 561-2300
Facsimile: (215) 693-6650
Email: rmnelson@grsm.com

Case ID: 240502672
Control No.: 24064165

**ELLIS GEORGE LLP**
Dennis S. Ellis (*pro hac vice* pending)
Katherine F. Murray (*pro hac vice* pending)
Serli Polatoglu (*pro hac vice* forthcoming)
2121 Avenue of the Stars, 30th Floor
Los Angeles, CA 90067
Telephone: (310) 274-7100
Facsimile: (310) 275-5697
Email: dellis@ellisgeorge.com
Email: kmurray@ellisgeorge.com
Email: spolatoglu@ellisgeorge.com

Attorneys for Defendants, L'Oréal USA, Inc.,
L'Oréal USA Products, Inc., and SoftSheen-
Carson LLC

34

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on June 20, 2024, a true and correct copy of the

foregoing Preliminary Objections to Plaintiff's Complaint were served electronically via the

Court's Electronic Filing System in accordance with Pennsylvania Rule of Civil Procedure

205.4(g).

By:  */s/ Regina M. Nelson*

**GORDON & REES LLP**
Regina M. Nelson, Esquire
Attorney ID 307082
Three Logan Square
1717 Arch Street, Suite 610
Philadelphia, PA  19103
Telephone: (215) 561-2300
Facsimile: (215) 693-6650
Email: rmnelson@grsm.com

2428657.2

Case ID: 240502672
Control No.: 24064165

# EXHIBIT A-18

**GORDON & REES LLP**
Regina M. Nelson, Esquire
Attorney ID 307082
Three Logan Square
1717 Arch Street, Suite 610
Philadelphia, PA  19103
Telephone: (215) 561-2300
Facsimile: (215) 693-6650
Email: rmnelson@grsm.com

**ELLIS GEORGE LLP**
Dennis S. Ellis (*pro hac vice* pending)
Katherine F. Murray (*pro hac vice* pending)
Serli Polatoglu (*pro hac vice* forthcoming)
2121 Avenue of the Stars, 30th Floor
Los Angeles, CA 90067
Telephone: (310) 274-7100
Facsimile: (310) 275-5697
Email: dellis@ellisgeorge.com
Email: kmurray@ellisgeorge.com
Email: spolatoglu@ellisgeorge.com



*Counsel for Defendants L'Oréal USA, Inc., L'Oréal USA Products, Inc., and SoftSheen-Carson LLC*

<div align="center">

**IN THE COURT OF COMMON PLEAS
OF PHILADELPHIA COUNTY, PENNSYLVANIA**

</div>

| | |
|---|---|
| MERLE CARTER, | May Term, 2024 |
| Plaintiff, | Civil Division |
| vs. | No. 240502672 |
| L'ORÉAL USA, INC., et al., | JURY TRIAL DEMANDED |
| Defendants. | |

<div align="center">

**NOTICE OF APPEARANCE**

</div>

**PLEASE TAKE NOTICE** that the undersigned attorney of the law offices of Gordon

Rees Scully Mansukhani, LLP hereby files this Notice of Appearance in the above-referenced

action as counsel for Defendants L'Oreal USA, Inc., L'Oreal USA Products, Inc., and

SoftSheen-Carson LLC in this matter, and requests that copies of all briefs, orders,

correspondence and other papers be served upon the undersigned.

GORDON REES SCULLY MANSUKHANI LLP


By: /s/ Regina M. Nelson
    Regina M. Nelson


Dated:  June 20, 2024

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Notice of Appearance has been served this 20th day of June, 2024 upon all counsel of record via the Court's Electronic Filing System.

GORDON REES SCULLY MANSUKHANI LLP


/s/ Regina M. Nelson
Regina M. Nelson

# EXHIBIT A-19

**KLINE & SPECTER, P.C.**
By:    SHANIN SPECTER, ESQUIRE      (Attorney I.D. No.: 40928)
       TOBI L. MILLROOD, ESQUIRE     (Attorney I.D. No.: 77764)
       BRADEN R. LEPISTO, ESQUIRE  (Attorney I.D. No.: 313586)
       SHERRELL L. DANDY, ESQUIRE (Attorney I.D. No.: 309348)
Shanin.Specter@klinespecter.com
Tobi.Millrood@klinespecter.com
Braden.Lepisto@klinespecter.com
Sherrell.Dandy@klinespecter.com
1525 Locust Street
Philadelphia, Pennsylvania 19102
215-772-1000
215-772-1359 (fax)                                          ATTORNEYS FOR PLAINTIFF

*Filed and Attested by the Office of Judicial Records 19 JUN 2024 03:51 pm S. GILLIAM*

---

| | |
|---|---|
| **MERLE CARTER** | COURT OF COMMON PLEAS |
| | PHILADELPHIA COUNTY |
| *Plaintiff,* | |
| | |
| V. | MAY TERM, 2024 |
| | |
| **L'ORÉAL USA, INC.,** et al. | |
| | NO. 02672 |
| *Defendants.* | |
| | **JURY TRIAL DEMANDED** |

---

## PRAECIPE TO REINSTATE COMPLAINT

TO THE PROTHONOTARY:

Kindly reinstate the attached Complaint for an additional thirty (30) days.

                              **KLINE & SPECTER, P.C.**

                    By:    _Sherrell L. Dandy_
                           _____
                           SHERRELL L. DANDY, ESQUIRE
                           *Attorney for Plaintiffs*

Date:  June 19, 2024

Court of Common Pleas of Philadelphia County
Trial Division

# Civil Cover Sheet

For Prothonotary Use Only (Docket Number)

## MAY 2024

E-Filing Number: 2405049309

**02672**

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| MERLE CARTER | L'ORÉAL USA, INC. |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| 6608 LINCOLN DRIVE PHILADELPHIA PA 19199 | 575 FIFTH AVENUE NEW YORK NY 10017 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | L'ORÉAL USA PRODUCTS, INC. |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | 10 HUDSON YARDS NEW YORK NY 10001 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | SOFT SHEEN-CARSON, LLC |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | 10 HUDSON YARDS NEW YORK NY 10001 |

| TOTAL NUMBER OF PLAINTIFFS | TOTAL NUMBER OF DEFENDANTS | COMMENCEMENT OF ACTION | | |
|---|---|---|---|---|
| 1 | 12 | ☒ Complaint ☐ Writ of Summons | ☐ Petition Action ☐ Transfer From Other Jurisdictions | ☐ Notice of Appeal |

| AMOUNT IN CONTROVERSY | COURT PROGRAMS | | | |
|---|---|---|---|---|
| ☐ $50,000.00 or less ☒ More than $50,000.00 | ☐ Arbitration ☒ Jury ☐ Non-Jury ☐ Other: | ☐ Mass Tort ☐ Savings Action ☐ Petition | ☐ Commerce ☐ Minor Court Appeal ☐ Statutory Appeals | ☐ Settlement ☐ Minors ☐ W/D/Survival |

CASE TYPE AND CODE

2P - PRODUCT LIABILITY

STATUTORY BASIS FOR CAUSE OF ACTION

RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER)

**FILED
PRO PROTHY**

MAY **22** 2024

**C. SMITH**

IS CASE SUBJECT TO
COORDINATION ORDER?
YES          NO

TO THE PROTHONOTARY:

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant: <u>MERLE CARTER</u>

Papers may be served at the address set forth below.

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY | ADDRESS |
|---|---|
| SHERRELL L. DANDY | KLINE & SPECTER, P.C. 1525 LOCUST STREET 19TH FLOOR PHILADELPHIA PA 19102 |
| PHONE NUMBER (215)772-1000 | FAX NUMBER none entered | |
| SUPREME COURT IDENTIFICATION NO. 309348 | E-MAIL ADDRESS sherrell.dandy@klinespecter.com |
| SIGNATURE OF FILING ATTORNEY OR PARTY *SHERRELL DANDY* | DATE SUBMITTED Wednesday, May 22, 2024, 09:54 am |

Case ID: 240502672

FINAL COPY (Approved by the Prothonotary Clerk)

**COMPLETE LIST OF DEFENDANTS:**

```
1. L'ORÉAL USA, INC.
     575 FIFTH AVENUE
     NEW YORK NY 10017
2. L'ORÉAL USA PRODUCTS, INC.
     10 HUDSON YARDS
     NEW YORK NY 10001
3. SOFT SHEEN-CARSON, LLC
     10 HUDSON YARDS
     NEW YORK NY 10001
4. STRENGTH OF NATURE, LLC
     64 ROSS ROAD
     SAVANNAH GA 31405
5. GODREJ SON HOLDINGS, INC.
     64 ROSS ROAD
     SAVANNAH GA 31405
6. AVLON INDUSTRIES, INC.
     1999 NORTH 15TH STREET
     MELROSE PARK IL 60160
7. ACME MARKETS, INC.
     75 VALLEY STREAM PARKWAY
     MALVERN PA 19355
8. ACME MARKETS
     7010 GERMANTOWN AVENUE
     PHILADELPHIA PA 19119
9. ACME MARKETS
     7700 CRITTENDEN STREET
     PHILADELPHIA PA 19118
10. CVS PHARMACY, INC.
     1 CVS DRIVE
     WOONSOCKET RI 02895
11. CVS PHARMACY
     6701 RIDGE AVENUE
     PHILADELPHIA PA 19128
12. CVS PHARMACY
     7065 LINCOLN DRIVE
     PHILADELPHIA PA 19119
```

Case ID: 240502672

**KLINE & SPECTER, P.C.**
By:   SHANIN SPECTER, ESQUIRE   (Attorney I.D. No.: 40928)
     TOBI L. MILLROOD, ESQUIRE   (Attorney I.D. No.: 77764)
     BRADEN R. LEPISTO, ESQUIRE  (Attorney I.D. No.: 313586)
     SHERRELL L. DANDY, ESQUIRE (Attorney I.D. No.: 309348)
Shanin.Specter@klinespecter.com
Tobi.Millrood@klinespecter.com
Braden.Lepisto@klinespecter.com
Sherrell.Dandy@klinespecter.com
1525 Locust Street
Philadelphia, Pennsylvania 19102
215-772-1000
215-772-1359 (fax)                  ATTORNEYS FOR PLAINTIFF

*Filed and Attested by the Office of Judicial Records
22 MAY 2024 09:54 am
E. SMITH*

---

| | |
|---|---|
| MERLE CARTER, M.D.<br>6608 LINCOLN DRIVE<br>PHILADELPHIA, PA 19199<br>           PLAINTIFF<br><br>V.<br><br><br>           DEFENDANTS<br><br>L'ORÉAL USA, INC.<br>575 FIFTH AVENUE<br>NEW YORK, NY 10017<br><br>      AND<br><br>L'ORÉAL USA PRODUCTS, INC.<br>10 HUDSON YARDS<br>NEW YORK, NY 10001<br><br>      AND<br><br>SOFT SHEEN-CARSON, LLC<br>10 HUDSON YARDS<br>NEW YORK, NY 10001<br><br>      AND<br><br>STRENGTH OF NATURE, LLC<br>64 ROSS ROAD<br>SAVANNAH, GA 31405<br><br>      AND | IN THE COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY,<br>PENNSYLVANIA<br><br><br><br><br><br><br><br><br><br>**JURY TRIAL DEMANDED** |

Case ID: 240502672

GODREJ SON HOLDINGS, INC.
64 ROSS ROAD
SAVANNAH, GA 31405

AND

AVLON INDUSTRIES, INC.
1999 NORTH 15TH STREET
MELROSE PARK, IL 60160

AND

ACME MARKETS, INC.
75 VALLEY STREAM PARKWAY
MALVERN, PA 19355

AND

ACME MARKETS
7010 GERMANTOWN AVENUE
PHILADELPHIA, PA 19119

AND

ACME MARKETS
7700 CRITTENDEN STREET
PHILADELPHIA, PA 19118

AND

CVS PHARMACY, INC.
1 CVS DRIVE
WOONSOCKET, RI 02895

AND

CVS PHARMACY
6701 RIDGE AVENUE
PHILADELPHIA, PA 19128

AND

CVS PHARMACY
7065 LINCOLN DRIVE
PHILADELPHIA, PA 19119

Case ID: 240502672

**NOTICE TO PLEAD**



*Filed and Attested by the
Office of Judicial Records
19 JUN 2024 03:51 pm
S. GILLIAM*

| **NOTICE** | **ADVISO** |
|---|---|
| You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you. | Le han demandado a used en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta asentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte pueda decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted. |

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

LLEVE ESTA DEMANDA A UN ABOGADO INMEDIATAMENTE, SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO, VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.

<div align="center">

Lawyer Referral Service
Philadelphia Bar Association
1101 Market Street, 11th Floor
Philadelphia, PA 19107
(215) 238-6338

Lawyer Referral Service
Philadelphia Bar Association
1101 Market Street, 11th Floor
Philadelphia, PA 19107
(215) 238-6338

</div>

Case ID: 240502672

<u>**CIVIL ACTION – COMPLAINT**</u>

Plaintiff, Merle Carter, M.D., through her undersigned counsel, Kline & Specter, P.C., hereby demands damages from the Defendants in a sum in excess of the local arbitration limits exclusive of interest, costs, and damages for prejudgment delay, upon the cause of action set forth below:

<u>**PARTIES**</u>

1.    Plaintiff, Merle Carter, M.D., is an adult individual citizen and resident of the Commonwealth of Pennsylvania, residing therein at 6608 Lincoln Drive, Philadelphia, PA 19199.

2.    Defendant, L'Oréal USA, Inc., is incorporated in Delaware with its principal place of business and headquarters located at 575 Fifth Avenue, New York, New York 10017.

3.    Defendant, L'Oréal USA Products, Inc., is incorporated in Delaware with its principal place of business and headquarters located at 10 Hudson Yards, 347 Tenth Avenue, New York, New York 10001.

4.    Defendant, SoftSheen-Carson, LLC, is a limited liability company organized in the state of New York with its principal place of business and headquarters located at 90 State St., Albany, New York 12207.  Upon information and belief, SoftSheen-Carson, LLC's members and sole interested parties are L'Oréal USA, Inc. and L'Oréal S.A., L'Oréal's French owned company, with its headquarters and principal place of business located in France.

5.    Defendant, Carson, Inc., D/B/A SoftSheen, is a corporation with its principal place of business and headquarters located at 2870 Peachtree Rd., Suite, 464, Atlanta, Georgia 40405.

6.    Defendant, Carson (W.I.) Inc., D/B/A SoftSheen, is a corporation, with its headquarters located in Delaware at 251 Little Falls Drive, Wilmington, Delaware 19808.

Case ID: 240502672

7.    Defendants L'Oréal USA, Inc., Loreal USA Products, Inc., SoftSheen-Carson, LLC, Carson, Inc., and Carson (W.I.) Inc., will be collectively referred to as "L'Oréal Defendants."

8.    Defendant Strength of Nature, LLC, is a corporation with its principal place of business and headquarters located at 64 Ross Road, Savannah, Georgia 31405.

9.    Defendant Godrej Consumer Products Limited is, and at all times relevant to this action, a global corporation with its principal place of business located at Godrej One, Fourth Floor, Pirojshanagar, Eastern Express Highway, Fikhroli (East), Mumbai 400 079, India.  The company's website references Strength of Nature as its base of operations in the U.S., which is located at 64 Ross Road, Savannah, Georgia, and process may be served upon its registered agent, Karen Sood, 6355 Peachtree Dunwood Road, Atlanta Georgia, 30328.

10.    Defendants Strength of Nature, LLC and Godrej Consumer Products Limited, will be collectively referred to as "Strength of Nature Defendants."

11.    Defendant Avlon Industries, Inc. ("Avlon") is, and at all times relevant to this action, a corporation with its principal place of business located at 1999 North 15th Street, Melrose Park, Illinois 60160.

12.    ACME Markets, Inc. is a corporation with its principal place of business and headquarters located at 75 Valley Stream Parkway, #250, Malvern, PA 19355.  At all times relevant hereto, ACME Markets, Inc., conducted business as ACME Markets at 7010 Germantown Avenue, Philadelphia, PA 19119 and 7700 Crittenden Street, Philadelphia PA, 19118.

13.    Defendants ACME Markets, Inc., ACME Markets at 7010 Germantown Avenue, and ACME Markets at 7700 Crittenden Street will be collectively referred to as "ACME Defendants."

Case ID: 240502672

14.     Defendant CVS Pharmacy, Inc. ("CVS") is a corporation with its principal place of business and headquarters located at 1 CVS Drive, Woonsocket, RI 02895.  At all times relevant hereto, CVS conducted business as CVS Pharmacy located at 6701 Ridge Avenue, Philadelphia, PA 19128 and the CVS Pharmacy located at 7605 Lincoln Drive, Philadelphia, PA 19119.

15.     Defendants CVS Pharmacy, Inc., CVS Pharmacy at 6701 Ridge Avenue and CVS Pharmacy at 7605 Lincoln Drive will be collectively referred to as "CVS Defendants."

## JURISDICTION

16.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

17.     This Court has original jurisdiction over this civil action.

18.     This Court has personal jurisdiction over the Defendants.

19.     At all times relevant hereto, L'Oréal Defendants, Strength of Nature Defendants, and Defendant Avlon (Manufacturer Defendants) contracted with, entered agreements with, sold, shipped, and distributed hair relaxer products, including those products Plaintiff purchased and applied to her hair, to various companies and stores within the Commonwealth of Pennsylvania, including but not limited to Defendants, ACME Markets and CVS Pharmacy.

20.     At all times relevant hereto, L'Oréal Defendants, Strength of Nature Defendants, and Defendant Avlon engaged in the business of manufacturing, making, distributing, creating, dispensing, selling, shipping, advertising, transporting, and marketing hair relaxer products which contained dangerous and harmful amounts of endocrine disrupting chemicals and other harmful substances to sell at ACME Markets and CVS Pharmacy.

21.     At all times relevant hereto, ACME Markets and CVS Pharmacy conducted business in the Commonwealth of Pennsylvania by: (1) selling and distributing products and

Case ID: 240502672

merchandise, including Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen (Hair Relaxer Brands), in the Commonwealth of Pennsylvania for the purpose of realizing pecuniary benefit from those sales and distributions; (2) shipping products and merchandise, including Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen, directly into and through the Commonwealth of Pennsylvania; (3) engaging in business in the Commonwealth of Pennsylvania; and/or, (4) owning, using, and/or possessing real property situated in the Commonwealth of Pennsylvania.

22.     At all times relevant hereto, L'Oréal Defendants, Strength of Nature Defendants, and Defendant Avlon had, and continues to have, regular and systematic contact with and conducts business in and from the Commonwealth of Pennsylvania, such that it has purposefully availed itself of the laws of the Commonwealth of Pennsylvania and can reasonably expect to both sue and be sued in Pennsylvania.

23.     Additionally, L'Oréal Defendants, Strength of Nature Defendants, and Defendant Avlon's presence in the Commonwealth of Pennsylvania satisfies the due process requirements for Pennsylvania courts to exercise jurisdiction over it. Additionally, L'Oréal Defendants, Strength of Nature Defendants, and Defendant Avlon consented to the exercise of jurisdiction over it by Pennsylvania courts by registering to and conducting business from the Commonwealth of Pennsylvania.

24.     A federal court would not have jurisdiction over this case, as there is no federal question under 28 U.S.C. § 1331 or complete diversity between the parties under 28 U.S.C. § 1332. Therefore, this case is not removable to federal court under 28 U.S.C. § 1441 and 28 U.S.C. § 1446.

Case ID: 240502672

25.     Venue is proper in Philadelphia County for each of the following reasons: (1) each Defendant regularly conducts business in Philadelphia County; (2) ACME Markets and CVS Pharmacy, as alleged *supra*, has a registered office and/or retail stores in Philadelphia County; (3) the cause of action arose in Philadelphia County; and/or, (4) Philadelphia County is a county where a transaction or occurrence took place out of which the cause of action arose.

26.     The damages Plaintiff seeks, exclusive of interests and costs, exceed the jurisdictional amount requiring arbitration referral. Plaintiff seeks more than $50,000 in damages.

## FACTUAL BACKGROUND

27.     At all times material hereto, L'Oréal Defendants developed, tested, assembled, marketed, manufactured, and sold various brands of chemical hair relaxer products that were specifically marketed to black women, including but not limited to the following brands that Plaintiff used to chemically straighten her hair:

      a.      Dark & Lovely;

      b.      Precise;

      c.      Bantu; and,

      d.      Optimum Care.

28.     At all times material hereto, Strength of Nature Defendants developed, tested, assembled, marketed, manufactured, and sold various brands of chemical hair relaxer products that were specifically marketed to black women, including but not limited to the following brands that Plaintiff used to chemically straighten her hair:

      a.      Motions;

      b.      Dr. Miracle; and,

      c.      Ultra Sheen.

Case ID: 240502672

29.     At all times material hereto, Defendant Avlon Industries, Inc. developed, tested, assembled, marketed, manufactured, and sold various brands of chemical hair relaxer products that were specifically marketed to black women, including but not limited to the Affirm brand that Plaintiff used to chemically straighten her hair.

30.     Plaintiff developed endometrial cancer as a result of frequent use of chemical hair relaxers manufactured by the Defendants.

## CHEMICAL HAIR RELAXERS

31.     Black and brown girls are taught at a young age that to be accepted in society, they must tame and control their natural hair.

32.     This has led black and brown women and girls to temporarily or permanently alter their curly hair strands to make them straight to adhere to western beauty standards.

33.     Traditionally, black women straightened their hair using a heated comb, commonly referred to as the "hot comb" invented by Francois Marcel Gateau.  The hot comb, combined with temporary hair straightening and growth products created by Madame C.J. Walker, became popular in the early 1900s. Madame C.J. Walker became the country's first black female millionaire. This financial success showed the world that black haircare, particularly hair straightening products, is a very lucrative business.

34.     In 1909, Garrett A. Morgan invented a hair straightening cream after mixing chemicals to correct friction in the sewing machine when sewing wool.  The G.A. Morgan Refining Cream, which straightened wool, was later used to straighten hair.

35.     In the 1960s, the first-generation hair relaxer was created to chemically straighten curly hair permanently by breaking and restructuring the disulfide bonds. The active ingredient, sodium hydroxide, a lye, irritated the scalp, diminished hair strength, and was difficult to rinse.

Case ID: 240502672

Additionally, the lye caused the relaxer to have a short shelf life because of the separation of the oil and water in the relaxer cream.

36.    In the 1970s, to remedy the disadvantages of the lye relaxer, hair relaxer manufacturers began marketing no-lye relaxers using calcium hydroxide or guanidine hydroxide as the active ingredients instead of sodium hydroxide.

37.    Home hair relaxer kits were marketed and sold to women who wanted to apply the chemical hair relaxer at home instead of having it professionally applied at a hair salon.

38.    The home hair relaxer kits were a cheaper alternative to professional application at a hair salon.

39.    The home hair relaxer kit typically contains plastic gloves and a wooden spatula for application because the chemicals are too harmful to touch with bare hands. The home hair relaxer kits also include the relaxer cream, a liquid activator mixed with the relaxer cream before application, neutralizing shampoo, and a restorative moisturizing balm.

40.    For first-time application, the relaxer cream is placed on the hair from the root to the end.  After letting it sit on the hair for ten to twenty minutes, the relaxer is rinsed out with warm water and then shampooed with a neutralizing shampoo to deactivate the alkalizing chemical process, followed by applying conditioner to raise the pH level and soften the hair. Lastly, a moisturizing treatment is used to restore hydration.

41.    Defendants began marketing the new and improved no-lye-based relaxers using two main marketing strategies: 1) marketing directly to black women and 2) portraying the no-lye relaxer as safe.

Case ID: 240502672



42.    In the 1970s and 1980s, hair relaxer manufacturers used black celebrities such as Debbie Allen and Natalie Cole in their commercial ads to market the no-lye relaxer as a safe way to make curly and coarse hair more manageable.

43.    In Dark & Lovely's 1980 hair relaxer commercial, while applying a hair relaxer, dancer and actress Debbie Allen stated, "For me, there is more to Dark & Lovely than just that it doesn't contain lye. Dark & Lovely is such a pleasure. It makes me feel like dancing." While dancing, she further stated, "It relaxes my hair just as well as those lye-based relaxers with a lot less burning and irritation, and there is no offensive odor...and it leaves it so soft that I can do anything with it."

Case ID: 240502672



44.    For decades, Defendants continued to market chemical hair relaxer products to black women, but in the 1990s, the industry began to target young black girls with the first hair relaxer for girls, "Just for Me" by Soft & Beautiful.

45.    In 1993, the infamous Just for Me commercial premiered featuring LaTavia Robinson, who later joined the famous music group Destiny's Child.  Young girls sang and danced to the song with the lyrics: "Just for Me—the no-lye conditioner relaxing cream," again marketing the relaxer as safe because it did not contain lye.



Page **12** of **37**

Case ID: 240502672

46.     Other manufacturers followed suit, creating other chemical hair relaxers for young girls, including the PCJ hair relaxer, also introduced in the early 1990s.

47.     Young black girls became enamored with the girls depicted on the hair relaxer boxes, believing they could achieve the same look if they used the hair relaxer.



48.     It was recently discovered from a "Where Are They Now" interview that several women depicted on the hair relaxer boxes did not have chemically straightened hair and never used the chemical relaxer products.

49.     The hair relaxer manufacturing companies spent billions of dollars targeting black women and girls:



Case ID: 240502672






50.    Although the hair relaxer manufacturing companies marketed the no-lye relaxers as safe because they did not contain sodium hydroxide, the Defendant companies failed to warn consumers about the harmful chemicals in the hair relaxers, including endocrine-disrupting chemicals ("EDCs").

## ENDOCRINE DISRUPTING CHEMICALS

51.    Endocrine-Disrupting Chemicals disrupt the endocrine system, a network of organs and glands that produce, store, and secrete hormones. The glands, controlled by stimulation from the nervous system and chemical receptors in the blood and hormones, help maintain the body's homeostasis by regulating the functions of organs.

Case ID: 240502672

52.     These glands help maintain the body's homeostasis by regulating the functions of the organs in the body, including but not limited to cellular metabolism, reproduction, sexual development, sugar and mineral hemostasis, heart rate, and digestion.

53.     EDCs can disrupt different hormones by mimicking or interfering with a natural hormone, which can trick the cellular hormone receptor into thinking that the EDC is the hormone the cellular hormone receptor responds to.

54.     This can cause the creation of excess hormones or deficient hormones and can cause adverse effects, including causing abnormalities in sex organs, early puberty, endometriosis, and hormonally responsive cancers, among other hormonally related diseases.

55.     A group of EDCs called xenoestrogens mimic estrogen by pretending to be biologically created estrogen. Over time, these estrogen mimickers become difficult to detoxify in the liver.

56.     Chemical hair relaxers contain various types of endocrine disrupting chemicals, including phthalates and parabens.

### Phthalates

57.     Phthalates were developed in the 1920s to make plastics more durable and malleable, but today are used in cosmetics to create color and make fragrances last longer.

58.     Phthalates are used in hair relaxers to make the hair more flexible after applying the product.

59.     Phthalates interfere with estrogen receptors and contribute to reproductive problems such as early puberty in girls, menopausal symptoms, infertility, metabolic syndrome and thyroid conditions, cognitive disorders, and cancer.

Case ID: 240502672

60.    Di-2-ethylheylphtyalate ("DEHP") is a phthalate used in plastics to make them more flexible.  Testing of chemical hair relaxers found the presence of DEHP.

61.    In the Report of Carcinogens, Fifteenth Edition, the U.S. Department of Health and Human Services determined that there is "clear evidence" of carcinogenicity of DEHP in both male and female rats and that it is "reasonably anticipated to be a human carcinogen."

62.    Similarly, the U.S. Environmental Protection Agency classified DEHP as a "B-2; probable human carcinogen" in its Chemical Assessment Summary.

**Parabens**

63.    Parabens are a class of chemicals used as preservatives in cosmetic products to prevent the growth of harmful bacteria and mold and therefore preserve the product's shelf life. There are common parabens, including methylparaben, propylparaben, butylparaben, and ethylparaben.

64.    Parabens are EDCs that also bind to estrogen receptors and mimic estrogen, causing estrogen dominance and health conditions such as reproductive issues and hormonal cancers.

65.    A recent study detected three different parabens in hair relaxer kits: methylparaben, ethylparaben, and butylparaben. Testing of hair relaxer kits revealed high concentrations of this parabens.

66.    An August 2019 study examined tissue samples from tumors of women diagnosed with endometrial cancer.  It concluded that paraben molecules were more frequently detected in endometrial carcinoma tissue samples compared to normal endometrium.

67.    Studies have shown that black women have elevated levels of phthalates in their urine compared to white women.  Additionally, a May 2021 study showed higher levels of

Case ID: 240502672

parabens and phthalates detected in the urine of women diagnosed with endometrial cancer than women without cancer.

68.    In a 2018 study, thirty-five different EDCs were present in three hair relaxer kits, including phthalates, parabens, bisphenol A ("BPA"), cyclosilicates, triclosan, and diethanolamine. Of the chemicals found to be present, 84% were not listed as ingredients on the hair relaxer labels. Each of these individual EDCs is well documented to increase estrogen and cause hormone-sensitive cancers.

69.    The synergistic effects of the combination of the known EDCs in the hair relaxers and the unknown chemicals hidden under the ingredient title "fragrances" further increase the risk of developing hormonally driven cancers.

70.    Moreover, because there is higher percutaneous absorption of chemicals in the scalp compared with other areas of the skin such as on the forearm, palm, and abdomen, there is an even greater risk of developing cancer from carcinogens placed on the scalp/hair.

**PLAINTIFF'S HAIR RELAXER USE**

71.    Plaintiff, Merle Carter, M.D., consistently and frequently used Hair Relaxers, starting in 1976.

72.    For decades, Plaintiff used Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen, which are manufactured and advertised by the named Manufacturer Defendants.

73.    Plaintiff used different variations of Avlon's Affirm hair relaxers, including but not limited to Affirm Crème Relaxer and Affirm Sensitive Scalp Relaxer.

74.    Plaintiff used different variations of L'Oréal Defendants' Dark & Lovely hair relaxer, including but not limited to Dark & Lovely Regular No-Lye Hair Relaxer.

Case ID: 240502672

75.    Plaintiff used different variations of L'Oréal Defendants' Optimum hair relaxer, including but not limited to Optimum Salon Haircare Defy Breakage No-Lye Relaxer.

76.    Plaintiff used different variations of L'Oréal Defendants' Bantu hair relaxer, including but not limited to Bantu No Base Relaxer.

77.    Plaintiff used different variations of L'Oréal Defendants' Precise hair relaxer, including but not limited to Ultra Precise No-Lye Conditioning Relaxer.

78.    Plaintiff used different variations of Strength of Nature Defendants' Dr. Miracle hair relaxer, including but not limited to Dr. Miracle's No Lye Relaxer Kit and Dr. Miracle's New Growth No Lye Relaxer Kit.

79.    Plaintiff used different variations of Strength of Nature Defendants' Motions hair relaxer, including but not limited to Motions No Lye Relaxer, Motions Classic Formula Smooth & Silken Hair Relaxer, and Motions Silkening Shine No Lye Relaxer Kit.

80.    Plaintiff used different variations of Strength of Nature Defendants' Ultra Sheen hair relaxer, including but not limited to Ultra Sheen No Lye Relaxer.

81.    She reapplied the relaxer to newly grown hair approximately every four to eight weeks at a hair salon or at home using home hair relaxer kits.

82.    Plaintiff purchased multiple hair relaxer home kits from ACME Markets at 7010 Germantown Avenue, Philadelphia, Pa 19119 and 7700 Crittendon Street, Philadelphia, Pa, 19118, starting in approximately 2004, including, Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen.

83.    Plaintiff purchased multiple hair relaxer home kits from CVS Pharmacies at 6701 Ridge Avenue, Philadelphia, Pa 19128 and 7605 Lincoln Drive, Philadelphia, Pa 19119 starting in approximately 2004, including, Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr.

Case ID: 240502672

Miracle, and Ultra Sheen.

84.     Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen hair relaxers purchased and used by the Plaintiff to apply to her hair contained endocrine disrupting chemicals, including phthalates, parabens, and other carcinogenic chemicals.

85.     Plaintiff has reason to believe that L'Oréal Defendants developed, tested, assembled, marketed, manufactured, and sold other brands of chemical hair relaxer products known to L'Oreal Defendants, but unknown to Plaintiff, that contained endocrine disrupting chemicals.

86.     Plaintiff has reason to believe that Strength of Nature Defendants developed, tested, assembled, marketed, manufactured, and sold other brands of chemical hair relaxer products known to Strength of Nature Defendants, but unknown to Plaintiff, that contained endocrine disrupting chemicals.

87.     Plaintiff has reason to believe that Defendant Avlon developed, tested, assembled, marketed, manufactured, and sold other brands of chemical hair relaxer products known to Defendant Avlon, but unknown to Plaintiff, that contained endocrine disrupting chemicals.

88.     The Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen hair relaxers purchased and used by the Plaintiff increased the risk of harm and/or was a substantial contributing factor to her development of endometrial cancer.

## HAIR RELAXERS LINKED TO UTERINE AND ENDOMETRIAL CANCERS

89.     The uterus comprises two main parts: the endometrium and the myometrium. Cancers in the uterus muscle layer are referred to as uterine sarcoma.

90.     Endometrial cancer is a carcinoma that begins in the endometrium lining of the uterus.

Case ID: 240502672

91.     Endometrial cancer is one of the three most common cancers in females and is the most common form of uterine cancer.

92.     There are two types of endometrial cancers.  Type 1 endometrial cancer tumors are classified as endometroid adenocarcinoma and are linked to excess estrogen in the body.

93.     Type 2 endometrial cancer tumors include uterine serous, clear cell, and squamous cell carcinomas.

94.     Type 1 endometrial cancer is far more common than Type 2, and accounts for approximately 90% of diagnosed endometrial cancer.

95.     Type 1 endometrial cancer incidence increased significantly between 1999 and 2006 compared to Type 2 endometrial cancers, which remained relatively stable during those years.

96.     Some endometrial cancers begin with a pre-cancerous condition called endometrial hyperplasia, which practitioners consider an early stage of endometrial cancer.

97.     One of the main risk factors for endometrial and other uterine cancers include changes in the balance of female hormones in the body.  Accordingly, exposure to EDCs is a risk factor for developing hormone-sensitive cancers such as endometrial cancer.

98.     Black women are twice as likely to be diagnosed with uterine cancer than white women and have poorer prognoses when diagnosed.

99.      For decades, research has shown that black women are far more likely to develop reproductive cancers and other reproductive diseases.

100.     Additionally, black women are two to three times more likely to develop uterine leiomyomata, also known as fibroid tumors, than white women.

Case ID: 240502672

101.    Endometriosis is an estrogen-dependent reproductive disease that causes growth of the endometrial glands and stroma outside of the uterus, causing chronic inflammation.

102.    Endometriosis is a risk factor for endometrial cancer, and as with other reproductive diseases, it is far more prevalent in black women.

103.    In addition to the research demonstrating the significant disparity between black and white women in the development of reproductive disease, research also establishes that black girls go through puberty and start menstruating earlier than girls of other races.

104.    Scientists from the University of California, San Francisco, and Berkeley conducted a continuing study of over 1,200 girls tracked between 2005 and 2011. They concluded that by age seven, 23% of black girls started to develop breasts, compared with just 10% of white girls.

105.    Researchers have been baffled by the inability to identify why black girls are menstruating so early and why black women are developing reproductive issues at alarming rates.

106.    According to NBC News, approximately 95% of black women reported using chemical hair straightening products, such as hair relaxers. Many of these women also said they began using the products in early childhood, sometimes as young as five or six years old, and continued frequent use through adulthood.

107.    Although there is so much diversity within the black female community, one commonality between generations of black women is using permanent chemical hair relaxers to straighten their hair.

108.    In October 2022, the results of a groundbreaking study were published in the Journal of the National Cancer Institute by Dr. Che-Jung Chang and others regarding the link between hair relaxer use and the development of uterine cancers.

Case ID: 240502672

109.    The study found that women who frequently used hair relaxers were more than twice as likely to develop uterine cancers compared to women who did not use chemical hair relaxers.  Specifically, the study found that 1.64% of women who never used hair relaxer products would develop uterine cancer before age 70.  However, for women who ever used hair relaxers, the risk of uterine cancer increased to 1.80% and drastically increased to 2.55% for women who frequently used hair relaxers.[1]

110.    Among women who never used straighteners in the 12 months prior to baseline, approximately 1.64% were predicted to develop uterine cancer by age 70 years.  The estimated risk was 1.18% (95% CI for risk difference = 0.15% to 2.54%) higher for the women with ever use, and 2.41% (95% CI for risk difference = 0.52% to 4.80%) higher for those with frequent use compared with women who never used hair relaxers.

111.    According to the researchers, "These findings are consistent with prior studies supporting a role of straighteners in increased risk of other female, hormone-related cancers."

112.     The researchers further stated that "Although no differences in the hazard ratios between racial and ethnic groups were observed, the adverse health effects associated with straightener use could be more consequential for African American and/or Black women because of the higher prevalence and frequency of hair product use, younger age of initiating use, and harsher chemical formulations."[2]

### PLAINTIFF'S CANCER DIAGNOSIS

113.    In November 2015, at the age of forty-nine years old, Dr. Carter underwent endometrial sampling which revealed a diagnosis of endometrial carcinoma.

---

[1] 4 Che-Jung Chang, et al., Use of Straighteners and Other Hair Products and Incident Uterine Cancer, Journal of the National Cancer Institute, Oct. 17, 2022, https://pubmed.ncbi.nlm.nih.gov/36245087.
[2] Id.

Case ID: 240502672

114.    Dr. Carter was advised to undergo a radical hysterectomy and bilateral oophorectomy.

115.    In December 2015, Dr. Carter underwent a total robotic laparoscopic hysterectomy and bilateral oophorectomy, and surgical pathology confirmed a diagnosis of well-differentiated endometrioid adenocarcinoma, FIGO 1-2.

116.    Plaintiff's use of the hair relaxers manufactured and sold by the Defendants, increased the risk of harm and/or was a substantial contributing factor to her development of endometrial cancer.

117.    Dr. Carter suffered significant pain as a result of her cancer diagnosis and subsequent hysterectomy.

## DISCOVERY RULE

118.    Despite knowing that their chemical hair relaxer products contain large amounts of EDCs that are more likely to enter the body when applied through the scalp, the Defendants failed to warn of the potential for the use of their products to cause cancer and reproductive issues.

119.    Plaintiff reserves the right to plead and invoke the discovery rule. Plaintiff's endometrial cancer is a latent injury. Accordingly, under such circumstances, Plaintiff could not have reasonably been expected to know the cause of her endometrial cancer. Plaintiff lacked the salient facts behind the cause of her endometrial cancer, and Plaintiff could not have been aware of the salient facts through reasonable diligence until less than two years before the filings of Plaintiff's action.

120.    Further, Plaintiff did not and could not have known that her injuries were caused by Defendants' conduct in the exercise of reasonable diligence.

Case ID: 240502672

121.    The carelessness and recklessness in the acts and omissions of the Defendants, as outlined and averred throughout the entirety of this Complaint, was a factual cause of and/or placed Plaintiff at an increased risk of harm for and/or was a substantial factor in causing and did in fact directly and proximately cause the severe, permanent and grievous personal injuries and damages to Plaintiff.

**COUNT I**
**STRICT LIABILITY – DESIGN DEFFECT**
**(Plaintiff v. L'Oreal Defendants, Strength of Nature Defendants, Defendant Avlon, ACME Defendants and CVS Defendants)**

122.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

123.    At all relevant times, Defendants were engaged in the business of manufacturing, formulating, creating, designing, testing, labeling, packaging, supplying, marketing, promoting, selling, and advertising relaxers like Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen.

124.    Plaintiff used Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen frequently and consistently.

125.    Defendants marketed and advertised Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen as a safe product for use by consumers, specifically to black women and women of color, including Plaintiff, despite knowing that they contained EDCs and other harmful chemicals.

126.    At all relevant times, Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen reached their intended consumers, including Plaintiff, without substantial change in the condition in which the Defendants designed, produced, manufactured, sold, distributed, labeled, and marketed them.

Case ID: 240502672

127.    Manufacturer Defendants had a duty to create Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen in a way that was not unreasonably dangerous for their normal, intended, or anticipated use.

128.    Retailer Defendants had a duty to ensure that Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen was not defective and safe for its intended use before selling said products to consumers, such as Dr. Carter.

129.    Defendants' Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers were defective as they were formulated, designed, and manufactured with carcinogens.

130.    The Defendants' Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen were defective because their carcinogenic properties made them unreasonably dangerous in that they were dangerous to an extent beyond that which an ordinary consumer, such as the Plaintiff, would contemplate.

131.    Further, the magnitude of the danger associated with use of Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen's Best relaxers outweighs the utility of these products.

132.    The dangers of the Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen were unknown to the ordinary consumer.

133.    Plaintiff did not know of these dangers. If she would have known, these dangers would have been unacceptable to her.

134.    Defendants knew, or should have known, of the unreasonable risks of harm associated with the use of Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle,

Case ID: 240502672

and Ultra Sheen, namely their unreasonably dangerous and carcinogenic properties and their propensity to cause cancer.

135.    At the time of Plaintiff's exposure, Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers were being used in a normal, intended, or anticipated manner, as a chemical hair relaxer product.

136.    Plaintiff used Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers without knowledge of their dangerous characteristics, specifically the carcinogenic risks associated with use of the products.

137.    The foreseeable risks associated with use of Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers exceeded the alleged benefits associated with their design and formulation.

138.    Defects in Defendants' Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxer products increased the risk, and were a producing cause, proximate cause, and substantial factor in the development of Plaintiff's cancer.

139.    As a result of the Defendants' reckless and conscious disregard for the health and safety of consumers of their hair relaxer products, Plaintiff sustained the following damages as a foreseeable, direct, and proximate result of Defendants' acts and omissions:

a.    Economic losses, including medical care and lost earnings; and,

b.    Noneconomic losses, including physical and mental pain and suffering, emotional distress, inconvenience, loss of enjoyment of life, impairment of quality of life, past and future.

WHEREFORE, Plaintiff respectfully demands judgment in her favor and against Defendants, in an amount in excess of the applicable arbitration limits, including interest, costs of

Case ID: 240502672

suit, delay damages, compensatory damages, punitive damages, and such other relief as this Honorable Court may deem appropriate.

## COUNT II
## STRICT LIABILITY – FAILURE TO WARN
### (Plaintiff v. L'Oreal Defendants, Strength of Nature Defendants, Defendant Avlon, ACME Defendants and CVS Defendants)

140.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

141.    Plaintiff brings this strict liability claim against Defendants for failure to warn about the toxic carcinogenic chemicals in their hair relaxer products.

142.    At all relevant times, Defendants engaged in the business of testing, developing, designing, manufacturing, marketing, selling, distributing, and/or promoting Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers, which are defective and unreasonably dangerous to its consumers, including Plaintiff because they do not contain adequate warnings or instructions regarding the dangerous carcinogenic chemicals contained in the relaxer products.

143.    The Defendants had a duty to warn of the risks associated with using their hair relaxer products.

144.    Defendants knew, or should have known, of the unreasonable risks of harm associated with the use of their chemical hair relaxer products, namely their unreasonably dangerous and carcinogenic properties and their propensity to cause cancer.

145.    However, Defendants purposefully marketed their no-lye hair relaxer products as safe because they did not contain "lye" or sodium hydroxide but failed to warn consumers about the carcinogenic endocrine-disrupting chemicals in the hair relaxers.

Case ID: 240502672

146.    Defendants disseminated information that was inaccurate, false, and misleading and that failed to communicate accurately or adequately the comparative severity, duration, and extent of the risk of injuries associated with use and frequent use of Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers; and continued to promote the efficacy of the relaxers, even after they knew or should have known of the unreasonable risks from use; and concealed, downplayed, or otherwise suppressed, through aggressive marketing and promotion, any information or research about the risks and dangers of use of the relaxers.

147.    Defendants failed to exercise reasonable care to warn of the dangerous carcinogenic risks associated with the use of its hair relaxers.

148.    Plaintiff reasonably relied on the skill, superior knowledge, and judgment of the Defendants.

149.    Had Defendants properly disclosed the risks associated with use of their chemical hair relaxers, Plaintiff could have chosen not to use the chemical hair relaxer and avoid the risk of developing cancer from exposure to the hair relaxing chemicals.

150.    As a result of the absence of warning or instruction by Defendants regarding the significant health-and-safety risks associated with the use of their hair relaxers, Plaintiff was unaware that the Defendants' hair relaxers were unreasonably dangerous and had carcinogenic properties, since such information was not known to the general public.

151.    Defendants' failure to warn regarding the dangers associated with use of Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers increased the risk, and was a producing cause, proximate cause, and substantial factor in the development of Plaintiff's cancer.

Case ID: 240502672

152.    As a result of the Defendants' reckless and conscious disregard for the health and safety of consumers of their hair relaxer products, Plaintiff sustained the following damages as a foreseeable, direct, and proximate result of Defendants' acts and omissions:

    a.    Economic losses, including medical care and lost earnings; and

    b.    Noneconomic losses, including physical and mental pain and suffering, emotional distress, inconvenience, loss of enjoyment of life, impairment of quality of life, past and future.

WHEREFORE, Plaintiff respectfully demands judgment in her favor and against Defendants, in an amount in excess of the applicable arbitration limits, including interest, costs of suit, delay damages, compensatory damages, punitive damages, and such other relief as this Honorable Court may deem appropriate.

<u>**COUNT III**</u>
<u>**NEGLIGENCE**</u>
<u>**(Plaintiff v. L'Oreal Defendants, Strength of Nature Defendants, and Avlon Defendant)**</u>

153.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

154.    At all relevant times, Defendants engaged in the business of testing, developing, designing, manufacturing, marketing, selling, distributing, and/or promoting Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen.

155.    Plaintiff used Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen.

156.    Defendants had a duty to exercise reasonable care in the research, design, manufacturing, packaging, marketing, advertisement, supply, promotion, sale, and distribution of Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers,

Case ID: 240502672

including a duty to assure that the products would not cause users to suffer unreasonable dangerous side effects, including developing cancer.

157.   Defendants had a duty to provide true and accurate information and warnings concerning the risks of using Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers.

158.   Defendants failed to exercise reasonable care in that they knew, or should have known, of the unreasonable risks of harm associated with the use of Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers and the propensity for the Hair Relaxers to cause cancer.

159.   Defendants also knew, or in the exercise of reasonable care, should have known, that consumers and users of Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers were unaware of the carcinogenic risks associated with use of the product.

160.   Defendants' negligence includes, but is not limited to, the following acts and/or omissions:

a.   Failing to sufficiently test Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers to determine whether they were safe for their intended use;

b.   Failing to sufficiently test Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers to determine their carcinogenic properties after learning that their formulations could be carcinogenic;

Case ID: 240502672

c.     Marketing, advertising, and recommending the use of Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers without sufficient knowledge as to their dangerous propensities;

d.     Representing that Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers were safe for their intended use when they were not;

e.     Failing to disclose the risk of serious harm associated with use Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers;

f.     Failing to provide adequate instructions, guidelines, and safety precautions to protect the health of those persons whom Defendants could reasonably foresee would use Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen;

g.     Failing to use reasonable and prudent care in the design, development, and manufacture of Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers, so as to avoid the risk of serious harm associated with use;

h.     Failing to sufficiently test the "inert" ingredients and/or adjuvants, including the chemicals classified as fragrances contained within Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers, and the propensity of these ingredients to render the relaxers toxic or to increase the toxicity of the relaxers;

Case ID: 240502672

i.     Systematically suppressing or downplaying contrary evidence about the risks, incidence, and prevalence of the side effects of exposures to Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers, such as side effects of exposure to endocrine-disrupting chemicals;

j.     Failing to disclose the risk of serious harm associated with use of endocrine-disrupting chemicals either alone or when included Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen; and,

k.     Continuing to manufacture and sell Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers, with the knowledge that they were unreasonably safe and dangerous.

l.     Marketing, advertising, and recommending the use Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers without sufficient knowledge as to their dangerous propensities;

m.     Representing that Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers were safe for their intended use when they were not;

n.     Failing to disclose the risk of serious harm associated with use of Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers;

o.      Failing to provide adequate instructions, guidelines, and safety precautions to protect the health of those persons whom Defendants could reasonably

Case ID: 240502672

foresee would use Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers;

p.      Representing that Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers were safe, specifically because they did not contain "Lye", sodium hydroxide, for their intended use when they were not;

q.      Failing to disclose the risk of serious harm associated with use of Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers;

r.      Continuing to manufacture and sell Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers, with the knowledge that the relaxers were unreasonably safe and dangerous.

161.    It was reasonably foreseeable that consumers, including Plaintiff, would suffer injury and possibly die as a result of Defendants' failure to exercise reasonable care in the manufacturing, marketing, promotion, labeling, distribution, and sale Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers.

162.    Defendants' negligent decisions to market and distribute Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers increased the risk of harm, and was a producing cause, proximate cause, and substantial factor of the development of Plaintiff's cancer.

163.    As a result of the Defendants' reckless and conscious disregard for the health and safety of consumers of their hair relaxer products, Plaintiff sustained the following damages as a foreseeable, direct, and proximate result of Defendants' acts and omissions:

Case ID: 240502672

a.    Economic losses, including medical care and lost earnings; and,

b.    Noneconomic losses, including physical and mental pain and suffering, emotional distress, inconvenience, loss of enjoyment of life, impairment of quality of life, past and future.

WHEREFORE, Plaintiff respectfully demands judgment in her favor and against Defendants, in an amount in excess of the applicable arbitration limits, including interest, costs of suit, delay damages, compensatory damages, punitive damages, and such other relief as this Honorable Court may deem appropriate.

<u>COUNT IV</u>
<u>BREACH OF IMPLIED WARRANTIES</u>
<u>(Plaintiff v. L'Oreal Defendants, Strength of Nature Defendants, Defendant Avlon, ACME Defendants and CVS Defendants)</u>

164.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

165.    At all relevant times, Defendants L'Oréal Defendants and Strength of Nature Defendants were engaged in the business of manufacturing, formulating, creating, designing, testing, labeling, packaging, supplying, marketing, promoting, selling, advertising, and otherwise introducing Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers that Plaintiff used into the stream of commerce.

166.    At the time L'Oréal Defendants and Strength of Nature Defendants, marketed, sold, and distributed its Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers for use by Plaintiff, Defendants knew of their intended use and implicitly warranted that the products were of merchantable quality and safe and fit for the use for which they were intended, specifically to chemically straighten hair.

Case ID: 240502672

167.    Before the time of Plaintiff's use of Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers, L'Oréal Defendants, Strength of Nature Defendants, and Defendant Avlon impliedly warranted to consumers, including Plaintiff, that its relaxers were of merchantable quality and safe and fit for the use for which they were intended; specifically, to chemically straighten hair.

168.    L'Oréal Defendants, Strength of Nature Defendants, and Defendant Avlon, however, failed to disclose that Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers have dangerous propensities when used as intended and that the use of the relaxers carry an increased risk of developing severe injuries, including Plaintiff's cancer.

169.    Plaintiff reasonably relied upon the skill, superior knowledge, and judgment of L'Oréal Defendants, Strength of Nature Defendants, and Defendant Avlon, and upon their implied warranties that its Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers were of merchantable quality and fit for their intended purpose or use.

170.    Defendants' Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers were expected to reach, and did in fact reach, consumers and/or users, including Plaintiff, without substantial change in the condition in which they were manufactured and sold by L'Oréal Defendants, Strength of Nature Defendants, and Defendant Avlon.

171.    At all relevant times to this litigation, Defendants were aware that consumers and users of its Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers, including Plaintiff, would use the products as marketed; therefore, Plaintiff was a

Case ID: 240502672

foreseeable user of Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers.

172.    Defendants intended that its Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers be used in the manner in which Plaintiff was exposed, and Defendants implicitly warranted their product to be of merchantable quality, safe, and fit for this use, despite the fact that the relaxers were not adequately tested and/or researched.

173.    In reliance on Defendants' implied warranty, Plaintiff used Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers as instructed and labeled and in the foreseeable manner intended, recommended, promoted, and marketed by Defendants.

174.    Plaintiff could not have reasonably discovered or known of the risks of serious injury associated with Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers.

175.    Defendants breached their implied warranty to Plaintiff in that Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers were not of merchantable quality, safe, or fit for their intended use, an/or adequately tested.

176.    Defendants' Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers have dangerous propensities when used as intended and anticipated and can cause serious injuries, including the cancer Plaintiff sustained.

177.    The harm caused by Defendants' Affirm, Dark & Lovely, Motions, Optimum, Precise, Bantu, Dr. Miracle, and Ultra Sheen relaxers far outweighed their benefits, rendering the products more dangerous than an ordinary consumer or user would expect and more dangerous than alternative products.

Case ID: 240502672

178.    As a direct and proximate result of Defendants' wrongful acts and omissions Plaintiff has suffered severe and permanent physical and emotional injuries.

179.    As a result of the Defendants' reckless and conscious disregard for the health and safety of consumers of their hair relaxer products, Plaintiff sustained the following damages as a foreseeable, direct, and proximate result of Defendants' acts and omissions:

    a.    Economic losses, including medical care and lost earnings; and

    b.    Noneconomic losses, including physical and mental pain and suffering, emotional distress, inconvenience, loss of enjoyment of life, impairment of quality of life, past and future.

WHEREFORE, Plaintiff respectfully demands judgment in her favor and against Defendants, in an amount in excess of the applicable arbitration limits, including interest, costs of suit, delay damages, compensatory damages, punitive damages, and such other relief as this Honorable Court may deem appropriate.

Respectfully submitted,

**KLINE & SPECTER, P.C.**

By: _____
SHANIN SPECTER, ESQUIRE
TOBI L. MILLROOD, ESQUIRE
BRADEN R. LEPISTO, ESQUIRE
SHERRELL L. DANDY, ESQUIRE
*Attorneys for Plaintiffs*

Dated:  May 22, 2024

Page **37** of 37

Case ID: 240502672

## <u>VERIFICATION</u>

I, Dr. Merle Carter, hereby verify that I am the Plaintiff in the foregoing action; that the attached Complaint is based upon information which I have furnished to my counsel and information which has been gathered by my counsel in the preparation of the lawsuit. The language of the Complaint is that of counsel and not of affiant. I have read the Complaint and to the extent that the allegations therein are based upon information I have given counsel, they are true and correct to the best of my knowledge, information, and belief. To the extent that the contents of the Complaint are that of counsel, I have relied upon counsel in making this Verification. I understand that false statements made herein are made subject to the penalties of 18 Pa. C.S.A. § 4904 relating to unsworn falsifications to authorities.

Date: 5/22/2024

Dr. Merle Carter, Plaintiff